**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-24580-CIV-ALTONAGA/Reid**

**CITY OF WARREN GENERAL**
**EMPLOYEES' RETIREMENT SYSTEM**,
on behalf of itself and all others similarly
situated,

      Plaintiff,

v.

**TELEPERFORMANCE SE**, *et al.*,

      Defendants.

_____/

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

**LASHGOLDBERG LLP**
Martin B. Goldberg
Benjamin R. Shiekman
100 S.E. 2nd Street
Suite 1200
Miami, Florida 33131
Tel:   (305) 347-4040
Email: *mgoldberg@lashgoldberg.com*
      *bshiekman@lashgoldberg.com*

**LATHAM & WATKINS LLP**
Michele D. Johnson (admitted *pro hac vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Tel:   (714) 540-1235
Email: *michele.johnson@lw.com*

**LATHAM & WATKINS LLP**
Colleen C. Smith (admitted *pro hac vice*)
12670 High Bluff Drive
San Diego, CA 92130
Tel:   (858) 523-5400
Email: *colleen.smith@lw.com*

**LATHAM & WATKINS LLP**
Christopher S. Turner (admitted *pro hac vice*)
Donald Lee Thompson
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Tel:   (202) 637-2200
Email: *christopher.turner@lw.com*
      *donald.thompson@lw.com*

*Attorneys for Defendants Teleperformance SE,*
*Olivier Rigaudy, Daniel Julien, and Akash Pugalia*

## **TABLE OF CONTENTS**

**Page**

I.   PLAINTIFFS FAIL TO PLEAD FACTS NECESSARY TO ESTABLISH
     "DOMESTIC TRANSACTIONS" SUBJECT TO SECTION 10(B) CLAIMS..................2

II.  PLAINTIFFS FAIL TO PLEAD FALSITY.........................................................................2

     A.   The Opposition Does Not Remedy Plaintiffs' Defective "Puzzle Pleading" ..........2

     B.   Plaintiffs Fail to Allege False or Misleading Statements........................................3

     C.   Certain Challenged Statements Are Inactionable as a Matter of Law ....................6

III. PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER ...................8

     A.   Plaintiffs Fail to Plead Scienter as to Any Individual.............................................8

     B.   The Opposition Does Not Support Any Inference of Scienter ................................8

     C.   A Nonfraudulent Inference Is More Compelling.....................................................9

IV.  PLAINTIFFS INADEQUATELY PLEAD LOSS CAUSATION ...................................10

V.   PLAINTIFFS' SECTION 20(A) CLAIM MUST BE DISMISSED ................................10

VI.  CONCLUSION...............................................................................................................10

i

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*,
   532 F. Supp. 3d 189 (E.D. Pa. 2021) ......................................................................................9

*Baylor v. Honda Motor Co., Ltd.*,
   No. 23-cv-00794 (C.D. Cal. Jan. 19, 2024) ............................................................................2

*Carvelli v. Ocwen Fin. Corp.*,
   934 F.3d 1307 (11th Cir. 2019) ..........................................................................................7, 8

*City of Pompano Beach Gen. Emps.' Ret. Sys. v. Synovus Fin. Corp.*,
   2011 WL 13130185 (N.D. Ga. May 19, 2011) ......................................................................3

*City of Pontiac Gen. Emps. Ret. Sys. v. Schweitzer-Mauduit Int'l, Inc.*,
   806 F. Supp. 2d 1267 (N.D. Ga. 2011) ..................................................................................3

*FindWhat Investor Group v. FindWhat.com*,
   658 F.3d 1282 (11th Cir. 2011) ..............................................................................................4

*Harris v. Ivax Corp.*,
   182 F.3d 799 (11th Cir. 1999) ................................................................................................8

*Howard v. Arconic Inc.*,
   395 F. Supp. 3d 516 (W.D. Pa. 2019).............................................................................4, 7, 9

*In re Aceto Corp. Sec. Litig.*,
   2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019)..........................................................................6

*In re Airgate PCS, Inc. Sec. Litig.*,
   389 F. Supp. 2d 1360 (N.D. Ga. 2005) ..................................................................................8

*In re Alcatel Sec. Litig.*,
   382 F. Supp. 2d 513 (S.D.N.Y. 2005)....................................................................................3

*In re AstraZeneca plc Sec. Litig.*,
   2022 WL 4133258 (S.D.N.Y. Sept. 12, 2022)........................................................................7

*In re Diebold Nixdorf, Inc., Sec. Litig.*,
   2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) ........................................................................6

