**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 23-cv-24580-CIV-ALTONAGA/Reid**

**CITY OF WARREN GENERAL**
**EMPLOYEES' RETIREMENT SYSTEM**,
on behalf of itself and all others similarly
situated,

      Plaintiff,

v.

**TELEPERFORMANCE SE**, *et al.*,

      Defendants.

_____/

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR**
**MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION**
**COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

**LASH GOLDBERG**
Martin B. Goldberg
Benjamin R. Shiekman
Miami Tower, Suite 1200
100 S.E. Second Street
Miami, Florida 33131
Tel:    (305) 347-4040
Email: *mgoldberg@lashgoldberg.com*
       *bshiekman@lashgoldberg.com*

**LATHAM & WATKINS LLP**
Michele D. Johnson (admitted *pro hac vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Tel:    (714) 540-1235
Email: *michele.johnson@lw.com*

**LATHAM & WATKINS LLP**
Colleen C. Smith (admitted *pro hac vice*)
12670 High Bluff Drive
San Diego, CA 92130
Tel:    (858) 523-5400
Email: *colleen.smith@lw.com*

**LATHAM & WATKINS LLP**
Christopher S. Turner (admitted *pro hac vice*)
Donald Lee Thompson
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Tel:    (202) 637-2200
Email: *christopher.turner@lw.com*
       *donald.thompson@lw.com*

*Attorneys for Defendants Teleperformance SE,*
*Daniel Julien, Akash Pugalia, and Olivier Rigaudy*

**TABLE OF CONTENTS**

**Page**

I.  PLAINTIFFS FAIL TO PLEAD FALSITY ..................................................................1

    A.  Plaintiffs Fail to Plead Any Contemporaneous Facts Supporting Falsity................1

    B.  Statements of Puffery and Opinion Are Not Actionable .........................................4

II.  PLAINTIFFS FAIL TO PLEAD SCIENTER ..................................................................5

    A.  Plaintiffs' Core Operations Allegations Do Not Establish Scienter ........................5

    B.  Repetition of Generic Statements Does Not Prove Intent to Deceive .....................6

    C.  Purportedly Evasive Answers Do Not Bolster Inference of Scienter ......................7

    D.  The Announcement of a Government Investigation Does Not Support Scienter ...............................................................................................................7

    E.  The Inference Against Fraud Is More Compelling ..................................................8

III.  PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION .......................................................8

    A.  The August 4, 2022 *Forbes* Article Was Not a Corrective Disclosure ..................8

    B.  The November 9, 2022 *Time* Article Was Not a Corrective Disclosure .................9

IV.  CONCLUSION.......................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Brophy v. Jiangbo Pharms., Inc.*,
781 F.3d 1296 (11th Cir. 2015) ........................................................................6

*City of Atlanta Police Officers' Pension Plan v. Celsius Holdings, Inc.*,
2023 WL 1998174 (S.D. Fla. Feb. 13, 2023) ....................................................7

*City of Hollywood Police Officers' Ret. Sys. v. Citrix Sys., Inc.*,
649 F. Supp. 3d 1256 (S.D. Fla. 2023) .............................................................5

*City of Southfield Gen. Emps.' Ret. Sys. v. Nat'l Vision Holdings, Inc.*,
2024 WL 1376016 (N.D. Ga. Mar. 30, 2024).....................................................2

*Connor v. Unisys Corp.*,
2024 WL 387633 (E.D. Pa. Feb. 1, 2024) ........................................................3

*Eastwood Enters., LLC v. Farha*,
2009 WL 3157668 (M.D. Fla. Sept. 28, 2009) ..................................................8

*Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*,
595 F. Supp. 2d 1253 (M.D. Fla. 2009).............................................................4

*FindWhat Inv. Grp. v. FindWhat.com*,
658 F.3d 1282 (11th Cir. 2011) ......................................................................10

*Hattaway v. Apyx Med. Corp.*,
2023 WL 4030465 (M.D. Fla. June 15, 2023).................................................10

*In re Altisource Portfolio Sols., S.A. Sec. Litig.*,
2015 WL 12001262 (S.D. Fla. Sept. 4, 2015) .................................................10

*In re Athenex, Inc. Sec. Litig.*,
2024 WL 2725609 (W.D.N.Y. May 28, 2024)...................................................7

*In re Equifax Inc. Sec. Litig.*,
357 F. Supp. 3d 1189 (N.D. Ga. 2019).........................................................5, 6