*In re Equifax Inc. Sec. Litig.*,
   357 F. Supp. 3d 1189 (N.D. Ga. 2019)...................................................................................5

*In re Eventbrite, Inc. Sec. Litig.*,
  2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) ...........................................................................4

*In re Mako Surgical Corp. Sec. Litig.*,
  2013 WL 2145661 (S.D. Fla. May 15, 2013) ............................................................................7

*In re Ocugen, Inc. Sec. Litig.*,
  659 F. Supp. 3d 572 (E.D. Pa. 2023) .......................................................................................7

*In re Ocwen Fin. Corp. Sec. Litig.*,
  2015 WL 12780960 (S.D. Fla. Sept. 4, 2015) .........................................................................5

*In re Omnicom Grp., Inc. Sec. Litig.*,
  541 F. Supp. 2d 546 (S.D.N.Y. 2008)....................................................................................10

*In re Tupperware Brands Corp. Sec. Litig.*,
  2023 WL 5091802 (11th Cir. Aug. 8, 2023)............................................................................8

*In re Twitter, Inc. Sec. Litig.*,
  506 F. Supp. 3d 867 (N.D. Cal. 2020) .....................................................................................6

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2017 WL 66281 (N.D. Cal. Jan. 4, 2017).................................................................................2

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
  620 F. Supp. 3d 167 (D.N.J. 2022) ..........................................................................................9

*Jacobowitz v. Range Res. Corp.*,
  596 F. Supp. 3d 659 (N.D. Tex. 2022) .....................................................................................7

*Keippel v. Health Ins. Innovations, Inc.*,
  2019 WL 5698329 (M.D. Fla. Nov. 4, 2019) ..........................................................................7

*Linenweber v. Sw. Airlines Co.*,
  2023 WL 6149106 (N.D. Tex. Sept. 19, 2023).........................................................................8

*Malin v. XL Cap., Inc.*,
  312 F. App'x 400 (2d Cir. 2009) ..............................................................................................9

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) ..............................................................................................10

*Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
  58 F.4th 195 (5th Cir. 2023) .....................................................................................................8

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)...............................................................................................................5, 7

iii

*Ong v. Chipotle Mexican Grill, Inc.*,
   294 F. Supp. 3d 199 (S.D.N.Y. 2018)...............................................................................4

*SEC v. Kingdom Legacy Gen. Partner, LLC*,
   2017 WL 417093 (M.D. Fla. Jan. 31, 2017)......................................................................3

*Theodore v. Purecycle Techs., Inc.*,
   2023 WL 4035880 (M.D. Fla. June 15, 2023)....................................................................9

*Thorpe v. Walter Inv. Mgmt., Corp.*,
   2014 WL 11961964 (S.D. Fla. Dec. 23, 2014)..................................................................10

*Vancouver Alumni Asset Holdings, Inc. v. Daimler AG*,
   2017 WL 2378369 (C.D. Cal. May 31, 2017) .....................................................................2

**STATUTES**

15 U.S.C. § 78u-5(i)(1)(A)–(D)............................................................................................7

Plaintiffs' Opposition, ECF No. 66 ("Opposition" or "Opp."), which largely restates allegations from the Amended Class Action Complaint ("AC"), is noteworthy for what it does not say.[1]  The Opposition does not deny any of the following points, each of which is fatal to Plaintiffs' claims:

- The AC fails to allege facts showing even that Defendants made purchases in the U.S., much less that their purchases relating to this French corporation were "domestic transactions" subject to the Securities Exchange Act.  Mot. at 4–5; *see infra* § I.

- The facts alleged in the AC compel an inference of good faith, not fraud: that Teleperformance and its executives were transparent with investors and the broader public about its content moderation business.  Mot. at 17–19; *see infra* § III.

- As Teleperformance reported to the public, neither its audits nor the investigation cited in the AC made any adverse findings or actions.  Mot. at 20; *see infra* § IV.

- The AC fails to plead claims against the individual Defendants—whom the Opposition mentions zero (Rigaudy), zero (Pugalia), and only two (Julian) times, respectively.  Mot. at 13–14; *see infra* § III.

Instead, the Opposition spins a bizarre narrative that Teleperformance and its investors were singularly focused on employee satisfaction and that the company's commitments to CSR and ESG thus misled the market.  The AC provides no support for this story.  Teleperformance properly touted the social good its employees performed by handling the difficult but necessary task of moderating and removing egregious content from digital platforms.  And Plaintiffs' theory that the hazards that these "digital first responders," Opp. at 2, faced—like the trauma faced by police, firefighters, and other first responders—were hidden from anyone at any time is patently absurd.