*In re Flowers Foods, Inc. Sec. Litig.*,
2018 WL 2190904 (M.D. Ga. May 10, 2018) ..................................................10

*In re Galectin Therapeutics, Inc. Sec. Litig.*,
843 F.3d 1257 (11th Cir. 2016) ........................................................................3

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
939 F. Supp. 2d 360 (S.D.N.Y. 2013)...................................................................................4

*In re Netbank, Inc. Sec. Litig.*,
2009 WL 2432359 (N.D. Ga. Jan. 29, 2009).........................................................................3

*In re Telefonaktiebolaget LM Ericsson Sec. Litig.*,
675 F. Supp. 3d 273 (E.D.N.Y. 2023) ...............................................................................2, 3

*In re Winn-Dixie Stores, Inc. Sec. Litig.*,
531 F. Supp. 2d 1334 (M.D. Fla. 2007)................................................................................4

*Institutional Invs. Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009)..................................................................................................7

*Krukever v. TD Ameritrade, Inc.*,
337 F. Supp. 3d 1227 (S.D. Fla. 2018) (Altonaga, J.) .........................................................3

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016) ............................................................................................10

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
144 S. Ct. 885 (2024)............................................................................................................3

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
277 F. Supp. 3d 500 (S.D.N.Y. 2017)...................................................................................3

*Meyer v. Greene*,
710 F.3d 1189 (11th Cir. 2013) ........................................................................................9, 10

*Mich. Carpenters' Pension Fund v. Rayonier Advanced Materials, Inc.*,
2019 WL 1429667 (M.D. Fla. Mar. 29, 2019) .....................................................................6

*Mizzaro v. Home Depot, Inc.*,
544 F.3d 1230 (11th Cir. 2008) ............................................................................................5

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) ................................................................................................7

*Plumbers & Pipefitters Loc. Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
679 F.3d 952 (7th Cir. 2012) ................................................................................................7

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ..............................................................................................6

*Sapssov v. Health Mgmt. Assocs., Inc.*,
608 F. App'x 855 (11th Cir. 2015) .......................................................................................9

*Sask. Healthcare Emp.'s Pension Plan v. KE Holdings Inc.*,
   2024 WL 775195 (S.D.N.Y. Feb. 26, 2024)................................................................................7

*Schaffer v. Horizon Pharma PLC*,
   2018 WL 481883 (S.D.N.Y. Jan. 18, 2018) .............................................................................8

*Strezsak v. Ardelyx Inc.*,
   2024 WL 1160900 (N.D. Cal. Mar. 18, 2024)..........................................................................6

*Teamsters Loc. 456 Pension Fund v. Universal Health Servs.*,
   396 F. Supp. 3d 413 (E.D. Pa. 2019) ...................................................................................6, 8

*Theodore v. Purecycle Techs., Inc.*,
   2023 WL 4035880 (M.D. Fla. June 15, 2023)..........................................................................7

*Vancouver Alumni Asset Holdings Inc. v. Daimler AG*,
   2017 WL 2378369 (C.D. Cal. May 31, 2017) ........................................................................10

Plaintiffs' Second Amended Complaint narrows their securities fraud claims to select statements regarding training and support for content moderators—and their Opposition, ECF No. 73 ("Opp."), confirms that this amended pleading fails to allege with particularity *any* facts indicating that Defendants knew of—but refused to disclose—inadequacies in ground-level training and support.[1]  Notwithstanding the narrower allegations, Plaintiffs rely almost entirely on the Court's Order to sustain their amended pleading and double-down on their challenge to several portions of statements and one purported corrective disclosure that the Court already rejected.  But their narrowed pleading and Opposition only highlight the numerous defects in their claims.

*First*, the Opposition still does not point to particularized, contemporaneous facts showing that *any* challenged statement was false or misleading, and Plaintiffs do not dispute that they challenge the same portions of statements that the Court previously dismissed as inactionable puffery or opinion statements.  *Second*, Plaintiffs' broad allegations that because content moderation was important to Teleperformance, Defendants "must have known" about the Company's hiring, training, and support practices no longer establish scienter as to their narrowed claims.  Plaintiffs rely on circumstantial allegations to plead scienter but still cannot say *what* Julian, Rigaudy, or Pugalia knew about those practices, much less that they knew (or recklessly disregarded) specific details about those practices within the 400,000-person company.  *Finally*, the Second Amended Complaint and Opposition do nothing to cure Plaintiffs' failure to plead loss causation.  The facts "revealed" in the August 4, 2022 *Forbes* article were not concealed by any challenged statements.  And Plaintiffs' attempt to revive the November 9, 2022 announcement of the Colombian government's investigation fails because, as the Court recognized, Plaintiffs do not allege a "later finding of wrongdoing[,]" as they must.  Order at 41.  As amendment has proven futile, dismissal with prejudice is warranted.