Even if Plaintiffs' ADR purchases were subject to Exchange Act claims (and they are not, *see infra* § I), the AC does not clear—and the Opposition does not cure—the PSLRA's high bar to plead the elements of such claims.  Plaintiffs fail to allege particularized facts showing the laundry lists of statements it challenges, many of which are puffery or opinion, to be false or misleading when made.  *See infra* § II.  Plaintiffs fail to allege, as they must, facts establishing a strong inference of scienter as to each Defendant.  *See infra* § III.  And Plaintiffs fail to establish that certain disclosures were "corrective" and can thus suffice to plead loss causation.  *See infra* § IV.  These defects cannot be cured by amendment, and dismissal with prejudice is warranted.

---

[1] All capitalized terms herein are defined in the Motion to Dismiss Plaintiffs' Amended Class Action Complaint, ECF No. 65.  Internal quotations, citations, and subsequent history are omitted.

I.      **PLAINTIFFS FAIL TO PLEAD FACTS NECESSARY TO ESTABLISH "DOMESTIC TRANSACTIONS" SUBJECT TO SECTION 10(B) CLAIMS**

Plaintiffs' Opposition merely confirms that Plaintiffs fail to plead facts showing that they made "domestic transactions" subject to the Securities Exchange Act.  Opp. at 4–5; *see also* Mot. at 4–5.  The depositary shares Plaintiffs purchased are complex securities backed by common stock of a French corporation.  AC ¶¶ 7, 13; Mot. at 4–5.  That Plaintiffs are American pension funds and purchased Teleperformance ADRs during the class period, Opp. at 4; AC ¶¶ 5–6, does not tell us how or where these securities were actually purchased, much less establish that their purchase was a "domestic transaction" as required under Section 10(b).

Rather than provide the bare minimum details necessary to establish that their purchases were "domestic transactions," Plaintiffs cite two 2017 opinions from California courts involving foreign car companies, where courts allowed Exchange Act claims involving ADRs to proceed.  Opp. at 4–5.  In both cases, plaintiffs alleged specific facts showing the domestic steps and entities involved in their purchases.[2]  Plaintiffs allege no such facts here.  The result should thus be the same reached in the latest case in this line, *Baylor v. Honda Motor Co., Ltd.*, No. 23-cv-00794 (C.D. Cal. Jan. 19, 2024), where the court dismissed the action because "nothing in the [plaintiffs' complaint] explains where Plaintiffs acquired the ADSs."  Slip op. at 9.  Failure to plead facts establishing a domestic transaction is fatal to all of Plaintiffs' claims and compels dismissal.

II.     **PLAINTIFFS FAIL TO PLEAD FALSITY**

A.      **The Opposition Does Not Remedy Plaintiffs' Defective "Puzzle Pleading"**

Instead of identifying the specific facts that render each of the twenty-five challenged statements made between July 2020 and July 2022 false or misleading, the AC groups all of the statements together and makes eleven general assertions that "make defendants liable under § 10(b)."  AC ¶¶ 90–115.[3]  This disjointed pleading asserts, for example, that Defendants' failure

---

[2] Opp. at 4 (citing *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 66281, at *4 (N.D. Cal. Jan. 4, 2017) ("[T]he ADRs that Plaintiffs purchased were sold to US investment advisers for the benefit of the US-resident Plaintiffs and were delivered through DTC, the principal US securities clearing and settlement system, to accounts at US financial institutions, and title transferred in the United States[.]"), and *Vancouver Alumni Asset Holdings, Inc. v. Daimler AG*, 2017 WL 2378369, at *11 (C.D. Cal. May 31, 2017) (alleging that all entities "associated with the transactions were U.S. institutions")).

[3] Contrary to Plaintiffs' assertion, Opp. at 13 n.11, the chart of challenged statements appended to the Motion is no effort to skirt the applicable page limits.  It does not contain any information or

to disclose "that certain Teleperformance social content moderators had been trained with materials which included illicit images of child sexual exploitation," AC ¶ 115, renders statements that Teleperformance "respects freedom of association," *id*. ¶ 102, "recognizes the right to collective bargaining," *id*., and desires to become a "preferred employer," *id*. ¶¶ 103, 110, false or misleading.  These allegations are nonsensical, and Plaintiffs' Opposition makes them even more convoluted.[4]  The Opposition packages the AC's eleven alleged bases for falsity into five buckets. Opp. at 7 (citing (a)–(e)).  Then it repeats the buckets for other categories of challenged statements. *See, e.g.*, *id*. at 9 (also citing (a)–(e)).