## I.      PLAINTIFFS FAIL TO PLEAD FALSITY

### A.      Plaintiffs Fail to Plead Any Contemporaneous Facts Supporting Falsity

*Statement 1.*  Plaintiffs allege *no facts* regarding Teleperformance's hiring, training, and support practices in February 2020, and instead cite a *Time* article published two-and-a-half years later as "confirm[ation]" that Statement 1 regarding the Company's practices in February 2020 was false.  Opp. at 7.  But Plaintiffs cannot rely on "after-the-fact" allegations to argue that an

---

[1] Unless stated otherwise, capitalized terms and abbreviations are defined in the Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint, ECF No. 72 ("Motion" or "Mot.").

earlier statement was false and misleading at the time it was made. Mot. at 7 (quoting *City of Southfield Gen. Emps.' Ret. Sys. v. Nat'l Vision Holdings, Inc*., 2024 WL 1376016, at \*9 (N.D. Ga. Mar. 30, 2024)). Plaintiffs do not dispute this, and their failure to point to any "particularized, contemporaneous facts showing why [Statement 1] was false" warrants dismissal. *Id.*

*Statements 2–4.* The Opposition highlights allegations from the *Forbes* and *Time* articles and Plaintiffs' single CW to show that the Second Amended Complaint "allege[s] widespread issues with employee support services and training that bely the assurances given by Teleperformance." Opp. at 8. But Plaintiffs do not meaningfully engage with *any* arguments raised in the Motion with respect to Statements 2–4, and the Opposition confirms that their scant allegations have no bearing on the purported falsity of these statements.

Plaintiffs point to allegations by one moderator who told *Forbes* "that, after a year of working for Teleperformance, [she] was 'struggling to just function properly' and 'frequently loses her train of thought, becomes filled with rage at random and has feelings of suicide.'" *Id*. at 7. They argue that the "moderator's employment timeline sheds light on the lack of support and hiring procedures during the time period in which the Misstatements were made," *id.*, but the Second Amended Complaint alleges no "employment timeline" at all, *see* SAC ¶ 49. In any event, that content moderator's experience says nothing about whether Teleperformance "hir[ed] people with appropriate profiles and skills," provided "resilience training during the induction seminar," or provided a "24/7 support program." Mot. at 7. Teleperformance acknowledged that content moderators' "job[s] tend[] to generate a good deal of stress." *Id*. at 3–4. That one employee struggled in a highly difficult role in spite of the support resources available to her does not show that generalized statements about the availability of those resources were false or misleading. *See, e.g.*, *In re Telefonaktiebolaget LM Ericsson Sec. Litig.*, 675 F. Supp. 3d 273, 282, 292 (E.D.N.Y. 2023) (allegations that anti-corruption program failed to identify "illegal bribes, kickbacks, and bid rigging practices" did not render general "compliance- and policy-related statements" regarding the program false or misleading). Nor does it say anything about *hiring* practices.

The same is true for the CW who reportedly "received no psychological testing or screening to evaluate [her] resilience or fitness" prior to joining Teleperformance in June 2020 and watched videos including CSAM during training. Opp. at 7. Plaintiffs do not grapple with the fact that the *only* challenged statement regarding "psychometric tests" in hiring (Statement 4) was made approximately two years after the CW joined Teleperformance. Mot. at 8. Nor do they

2

explain how the CW's exposure to CSAM content during training "directly refut[es] Defendants' claims" that content moderators received "resilience training."  Opp. at 7.

Finally, Plaintiffs cite "employee reports" in *Time* "that psychological support was 'woefully inadequate' and 'just for show,'" *id.* at 7–8, but as their own authority explains, allegations that attack "policies and procedures' effectiveness" do not support that Teleperformance "designed no policies or procedures at all," *Connor v. Unisys Corp.*, 2024 WL 387633, at *6 (E.D. Pa. Feb. 1, 2024).  Because Teleperformance "never promised perfect compliance" or made *any* assurances about the effectiveness of its hiring and training practices or support services, these general "policy-related statements are unactionable." *Telefonaktiebolaget*, 675 F. Supp. 3d at 292; *see also Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 512 (S.D.N.Y. 2017) (rejecting challenge to statement describing compliance program where defendants did "not profess an opinion on the efficacy of [the] program").