Plaintiffs' improper puzzle pleading leaves Defendants and the Court to guess "the reason or reasons why" these unrelated "facts" render twenty-five statements made over two years false or misleading.  *City of Pontiac Gen. Emps. Ret. Sys. v. Schweitzer-Mauduit Int'l, Inc*., 806 F. Supp. 2d 1267, 1293 (N.D. Ga. 2011).  This warrants dismissal under the PSLRA.  *Id*.; *In re Alcatel Sec. Litig*., 382 F. Supp. 2d 513, 534–35 (S.D.N.Y. 2005) (rejecting "puzzle pleading" where plaintiffs "plac[ed] the burden on the Court to sort out the alleged misrepresentations and then match them with the corresponding adverse facts").

**B.      Plaintiffs Fail to Allege False or Misleading Statements**

Even setting aside Plaintiffs' improper puzzle pleading tactics, the AC fails to plead falsity for any of the forty challenged statements, and many of the challenged statements are inactionable corporate puffery, opinions, or protected forward-looking statements.  *See* Mot. at 7–13.  The Opposition does nothing to cure these fundamental defects.

***Statements About Commitment to CSR and Employees*.** Plaintiffs contend that "Defendants created a duty to disclose the whole truth" about Teleperformance's commitment to employees' well-being, Opp. at 7, but allege no facts showing that "the whole truth" was concealed from investors.  *See* Mot. at 7–8.  Plaintiffs do not allege, for example, that there were such systemic failings or widespread problems affecting Teleperformance employees that would render

---

argument not already present in Defendants' opening brief and was provided only for the Court's ease of reference in light of Plaintiffs' jumbled pleading.  *See* ECF No. 65-1 (App'x A).

[4] Plaintiffs' cited authority is easily distinguished on the facts, *see City of Pompano Beach Gen. Emps.' Ret. Sys. v. Synovus Fin. Corp.*, 2011 WL 13130185, at *7–8 (N.D. Ga. May 19, 2011) (dividing statements on a *single topic* into one-month increments and stating "at the conclusion of each time period how [plaintiffs] believe[d] the statements made by Defendants were misleading"), or on the law, *SEC v. Kingdom Legacy Gen. Partner, LLC*, 2017 WL 417093, at *3 (M.D. Fla. Jan. 31, 2017) (unlike here, claims not subject to the PSLRA need not "deal in exact specifics").

the challenged statements false or misleading when made. *See* AC ¶¶ 115, 126, 136.

Plaintiffs cite no cases suggesting that general disclosures about Teleperformance's accolades and commitment to employees triggered an obligation to disclose specifics about a small percentage of employees' job duties. Nor can they, given that courts routinely reject omission claims premised on this defective theory. *See, e.g.*, *Howard v. Arconic Inc.*, 395 F. Supp. 3d 516, 548 (W.D. Pa. 2019) ("[G]eneral statements about [company] values, workplace safety, and ethics—which read like mission statements rather than guarantees—were not rendered misleading by product safety issues[.]"); *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 232 (S.D.N.Y. 2018) (statements referencing training and safety programs were not rendered "demonstrably false" by allegations that company "failed to live up to its own [] safety standards"). Plaintiffs' own authority underscores the absurdity of their theory. Opp. at 7.[5] In *FindWhat Investor Group v. FindWhat.com*, the Eleventh Circuit clarified the requirement "that disclosures be 'complete and accurate' . . . does not mean that by revealing one fact about a product, one must reveal all others that, too, would be interesting, marketwise. A corporation has a duty to neutralize only the 'natural and normal implication' of its statements." 658 F.3d 1282, 1305–06 (11th Cir. 2011) (accurate report regarding total company revenue was not misleading simply because it failed to disclose that a portion of company revenue could be attributed to illicit click-fraud operators). Even accepting as true Plaintiffs' claim that "there is no specific level of detail required to trigger a duty to disclose," Opp. at 8, Plaintiffs have alleged *no facts* and cited *no authority* suggesting that Defendants violated any such duty to disclose here.