In a last-ditch effort to salvage their claims, Plaintiffs argue that whether these allegations contradict Statements 1–4 is "a factual dispute, which is inappropriate to resolve at the motion to dismiss stage of litigation."  Opp. at 8.  Not so.  Defendants maintain that, even "accept[ing] as true" the *Forbes*, *Time*, and CW allegations, Plaintiffs *still* fail to meet their burden to state with particularity facts showing "why [each challenged] statement is misleading."  *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1269 & n.4 (11th Cir. 2016); *see also* Mot. at 6–9. Unlike the cases Plaintiffs cite,[2] the Court need not make a single factual finding to conclude that Plaintiffs do not carry their pleading burden, and their claims must be dismissed as a matter of law.

***Statements 5–6.***  Plaintiffs do not dispute that the basic premise of their claim—*i.e.*, "that Teleperformance owed a duty to disclose *additional* details about the hard truths that come with content moderation" in connection with these statements—has no basis in the law.  *Compare* Mot. at 10, *with* Opp. at 8.  The federal securities laws do not require Defendants to disclose "additional details" simply by speaking on a topic; "[d]isclosure is required . . . only when necessary to make statements made, in the light of the circumstances under which they were made, not misleading." Order at 14 (citing *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 144 S. Ct. 885, 891

---

[2] *See Krukever v. TD Ameritrade, Inc.*, 337 F. Supp. 3d 1227, 1236–37 (S.D. Fla. 2018) (Altonaga, J.) (declining to resolve factual dispute based on "reams of information outside the four corners of the pleading"); *In re Netbank, Inc. Sec. Litig.*, 2009 WL 2432359, at *5 (N.D. Ga. Jan. 29, 2009) (declining to "make a determination as to the truth of certain facts as alleged in the Complaint," where defendants disputed their accuracy).

(2024)).  Although Plaintiffs dispute Defendants' characterization of Statements 5 and 6, they still cannot explain how the *Forbes*, *Time*, or lone CW's allegations render statements regarding Teleperformance's "policies to safeguard the users of [the] platforms and our digital first responders," "moderator training, coaching and education," or "additional safeguards to address content moderation realities," SAC ¶ 45, false or misleading, as they must.  Opp. at 8–9.

   ***Statements 7–8.***  Plaintiffs fail to address the fact that Statements 7 and 8 are not actionable because they post-date the only corrective disclosure that survived the Court's initial Order, Mot. at 11, and thus concede the point.  Plaintiffs contend that Statements 7 and 8 relaying findings of the audits Teleperformance commissioned must have been false if their allegations regarding use of CSAM at the Company were true.  Opp. at 9–10.  Even if there were CSAM images in training or guidance documents, as Plaintiffs allege, that use does not compel the conclusion that Teleperformance's audits revealed such use.  Mot. at 10–11.  Plaintiffs are left to argue that "cases relied upon by Defendants did not involve allegations that the reported findings of the audit were inaccurate," Opp. at 10, but this is wrong,[3] and the Second Amended Complaint does not allege that the audits *did* reveal evidence of the use or access to CSAM images in training.

### B.   Statements of Puffery and Opinion Are Not Actionable

   Plaintiffs do not dispute that portions of Statements 1–4 and 7 are inactionable puffery or opinion statements that the Court already rejected.  Opp. at 6.  Nevertheless, Plaintiffs argue that Statements 1–4 and 7 are actionable *as a whole* because the Court upheld certain portions of those statements regarding "training and support services" in the first instance.  *Id*.  Setting aside Plaintiffs' failure to plead falsity generally, *supra* Section I.A, their half-hearted attempt to salvage puffery and opinion statements has no basis in the law and is inconsistent with the Order.  *See* Order at 22 (dismissing same "*portions* of" statements); *id.* at 27 ("statement that Defendants took the allegations 'seriously' is—once again—'too hazy and general for any reasonable investor' to have relied upon"); *see also In re Winn-Dixie Stores, Inc. Sec. Litig*., 531 F. Supp. 2d 1334, 1346–47 (M.D. Fla. 2007) (dismissing portion of statement as "unverifiable corporate optimism" and separately analyzing falsity allegations for "part of the statement [that] is verifiable").

---

[3] *See Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc*., 595 F. Supp. 2d 1253, 1282 (M.D. Fla. 2009) (rejecting claim that audit findings did not reflect accurate "understanding of . . . internal controls"); *In re Longtop Fin. Techs. Ltd. Sec. Litig*., 939 F. Supp. 2d 360, 387 (S.D.N.Y. 2013) (rejecting claim that auditor's report "turned a blind eye to the problems it identified").