***Statements About Content Moderators.*** Plaintiffs challenge five statements regarding Teleperformance's content moderation work. Four of these statements are generic assertions of corporate values, AC ¶¶ 103, 108, 109, 112, and the fifth focuses on how Teleperformance protects society from harmful content, *id.* ¶ 111. Yet Plaintiffs assert that each of these statements is actionably false because "Defendants were aware of the horrible conditions the moderators were exposed to including a lack of promised services intended to promote their mental health and

---

[5] Defendants have never claimed that Teleperformance "said nothing about [the Company's] content moderation practices." Opp. at 8. But twenty of the challenged statements regarding Teleperformance's commitment to CSR and employees *are* silent on those practices. AC ¶¶ 90–101, 104–107, 110, 113–114, 120–121, 124. Falsity is judged "statement-by-statement," and Plaintiffs' attempt to conflate and mischaracterize Defendants' disclosures cannot salvage their claims. *In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *10 n.5 (N.D. Cal. Apr. 28, 2020).

overall well-being." Opp. at 10.  Not so.  *First*, the four generic assertions of corporate values are corporate puffery and are inactionable as a matter of law, *see infra* § II.C, and the fifth statement about how Teleperformance helps society has nothing to do with employees' work conditions— and was not made misleading by failing to mention any alleged conditions.  *Second*, Plaintiffs do not allege a single fact showing that any Defendant knew about the alleged "horrible conditions the moderators were exposed to" at the time of the challenged statements.  Opp. at 10; *see also* Mot. at 8–9.  For this reason, Plaintiffs' reliance on *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189 (N.D. Ga. 2019) is misplaced.[6]  At most, Plaintiffs allege that Teleperformance fell short of its own policies—which are not guarantees of perfection—and Defendants' "failure to disclose potential corporate mismanagement will not state a cause of action under federal securities fraud." *In re Ocwen Fin. Corp. Sec. Litig.*, 2015 WL 12780960, at *4 (S.D. Fla. Sept. 4, 2015); Mot. at 9.

     ***Statement About Collective Bargaining.***  The Opposition does not cure the defects in Plaintiffs' AC mentioning "union-busting" efforts.  Opp. at 10; AC ¶¶ 102, 146.  There are zero particularized allegations in the AC that Defendants broadly prevented employees from organizing.  *See* AC ¶ 67 (describing actions of "security staff," and unnamed "Teleperformance worker," and "security guards" on unspecified dates).  The vague allegations do nothing to show that Defendants did not "respect[] freedom of association and recognize[] the right to collective bargaining."  *Id.* ¶ 102.  Further, this single statement was an opinion, Mot. at 12, and Plaintiffs fail to allege, as they must, facts showing that Teleperformance "did not hold the belief it professed" or that Defendants *knew* "the supporting facts [it] supplied were untrue."  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183–84 (2015); *see infra* § II.C.

     ***Statements About the* Forbes *and* Time *Articles.***  The Opposition summarily asserts that the falsity of Teleperformance's responses to news articles is a "factual dispute."  Opp. at 11.  Not so.  As Defendants explained, "*[e]ven accepting the* Forbes *and* Time *allegations as true*," Plaintiffs' challenge to these statements of opinion fails.  Mot. at 10.  Plaintiffs do not dispute that Defendants took the articles seriously and conducted internal and external audits to examine

---

[6] The *Equifax* court upheld plaintiffs' challenge to statements touting the "strength and quality of Equifax's cybersecurity" in light of particularized allegations showing that defendants ignored numerous warnings (including from a cybersecurity consultant that the company hired to investigate weaknesses in its data protection systems), regarding vulnerabilities in the company's cybersecurity protocols.  357 F. Supp. 3d at 1218.

Teleperformance's content moderation practices, or that the audits revealed only "minor element[s] that could be improved" for content moderators. AC ¶¶ 119, 125. And absent any allegations showing that Defendants actually did not believe that the supposed "trust crisis" regarding the content moderation business was "fabricated" and "unfounded," *id.* ¶¶ 133, 134, Plaintiffs' challenge to these statements of opinion fails as a matter of law. *See infra* § II.C.

***Statements About Exiting the Business of Moderating "Highly Egregious" Content.*** Plaintiffs now contend that Teleperformance's timely announcement of its evolving business strategy was false because it said that "a lot" of its growth in 2022 came from content moderation and it made an "abrupt[]" decision to return to moderating highly egregious content five months after exiting that business. Opp. at 11. Neither contention revives Plaintiffs' claims.

*First*, even if "a lot" of Teleperformance's growth came from content moderation, this fact says nothing about whether Teleperformance would be able to exit the "highly egregious" portion of its content moderation services without significant consequence. Opp. at 11. But content moderation *was not* "a lot" of Teleperformance's business. Plaintiffs do not dispute that content moderation represented just 7% of Teleperformance's revenue." AC ¶¶ 125, 142. Moreover, "highly egregious" content moderation is a fraction of a percent of Teleperformance's overall content moderation business. This hardly renders statements predicting the impact of withdrawing from the business false or misleading.