## II.     PLAINTIFFS FAIL TO PLEAD SCIENTER

Plaintiffs rest on the misplaced assertion that the Court already has held that Plaintiffs have adequately pled Defendants' scienter in their Second Amended Complaint.  Opp. at 10.  Plaintiffs' initial complaint was an invalid "puzzle pleading," preventing Defendants or the Court from "discern[ing] which statements . . . are allegedly false or misleading and precisely why."  Order at 16.  At the Court's insistence, Plaintiffs now purport to identify specific "adverse facts," *id*., showing "exactly why," *id.* at 44, each challenged statement is false.[4]  To plead scienter, Plaintiffs must now, at a minimum, allege facts showing that each Defendant knew or recklessly disregarded these "adverse facts" and "inten[ded] to deceive, manipulate, or defraud" investors or was severely reckless in not disclosing these "facts" when making the challenged statements.  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008).  Plaintiffs acknowledge as much, positing that "the Individual Defendants *knew* that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading."  SAC ¶ 11.  Yet, as Defendants explained, Mot. at 11–13, Plaintiffs do not remotely meet their burden of pleading scienter as to any Defendant.

Plaintiffs respond that they present a "holistic" approach to pleading scienter.  Opp. at 10 & n.9.  But Plaintiffs' holistic analysis must support a strong inference that *each* Defendant intended to defraud investors or was severely reckless in not disclosing these adverse facts when the statements were made.  *See, e.g.*, *City of Hollywood Police Officers' Ret. Sys. v. Citrix Sys., Inc.*, 649 F. Supp. 3d 1256, 1273 (S.D. Fla. 2023); *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1233, 1241–42 (N.D. Ga. 2019).  The particularized allegations plaintiffs usually use to establish scienter as to adverse facts—whistleblower revelations, incriminating documents, stock sales, CW allegations about executives' internal statements—are entirely absent here.  The four broad, circumstantial "factors" on which Plaintiffs rely, Opp. at 10–13, are no substitute.

### A.     Plaintiffs' Core Operations Allegations Do Not Establish Scienter

In their Opposition, Plaintiffs confirm their position that because content moderation is a

---

[4] Specifically, Plaintiffs charge Defendants with knowing the following:  (1) Teleperformance's hiring process "was not designed to identify candidates with resilient profiles" and "did not include psychological testing"; (2) its "support programs were 'woefully inadequate'"; (3) its "training procedures were inadequate" and "included needless exposure to CSAM"; (4) its content moderators worked under "grueling conditions"; (5) it "did not 'invest heavily'" in additional safeguards for its content moderators; and (6) its audits were "inadequate."  Mot. at 12.

5

"core operation" of Teleperformance, its executives must have known the "adverse facts" making the challenged statements false when made. Opp. at 10–11. Before Plaintiffs had specified these "adverse facts," the Court held that the importance of content moderation to Teleperformance "weakly boost[s] an inference of scienter." Order at 37. Now it is clear that Plaintiffs' "core operation" argument lends no support to an inference of Defendants' scienter. Mot. at 12–16.

Merely alleging that content moderation is a "core operation" does not show that Teleperformance's executives knew of or deliberately disregarded alleged issues with content-moderation training and support. *See Equifax*, 357 F. Supp. 3d at 1240. Instead, "there must be other, individualized allegations that further suggest that the officer had knowledge of the fact in question." *Id.* Even assuming content moderation is a core business, it cannot be "automatically assumed" that Teleperformance's "corporate officer[s] [were] familiar" with granular alleged facts Plaintiffs say made the challenged statements misleading. *Id.*; *see also Strezsak v. Ardelyx Inc.,* 2024 WL 1160900, at *9 (N.D. Cal. Mar. 18, 2024) (operation's "importan[ce]" does not mean defendants "knew every possible adverse fact about it"). This is especially true given the scale of Teleperformance's business. Mot. at 3 (400,000+ employees residing in ninety countries performing a wide array of services); *see also Teamsters Loc. 456 Pension Fund v. Universal Health Servs.*, 396 F. Supp. 3d 413, 473 (E.D. Pa. 2019) (refusing to infer that defendants "micro-managed the daily operations" of 200+ facilities in a division that accounted for 70% of business). Here, no allegations suggest that any Defendant had "detailed involvement in the" training and support services that Plaintiffs say made the statements misleading. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014); *see Brophy v. Jiangbo Pharms., Inc.*, 781 F.3d 1296, 1306 (11th Cir. 2015). Instead, Plaintiffs rest on the inference that because Teleperformance spoke about content moderation, its senior executives "closely monitored their content moderation operations, including the workplace environment." SAC ¶ 97. But absent any facts supporting this theory, Plaintiffs' conclusion is improper. *Brophy*, 781 F.3d at 1306.