*Second*, Plaintiffs also do not dispute that a "change in business strategy does not, without more, render [] past disclosures regarding [that strategy] misleading." *In re Diebold Nixdorf, Inc., Sec. Litig.*, 2021 WL 1226627, at *11 (S.D.N.Y. Mar. 30, 2021). Instead, Plaintiffs claim that Teleperformance's "quick turnaround[] indicate[s] that the original statements were [] false." Opp. at 11. But neither of the cases Plaintiffs cite supports this proposition. *See id.* Rather, courts routinely reject such efforts to "conflate allegations related to temporal proximity with allegations related to falsity," *In re Twitter, Inc. Sec. Litig.*, 506 F. Supp. 3d 867, 890 n.11 (N.D. Cal. 2020), and recognize that "subsequent disclosure of contrary information—even within a matter of weeks—does not necessarily render a prior statement false," *In re Aceto Corp. Sec. Litig.*, 2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019). So too here.

## C.     Certain Challenged Statements Are Inactionable as a Matter of Law

***Puffery.*** Plaintiffs dispute that generalized statements regarding Teleperformance's commitment to employees' satisfaction and CSR are inactionable puffery because (1) the

6

statements "when considered in context, are capable of objective verification," (2) the Company exited the highly egregious content moderation business following "an investigation by Colombia's Ministry of Labor and an inquiry by the U.S. Senate," and (3) Defendants repeated the challenged statements. Opp. at 12–13. Plaintiffs are wrong on all counts.

*First*, Plaintiffs fail to explain how the "context" of Defendants' statements of corporate optimism renders them "capable of objective verification." *See* Opp. at 12. Courts have routinely held otherwise. Mot. at 11; *see also, e.g.*, *Jacobowitz v. Range Res. Corp.*, 596 F. Supp. 3d 659, 681–82 (N.D. Tex. 2022) ("deeply rooted in our commitment to improving the communities," "committed to begin a steward of the environment," and supporting employees is "at the core of our culture"); *Howard*, 395 F. Supp. 3d at 546–47 (setting "higher standards" in health and safety, and "start[ing] with safety first"). *Second*, an announced government probe into Teleperformance's content moderation practices determines nothing about the materiality of *generalized* statements of the Company's commitment to employees. *Third*, unlike the primary authority on which Plaintiffs rely, Opp. at 13 (citing *Keippel v. Health Ins. Innovations, Inc.*, 2019 WL 5698329, at *7 (M.D. Fla. Nov. 4, 2019)), Defendants' statements regarding CSR and ESG— even if made more than once—did not "stress a record of corporate compliance as a key to company success." Mot. at 11–12.

**Opinion Statements.** The challenged statements regarding Defendants' priorities and beliefs are also plainly opinion statements.[7] *See Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1323–24 (11th Cir. 2019). And pleading opinions are misleading by omission is "no small task." Mot. at 12; *Omnicare*, 575 U.S. at 194; *In re AstraZeneca plc Sec. Litig.*, 2022 WL 4133258, at *7 (S.D.N.Y. Sept. 12, 2022) (requiring more than the omission of "negative" information). Absent any facts that Defendants dishonestly or unreasonably held these opinions, *infra* § III, Plaintiffs' challenge fails as a matter of law. *Omnicare*, 575 U.S. at 194; *Carvelli*, 934 F.3d at 1322.

**Forward-Looking Statements.** Statements regarding Teleperformance's objective to have a larger percentage of its employees working in a Great Place To Work® organization or to become a preferred employer *in the future* and statements predicting the *future impact* of Teleperformance's decision to exit the "highly egregious" content moderation business are

---

[7] Opinion statements can also be considered puffery. Puffery can consist of opinions, motives, intentions, or optimism. *In re Ocugen, Inc. Sec. Litig.*, 659 F. Supp. 3d 572, 589 (E.D. Pa. 2023).

quintessentially forward-looking.  AC ¶¶ 93, 94, 132, 135; *see also* Mot. at 12–13 (citing 15 U.S.C. § 78u-5(i)(1)(A)–(D); *In re Mako Surgical Corp. Sec. Litig.*, 2013 WL 2145661, at *6 (S.D. Fla. May 15, 2013)).  Contrary to Plaintiffs' assertion, Opp. at 14–15, the fact that portions of these challenged statements pertain to present facts does not change their fundamentally forward-looking nature, or thus exempt them from the PSLRA's requirement to allege "actual knowledge" of their falsity.  *Harris v. Ivax Corp.*, 182 F.3d 799, 806–07 (11th Cir. 1999) ("mixed" statements were forward-looking); *In re Airgate PCS, Inc. Sec. Litig.*, 389 F. Supp. 2d 1360, 1371 (N.D. Ga. 2005) (statements in prospectus citing present facts were forward-looking).  And Plaintiffs allege no facts establishing the requisite strong inference that Defendants had "actual knowledge" that these forward-looking statements were false when made.  Mot. at 13; *see also infra* § III.