**B.      Repetition of Generic Statements Does Not Prove Intent to Deceive**

Plaintiffs contend that Teleperformance's "repetition" of a challenged statement (on one page out of nearly 300 in annual filings) shows that it did not make those statements "out of carelessness." Opp. at 11. Mere repetition in annual regulatory filings does not mean that Defendants must have known or recklessly disregarded adverse facts about training and support that purportedly made those statements false or misleading. *Mich. Carpenters' Pension Fund v.*

*Rayonier Advanced Materials, Inc.*, 2019 WL 1429667, at *28 (M.D. Fla. Mar. 29, 2019). Further, this argument is inconsistent with the "omission theory" Plaintiffs stress in their Opposition. Opp. at 6, 14. "[T]he inference of scienter does not follow from the fact of non-disclosure." *In re Athenex, Inc. Sec. Litig.*, 2024 WL 2725609, at *10 (W.D.N.Y. May 28, 2024). And Plaintiffs' cited authorities are inapposite, as defendants in those cases repeated specific assertions about their own experiences, *Theodore v. Purecycle Techs., Inc.*, 2023 WL 4035880, at *2 (M.D. Fla. June 15, 2023), and "pricing," *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 268 (3d Cir. 2009)—not, as here, general assertions about policies alleged to be misleading by omission. Opp. at 6, 14.

### C.   Purportedly Evasive Answers Do Not Bolster Inference of Scienter

Next, Plaintiffs point to Julien's responses to analysts' questions—made months after the challenged statements. SAC ¶¶ 64–65. These responses do not support scienter. *First*, Plaintiffs characterize Julien's statements as "evasive" and "dodg[ing] questions," Opp. at 12, but Plaintiffs' "subjective characterization" of his responses as "lacking 'candor'" or incomplete are not indicative of scienter. *Sask. Healthcare Emp.'s Pension Plan v. KE Holdings Inc.*, 2024 WL 775195, at *29 (S.D.N.Y. Feb. 26, 2024). *Second*, even if Julien's answers were evasive (and they were not), supposedly "evasive" or "nonresponsive" answers, especially when made during oral exchanges, are not compelling evidence of scienter. *See, e.g.*, *Plumbers & Pipefitters Loc. Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 679 F.3d 952, 956 (7th Cir. 2012) ("evasive" answer falls "short of fraud[]"). *Third*, it is black-letter law that declining to "release any details about [an] internal review" that the Company had no legal duty to disclose does not support scienter. *KE Holdings*, 2024 WL 775195, at *29.[5] *Fourth*, and critically, Julien's purportedly evasive answers were made *after* the *Forbes* and *Time* articles—and cannot be evidence that he or Teleperformance intended to hide what those articles had already disclosed. *See City of Atlanta Police Officers' Pension Plan v. Celsius Holdings, Inc.*, 2023 WL 1998174, at *11 (S.D. Fla. Feb. 13, 2023).

### D.   The Announcement of a Government Investigation Does Not Support Scienter

Finally, while governmental investigations may be considered in assessing scienter, "an 'investigation that has not resulted in charges or any finding of wrongdoing does not support an

---

[5] Plaintiffs urge the Court to adopt the far-fetched theory that the audits were commissioned "not to find the truth" but "were intended to hide it." Opp. at 12 n.10. But this speculation is unsupported by any pled facts, and the PSLRA "neither allows nor requires [courts] to check [their] disbelief at the door." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020).

inference of scienter.'"  *Universal Health Servs.*, 396 F. Supp. 3d at 469; *see also Schaffer v. Horizon Pharma PLC*, 2018 WL 481883, at *13 (S.D.N.Y. Jan. 18, 2018) ("An inconclusive investigation with an undefined scope cannot 'give rise to a compelling inference of scienter.'"). Plaintiffs' principal authority, *Eastwood Enterprises, LLC v. Farha*, 2009 WL 3157668 (M.D. Fla. Sept. 28, 2009), is instructive—but does not support Plaintiffs' inference.  In *Eastwood*, multiple governmental investigations involving a raid of company headquarters and employee testimony of instructions to defraud led to the company and its senior officers admitting to fraud and an employee entering a guilty plea.  *Id.* at *1, *3.  By contrast, the Colombian Ministry of Labor's investigation resulted in no adverse findings, *see* Mot. at 19; SAC ¶¶ 72, 75, 85, 88, 92, 115, and—along with Teleperformance's audits and remedial efforts—undermines any inference of scienter.