## III.   PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER

### A.   Plaintiffs Fail to Plead Scienter as to Any Individual

Plaintiffs' twenty-page Opposition makes zero mention of Defendants Rigaudy and Pugalia at all.  And Plaintiffs neither allege in the AC nor cite in the Opposition any facts showing that Defendant Julien had actual knowledge of the alleged ground-level working conditions or employee grievances—or that he did not "actually believe" any of the opinions he espoused.  Opp. at 15–18; *Carvelli*, 934 F.3d at 1322–23.[8]  The dearth of *any* individualized allegations of scienter as to the Individual Defendants warrants dismissal against all Defendants.  *See In re Tupperware Brands Corp. Sec. Litig.*, 2023 WL 5091802, at *4–5 (11th Cir. Aug. 8, 2023).

### B.   The Opposition Does Not Support Any Inference of Scienter

In their Opposition, Plaintiffs purport to present "five grounds that collectively establish each Defendant's scienter."  Opp. at 15.  They present three.  And these "grounds"—previewed in Defendants' motion, Mot. at 14–17, and routinely rejected by courts—do not support, much less establish, the strong inference of scienter as to any Defendant necessary to plead securities fraud.

*First*, Plaintiffs seek to infer Defendants' scienter based on the "core operations" doctrine.  Opp. at 16–17.  Defendants have already addressed this generic argument.  Mot. at 15–16.  While Teleperformance's content moderation services were important, they cannot plausibly be a "core operation."  *See, e.g.*, *Linenweber v. Sw. Airlines Co.*, 2023 WL 6149106, at *7 (N.D. Tex. Sept. 19, 2023).  Contrary to Plaintiffs' blithe assertion, there are no allegations that content moderation

---

[8] Defendant Julien is mentioned only twice—and each time as to statements he made, no facts (particularized or otherwise) support any inference as to his scienter.  *See* Opp. at 2, 17.

was central to any reported metric.[9]  *See* AC ¶¶ 79, 142.  Vague statements that "a lot" of the Company's 2022 growth came from content moderation cannot plausibly show this was a "key growth driver."[10]  *Id.* ¶ 79.  Nor do Plaintiffs allege facts showing that content moderation had any reputational value.  Plaintiffs' allegations are as weak as they are sparse.

*Second*, Plaintiffs argue—in three separately enumerated but substantively overlapping paragraphs—that scienter can be inferred from Defendants' alleged misstatements.  Opp. at 17–18.  Plaintiffs' argument conflates the scienter and falsity inquiries.  Even if Defendants' commitments to employees' well-being put that general topic "in play," *Howard*, 395 F. Supp. 3d at 547, Plaintiffs fail to show "defendants possessed knowledge of facts or access to information contradicting their public statements."  *Theodore v. Purecycle Techs., Inc.*, 2023 WL 4035880, at *6 (M.D. Fla. June 15, 2023).  Absent these contemporaneous allegations, Plaintiffs cannot rely on Defendants' statements as circumstantial evidence of scienter.  *Id*.

*Third*, Plaintiffs summarily (and confusingly) assert that the Colombian government's investigation shows scienter as to later-made statements.  Opp. at 18.  But the bulk of challenged statements after the announced probe involve global business decisions regarding the content moderation business—not the local work conditions that were the subject of the investigation.  AC ¶¶ 130–32, 135.  And, of course, the company's own conduct of audits—and announcement that both the audits and the Colombian investigation resulted in no adverse findings, Turner Decl., Ex. 1—*undermine* rather than support any inference of scienter.  *See* Mot. at 18; AC ¶ 73.

### C.   A Nonfraudulent Inference Is More Compelling

Because none of Plaintiffs' allegations show "even a weak inference of scienter, there is no logical way that [a court] could then . . . determine[] that the combined effect of the allegations would form a *strong* inference of scienter."  *Malin v. XL Cap., Inc.*, 312 F. App'x 400, 402 (2d Cir. 2009) (emphasis in original).  When the AC is stripped of editorialization, its allegations bear

---

[9] Plaintiffs' authorities are inapposite.  *See Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 204 (5th Cir. 2023) (licensing agreements would have yielded **80-90%** of EBITDA margins); *Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 620 F. Supp. 3d 167, 177, 196–97 (D.N.J. 2022) (defects caused *$400 million* revenue decline); *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 232 (E.D. Pa. 2021) (pipeline projects were company's *largest* expense for *two years*).  No comparable facts are alleged here.