> **E.**      **The Inference Against Fraud Is More Compelling**

Here, the nonfraudulent inference far outweighs any inference of an intent to deceive, manipulate, or defraud, or severe recklessness, let alone a "strong" one.  Mot. at 16–17.  This is particularly true as to the Individual Defendants—for whom Plaintiffs make no particularized allegations or rebuttal to Defendants' arguments.  *See supra* Section II.A–D.  It is not plausible that Teleperformance's executives (based in France and overseeing myriad divisions employing 400,000+ personnel worldwide) were aware of the adverse facts animating the Second Amended Complaint—*e.g.*, contents of entry-level training materials and intermittent departures from hiring and support policies.  SAC ¶¶ 44–46.  The more plausible and compelling explanation for Defendants' statements and actions—*e.g.*, commissioning audits and installing safeguards, *id.* ¶¶ 68, 89—is one of good faith and due diligence, not fraud.

## III.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

> **A.**      **The August 4, 2022 *Forbes* Article Was Not a Corrective Disclosure**

The inflammatory August 4, 2022 *Forbes* article focused on the hazards of content moderation, SAC ¶¶ 47–51, not the hiring, training, or support policies and procedures Plaintiffs contend Defendants misrepresented in Statements 1–6.  Mot. at 18.  Plaintiffs contend that it is "telling[]" that Defendants did not make this argument in their initial motion to dismiss.  Opp. at 14.  But the First Amended Complaint challenged a broad swath of statements, Order at 15–17, and the *Forbes* article *did* "relate back" to some of those statements.  By contrast, Plaintiffs now target six statements before August 4, 2022, and the *Forbes* article does not "relate back" to any of them.  Plaintiffs flag three "revelations" in the *Forbes* article:  (1) training material included

CSAM, (2) content moderation "had adverse effects on the mental wellbeing of [] content moderators," and (3) demand for services left content moderators "under-trained and overworked." Opp. at 14–15. Plaintiffs assert that "[t]hese revelations directly contradict Defendants' statements that Teleperformance invested heavily in training, coaching, and education to safeguard content moderators." *Id.* Plaintiffs do not explain this contention; they cannot. Training was difficult, the job was stressful, and Teleperformance needed to train people quickly. None of this contradicts the statement that Teleperformance "invested heavily in training, coaching, and education"; if anything, these factors explain *why* Teleperformance made these investments. *Supra* Section I.A.

Plaintiffs are thus left to argue that the *Forbes* article revealed information omitted from the challenged statements—and that Defendants did not address this omission theory. Opp. at 14. Defendants did not ignore Plaintiffs' omission theory; it suffers from the same flaw as their "affirmative misrepresentation" theory: nothing "revealed" in the *Forbes* article was "'obscured by the [purported] fraud.'" Mot. at 18. To the extent Plaintiffs contend that the article's discussion of CSAM, long hours, or employee monitoring revealed "omissions" from Statements 1–6, that information does not "relate back to the misrepresentation[s]" and thus does not render the *Forbes* article a corrective disclosure. *Meyer v. Greene*, 710 F.3d 1189, 1197 (11th Cir. 2013).

**B.      The November 9, 2022 *Time* Article Was Not a Corrective Disclosure**

The Court held the November 9, 2022 *Time* article announcing the launch of the Colombian government's investigation "cannot serve as a corrective disclosure because, like in *Meyer*, Plaintiffs do not allege a 'later finding of wrongdoing.'" Order at 41. Plaintiffs' efforts to circumvent this holding are all unavailing. *First*, Plaintiffs assert that the November 9, 2022 *Time* article newly revealed the subject matter of the investigation—and this rendered the article a corrective disclosure. Opp. at 15–16. This contradicts Plaintiffs' own allegations that a Colombian "minister for labor relations" announced one day prior that the investigation "relat[ed] to alleged violations of labor standards." SAC ¶ 70. It also ignores the law, as an "adverse market reaction . . . does not establish the disclosure of an investigation constitutes a corrective disclosure; further allegations are required to establish that previous statements were 'false or fraudulent.'" *Sapssov v. Health Mgmt. Assocs., Inc.*, 608 F. App'x 855, 863 (11th Cir. 2015).