[10] Plaintiffs strategically omit the remainder of Singh's statement:  "Yes, a lot of that growth did come from content moderation, *but there is a substantial growth that came from sort of other lines of business*."  Turner Decl., Ex. 3 at 7 (emphasis added).

a more compelling inference:  Teleperformance took the issues seriously, stepped back from this segment of its business, audited its internal policies and procedures, and upon further deliberation, decided to continue this important safety practice.  Mot. at 17–18.  Plaintiffs do not rebut this critical point in their Opposition.  *See generally* Opp.  Nor can they.  There was no fraud here.

## IV.    PLAINTIFFS INADEQUATELY PLEAD LOSS CAUSATION

The Opposition confirms that Plaintiffs' theory of loss causation hinges on disclosures made on November 9, 2022, AC ¶ 74, and March 22, 2023, *id.* ¶ 86.  Neither revealed any fraud.

***November 9, 2022 Disclosure.*** Plaintiffs acknowledge, as they must, that an announcement of an investigation, without more, is not a corrective disclosure.  Opp. at 19 (citing *Meyer v. Greene*, 710 F.3d 1189, 1201 (11th Cir. 2013)).  But they confusingly contend that the mere fact that the investigation "related" to the allegations constitutes the "more" necessary to make the investigation corrective.  Opp. at 19.  It is not.  As the Eleventh Circuit has made clear, the something "more" must be a "later finding of wrongdoing." *Meyer*, 710 F.3d at 1201 n.3.  The disclosure of an investigation, "standing alone and without any subsequent disclosure of actual wrongdoing," does "not qualify as a corrective disclosure." *Id*.  Here, Plaintiffs have alleged no adverse findings or disclosures of actual wrongdoing resulting *from* the investigation—and there were none—so this disclosure cannot constitute a corrective disclosure as a matter of law. *Id.*; *Thorpe v. Walter Inv. Mgmt., Corp.*, 2014 WL 11961964, at *20 (S.D. Fla. Dec. 23, 2014) (same).

***March 22, 2023 Press Release.*** Plaintiffs offer no support for their contention that Teleperformance's announcement that they would resume highly egregious content moderation services was a corrective disclosure.  Contrary to Plaintiffs' contention that "new information emerge[d]" from this disclosure, Opp. at 20 n.17, Teleperformance's decision reflects nothing more than a "lengthy review of its business," "discussions with various stakeholders," and internal and external reviews.  Mot. at 20; *In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 552 (S.D.N.Y. 2008).  No facts alleged in the AC suggest otherwise.

## V.    PLAINTIFFS' SECTION 20(A) CLAIM MUST BE DISMISSED

Plaintiffs fail to plead a primary Exchange Act violation. Thus, their derivative Section 20(a) claims also must be dismissed. *See* Mot. at 20.

## VI.    CONCLUSION

For the foregoing reasons and as stated in Defendants' opening Motion and supporting Memorandum of Law, the AC should be dismissed with prejudice.

10

Dated:  February 2, 2024

Respectfully submitted,

**LASHGOLDBERG LLP**
Miami Tower, Suite 1200
100 S.E. Second Street
Miami, Florida 33131
Tel: (305) 347-4040
Fax: (305) 347-4050

*Attorneys for Defendants Teleperformance SE, Olivier Rigaudy, Daniel Julien, and Akash Pugalia*

By:/s/ *Martin B. Goldberg*
    **MARTIN B. GOLDBERG**
    Florida Bar No. 0827029
    Email: mgoldberg@lashgoldberg.com
    **BENJAMIN R. SHIEKMAN**
    Florida Bar No. 113114
    Email: bshiekman@lashgoldberg.com

Michele D. Johnson (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Tel:    (714) 540-1235
Email:    *michele.johnson@lw.com*

Colleen C. Smith (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
12670 High Bluff Drive
San Diego, CA 92130
Tel:    (858) 523-5400
Email:    *colleen.smith@lw.com*

Christopher Turner (admitted *pro hac vice*)
Donald Lee Thompson
Florida Bar No. 1003698
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Tel:    (202) 637-2200
Email: *christopher.turner@lw.com*
    *donald.thompson@lw.com*

*Attorneys for Defendants Teleperformance SE, Olivier Rigaudy, Daniel Julien, and Akash Pugalia*

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 2, 2024, I electronically filed the foregoing document, **REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**, with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By:/s/ *Martin B. Goldberg*
**MARTIN B. GOLDBERG**