*Second*, Plaintiffs argue that Teleperformance's subsequent actions demonstrate loss causation. Opp. at 16–17. The Company's extensive efforts to responsibly address issues raised (in the *Forbes* article and elsewhere) do not render the announcement of an investigation

9

corrective.  *See In re Altisource Portfolio Sols., S.A. Sec. Litig.*, 2015 WL 12001262, at \*14 (S.D. Fla. Sept. 4, 2015) ("[A]nnouncement that [the company] was discontinuing its [program]" subject to investigation, agency letters, and consent order "were negative" but not corrective.); *Hattaway v. Apyx Med. Corp.*, 2023 WL 4030465, at \*15 (M.D. Fla. June 15, 2023) (subsequent disclosures of regulatory compliance and cooperation did not make "news of an impending" FDA intervention corrective because "[n]o future corrective action from the FDA ever came").[6]  The Court has made clear that "the something 'more' [required by *Meyer*] must be a 'later finding of wrongdoing.'" Order at 41.  Good faith efforts to remediate are not wrongdoing.

 *Third*, Plaintiffs resort to arguing that the announcement of an investigation was a corrective disclosure because it "follow[ed] media scrutiny." Opp. at 19.  But Plaintiffs' argument underscores that the November 9, 2022 *Time* article *cannot* be a corrective disclosure because it did not reveal anything new to the market.  *Meyer*, 710 F.3d at 1199 ("[T]he mere repackaging of already-public information . . . is simply insufficient to constitute a corrective disclosure."); *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1311 n.28 (11th Cir. 2011) ("[B]ecause a corrective disclosure must reveal a previously concealed truth, it obviously must disclose new information, and cannot be merely confirmatory.").  Plaintiffs still have not articulated exactly what information the November 9, 2022 *Time* article corrected.  According to Plaintiffs, the *Time* article disclosed the existence and subject matter of the investigation—*i.e.*, "alleged union-busting, traumatic working conditions, and low pay"—and included "input from labor unions." SAC ¶ 72. The article says nothing about Teleperformance's hiring and training practices, or the audits in El Paso and Boise.  The *Time* article thus cannot be a corrective disclosure.  *Meyer*, 710 F.3d at 1199.

## IV.  CONCLUSION

 The Second Amended Complaint should be dismissed with prejudice.

---

[6] Plaintiffs' cited authorities involve allegations distinct from the Second Amended Complaint and are thus inapposite.  *See In re Flowers Foods, Inc. Sec. Litig.*, 2018 WL 2190904, at \*1 (M.D. Ga. May 10, 2018) (investigation was not yet complete so there could be no adverse findings and "even without the announcement of [the] investigation, the remaining alleged corrective disclosures were sufficient to allege loss causation"); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210–11 (9th Cir. 2016) ("market's fears [were] confirmed by" defendants' later admission); *Vancouver Alumni Asset Holdings Inc. v. Daimler AG*, 2017 WL 2378369, at \*3–4, \*18–19 (C.D. Cal. May 31, 2017) (upholding loss causation allegations where DOJ requested internal investigation the same day as adverse regulatory findings, followed by company-issued product recall).

Dated:  July 8, 2024

Respectfully submitted,

**LASH GOLDBERG**
Miami Tower, Suite 1200
100 S.E. Second Street
Miami, Florida 33131
Tel:      (305) 347-4040
Fax:      (305) 347-4050

*Attorneys for Defendants Teleperformance SE, Daniel Julien, Akash Pugalia, and Olivier Rigaudy*

By:/s/ *Martin B. Goldberg*
**MARTIN B. GOLDBERG**
Florida Bar No. 0827029
Email: *mgoldberg@lashgoldberg.com*
**BENJAMIN R. SHIEKMAN**
Florida Bar No. 113114
Email: *bshiekman@lashgoldberg.com*

Michele D. Johnson (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Tel:  (714) 540-1235
Email:  *michele.johnson@lw.com*

Colleen C. Smith (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
12670 High Bluff Drive
San Diego, CA 92130
Tel:  (858) 523-5400
Email:  *colleen.smith@lw.com*

Christopher Turner (admitted *pro hac vice*)
Donald Lee Thompson
Florida Bar No. 1003698
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Tel:  (202) 637-2200
Email:  *christopher.turner@lw.com*
          *donald.thompson@lw.com*

*Attorneys for Defendants Teleperformance SE, Daniel Julien, Akash Pugalia, and Olivier Rigaudy*

11