# EXHIBIT B

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. 23-24580-CIV-ALTONAGA/REID

| | |
|---|---|
| CITY OF WARREN GENERAL EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated, | ) ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| TELEPERFORMANCE SE, et al., | ) ) |
| | ) |
| Defendants. | ) ) |
| | ) |

**STIPULATED PROTOCOL GOVERNING DISCOVERY OF
HARD COPY AND ELECTRONICALLY STORED INFORMATION**

Case No. 23-24580-CIV-ALTONAGA/REID

Lead Plaintiffs City of Warren General Employees' Retirement System and City of Westland Police and Fire Retirement System and Defendants Teleperformance SE, Daniel Julien, Akash Pugalia, and Olivier Rigaudy (collectively, the "Parties") agree to cooperate in good faith to address issues relating to the disclosure or discovery of hard copy and electronically stored information ("ESI").  The Parties each agree to the following protocol ("Protocol") regarding discovery in this matter.  To the extent that this Protocol does not address certain issues, those issues remain open for resolution in a separate protocol, either negotiated by the Parties or ordered by the Court.

## I.      IDENTIFICATION OF RESPONSIVE DOCUMENTS

The Parties shall meet and confer in an effort to conduct discovery in the most efficient and effective manner.  Specifically, the Parties will attempt in good faith to come to an agreement on search and culling methods used to identify responsive information.  The Parties will not seek Court intervention without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

### A.      Sources

The Parties shall, within a reasonable time following the receipt of discovery requests, disclose and describe the custodial and non-custodial data sources likely to contain responsive information, and disclose and describe any document retention policies or practices (*e.g.*, retention schedules or policies, auto-delete functions, routine purging, mailbox size limits) likely to impact the existence or accessibility of responsive documents or ESI.  To the extent the Parties assert there are sources likely to contain responsive information but that should not be searched, were not preserved, or are not reasonably accessible, the Parties will disclose and describe those sources

and will explain the reasons for such assertions.  The Parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to meet and confer regarding any request that files from additional custodial or non-custodial sources be searched.

### B.      Identification of Custodians

The Parties shall within a reasonable time following the receipt of discovery requests identify persons whose files are likely to contain documents and ESI relating to the subject matter of the discovery requests.  This will include a description of the proposed custodians' job titles and dates of employment, if available.  The Parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodians be searched and will meet and confer regarding such requests.

### C.      Search Terms

Where the Parties agree that potentially responsive ESI shall be searched through the use of search terms, the Parties shall use the process identified below and shall meet and confer regarding any proposed deviation.  Within a reasonable time following the receipt of discovery requests, the producing Party shall provide a list of proposed search terms that it believes would lead to the identification of documents potentially relevant to the subject matter of the discovery requests.  To the extent reasonably possible, search terms will be crafted with input from the custodians in order to identify appropriate nomenclature, code words, etc.  The receiving Party shall provide any additional search terms that it believes are necessary to identify responsive documents.  Within a reasonable time from when this combined list is created, the producing Party will confer regarding provision of search term hit reports after global de-duplication (including the

number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list with and without families).  The Parties shall meet and confer regarding the proposed search terms within a reasonable period of time after receipt of any search term hit lists to agree on a set of search terms.

Each Party will reserve its rights to seek judicial relief with respect to additional requests regarding sources, custodians, or search terms that it deems (un)likely to lead to data and communications that are relevant to any Party's claim or defense; or that are (dis)proportionate to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the Parties' relative access to relevant information, the Parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  The Parties retain the right, upon reviewing the production of documents, and conducting other investigation and discovery, to propose additional search terms.

### D. Technology-Assisted-Review

No party shall use GenAI or predictive coding/technology-assisted-review for the purpose of culling the documents to be reviewed or produced without notifying the opposing party prior to use and with ample time to meet and confer in good faith regarding the use of such technologies.

### E. Easily Segregable Documents

Documents or categories of documents that are easily identifiable and segregable shall be collected without the use of search terms or other agreed upon advanced search methodology (*e.g.*, analytics, predictive coding, technology-assisted-review).  In conjunction with a production of

documents, the producing party will state whether such documents were identified through the use of search terms or other advanced search methodology.

### F.     Targeted Production of Certain ESI

To ensure that ESI is preserved while balancing the need to reduce the costs and burdens associated with preservation, the Parties agree that neither Party will be required to search for or produce the below-listed types of data from any custodian absent a showing of good cause:

(1)     deleted, slack, fragmented, or other data only accessible by forensics;

(2)     random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system;

(3)     on-line access data such as temporary Internet files, history, cache, and cookies;

(4)     back-up data that are duplicative of data that are more readily accessible and being collected from elsewhere;

(5)     other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved and being collected from elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage);

(6)     PDAs and mobile devices provided that a copy of all such electronic data is routinely saved and being collected from elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage);

(7)     server, system, or network logs; and

- 4 -

(8) electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

## G. Hard Copy Documents and Non-ESI

Hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME," and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. If an original document contains color, and the color is necessary to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

All hard copy documents will be produced in a manner that reflects accurate document unitization including reasonably available attachment and container/custodian information.

## H. ESI Format

Except where otherwise noted, the parties will produce ESI in single-page, black and white, TIFF Group IV, 300 DPI TIFF images. If an original document being produced in image format contains color, the document should be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. The parties are under

no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs will show any and all text, hidden content, and images that would be visible to the reader using the native software that created the document.  For example, TIFFs/JPGs of email messages will include the BCC line, and documents will display comments and hidden content.  If the image does not accurately reflect the document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the parties agree to meet and confer in good faith on production format options.

> **I.      Databases, Structured, Aggregated, or Application Data**

For requests in which responsive information is contained in a database or other structured or aggregated data source or otherwise maintained by an application, the Parties will meet and confer to determine an appropriate format for production.  If agreement cannot be reached within ten business days following the meet and confer, any Party may thereafter move for resolution from the Court, consistent with the Court's applicable rules regarding discovery disputes.

> **J.      Native Files**

The only files that are required to be produced in native format are spreadsheet-type files such as Excel or Access, presentation-type files such as PowerPoint Presentation, documents with tracked changes in the metadata, photo or graphic images, and audio and video files.

(1)      All produced native files shall contain the Bates number of the file in the file title.

(2)      In addition, native files should be accompanied by an image (TIFF) placeholder that contains the beginning Bates number and confidentiality designation.

(3)    In the event that the producing Party finds the redaction of certain documents in image form to be overly burdensome, it may elect to redact such documents in their native form using industry standard native redaction software.  The produced documents must clearly indicate which portions have been redacted, and the searchable text provided must accurately reflect the contents of the document as produced.  All spreadsheet files must be redacted using native redaction software and produced in native format.

(4)    Wherever available, the producing Party shall include accompanying metadata in the load file.  The Parties agree not to remove metadata from any native production.  Notwithstanding this, the Parties understand that producing native files may affect some changes in metadata.  Metadata shall be preserved when producing native files whenever possible.

(5)    Additionally, if after reviewing production of other ESI in a non-native format, a receiving Party believes that it is necessary to review a certain document or documents in native format, the Parties agree to engage in discussion regarding production of discrete documents in native form, which production will not be unreasonably withheld.  As such, a producing Party shall preserve all native electronic document files with all feasible metadata intact and shall produce such native files and metadata (with the exception of native files for documents that have been redacted, in which case the Parties shall confer in good faith to determine the method by which the native file will be produced) for any documents or sets of documents reasonably requested by the other party.

**K.    Short Message Communications**

Any short message communications (*e.g.*, text messages, Instant Bloomberg, iMessage, Google Chat, WhatsApp, Yammer, Slack, etc.) produced will be produced in RSMF with all

available metadata and attachments.  Except for messages that contain privileged content, the complete conversation will be produced, separated into 24-hour increments. To the extent RSMF cannot be provided, the Parties shall meet and confer on the appropriate metadata fields and format of production.

### L.   Document Families

For ESI that is part of a document family, the Parties shall determine responsiveness by evaluating the entire document family.  If any member of the document family is subject to production, a party should produce all non-privileged members of the same document family regardless of individual responsiveness of any embedded file.  Parties shall produce document families sequentially, beginning with the parent document and ensuring that the load file accompanying an ESI production clearly identifies document families and the relationships between the family members. To the extent a produced document contains links in emails or other communications, the receiving Party may specify to the producing Party any such linked items that they believe should also be produced, and the producing Party shall make a reasonable effort to locate, collect, and produce the identified document(s) that are linked.  However, to the extent that a party uses Google G Suite, Google Workspace, Microsoft 365, Slack, or other enterprise level system that utilizes hyperlinks as a means to share documents, the producing party will make best efforts to extract and produce linked documents in the first instance.  The Parties understand that a hyperlinked document produced may not be the version in time that was shared in the emails or communications.  Therefore, to avoid any doubt, hyperlinked documents may contain a unique stamp (*e.g.*, "Hyperlinked Document") to identify these documents in a production.  Documents extracted from links shall be populated with the BEGATTACH and ENDATTACH metadata

fields to show the family relationship.  Prior to collection, the Parties will meet and confer regarding the production of the version of the document that existed at the time the communication was sent.

### M.     Email Thread Suppression

Email thread suppression shall not be used to remove documents from production.

### N.     Metadata

For all ESI produced, the Parties are obligated to provide metadata set forth in Appendix 1, to the extent such metadata exists.  For any document that is redacted, the producing Party shall withhold any extracted text that is the subject of redaction, and instead provide OCR for the produced image as redacted.  For ESI other than email and e-docs that do not conform to the metadata listed in Appendix 1, such as text messages, Instant Bloomberg, iMessage, Google Chat, WhatsApp, Yammer, Slack, etc., the Parties will meet and confer as to the appropriate metadata fields to be produced.

### O.     Embedded Objects

Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved.  The embedded files will be marked with a "YES" in the load file under the "Is Embedded" metadata field.  The Parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

### P.     Duplicates

ESI that is identical and therefore constitutes a duplicate, based on MD5 or SHA-1 hash values of the full text of the documents at the family level across custodians and sources, need not be produced by the Parties.  The Parties may use and rely in good faith on reasonable electronic

means of determining such exact and identical duplicates, so long as the means of identifying duplicates involves matching the MD5 or SHA-1 hash values of the full text of the documents at the family level across custodians and sources.  Documents shall be de-duplicated at the family-group level provided that:

(1)     only exact (bit-by-bit) duplicates are subject to de-duplication;

(2)     the producing Party identifies the additional custodians in a Custodian metadata field;

(3)     the producing Party identifies the additional File Paths in the Duplicate File Path metadata field; and

(4)     an email that includes content in the BCC or other blind copy fields shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical.

The Parties shall maintain the originals of all such exact and identical duplicates.

**Q.     Compressed Files Types**

Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

**R.     Encryption**

To maximize the security of information in transit, any media on which documents are produced shall be encrypted.  The producing Party shall transmit the encryption key or password to the receiving Party, under separate cover, contemporaneously with sending the encrypted media.

Case No. 23-24580-CIV-ALTONAGA/REID

## II.     PRIVILEGE LOG(S) AND TREATMENT OF PRIVILEGED MATERIALS

### A.     Privilege Log(s)

The Parties agree to serve a privilege log providing information regarding all documents withheld or redacted on the basis of the attorney-client privilege, work product doctrine, common interest privilege, and/or any other applicable immunity and/or protection.  The Parties will meet and confer about whether there is an appropriate basis for withholding any document for any reason other than attorney-client privilege, work product doctrine, or common interest privilege.

To the extent a Party withholds or redacts any category of documents based on any law regarding data protection, including French Law No. 68-678 of July 26, 1968, as modified by French Law No. 80-538, dated July 16, 1980 (the "French Blocking Statute"), and General Data Protection Regulation 2016/679 ("GDPR"), that Party shall identify the specific basis for withholding or redacting any information that it intends to withhold or redact based on any law regarding data protection.  Nothing in this Order shall be construed or presented as a judicial determination that the French Blocking Statute, the GDPR, or any other regulation governing production of data protect any information from discovery, until such time as the Court may rule on a specific document or issue.

Each privilege log should contain the following information, which shall be generated by the inclusion of metadata fields to the extent they exist and accurately and fully capture the agreed upon information:[1]

---

[1]   For ESI other than email and e-docs that do not conform to the metadata listed here, such as text messages, Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack, Google Docs, Google Docs etc., the parties should meet and confer as to the appropriate metadata fields to be included.

- 11 -

Case No. 23-24580-CIV-ALTONAGA/REID

(1)     CUSTODIANS (ALL);

(2)     SUBJECT (unless privileged);

(3)     FILE NAME;

(4)     SENDER/FROM;

(5)     AUTHOR;

(6)     RECIPIENTS/TO;

(7)     CC;

(8)     BCC;

(9)     SENT DATE TIME;

(10)    FILE CREATED DATE TIME;

(11)    ATTACH COUNT;

(12)    FAMILY RELATIONSHIP OF DOCUMENT (WHERE APPLICABLE);

(13)    FILE EXTENSION;

(14)    TITLE;

(15)    PRIVILEGE TYPE; and

(16)    DESCRIPTION OF THE SUBJECT MATTER AND NATURE OF THE DOCUMENT SUFFICIENT TO ASSESS THE CLAIM OF PRIVILEGE

The privilege log(s) will be provided in Excel format or a similar format that allows for the ability to search, sort, and filter the privilege log entries.

The privilege log(s) should also include a column indicating a document identifier for purposes of allowing the Parties to meet and confer about particular entries on the privilege log.

With respect to the SUBJECT, TITLE, FILE PATH, OR FILENAME fields, the producing Party may substitute a description of the communication where the content of these fields may

- 12 -

reveal privileged information, but must indicate that the fields have been revised. Should the receiving Party in good faith have reason to believe a particular entry on the privilege log does not reflect a privileged document, or lacks sufficient information to assess the claim, it may request a description that is sufficient to identify the subject of the document and the basis for the privilege assertion for that entry, to be produced within five business days of the request, or within such other reasonable time as the Parties may agree or the Court may order. If after receipt of the description the receiving Party believes that any document withheld is not, in fact, privileged, it may take appropriate action with the Court.

The privilege log(s) will clearly identify any: (1) attorneys on the privilege log using an asterisk or other agreed upon method; and (2) any third party (in a different manner than the attorneys) along with adequate information provided in the description or other agreed upon manner in order to understand the third party relationship.

### B. Exceptions

The privilege log(s) need not include any privileged documents and communications, including work product, with outside litigation counsel in the above-captioned litigation which post-dates the filing of the first-filed complaint.

### C. 502(d) Order and Clawback Procedure

This Order is entered pursuant to Rule 502(d) of the Federal Rules of Evidence. This Order supplements, and is not intended to conflict with, the provisions of Section 9 of the Agreed Confidentiality and Rule 502(d) Order. Subject to the provisions of this Order, if the producing Party discloses information protected by attorney-client privilege, work product doctrine, common interest privilege, and/or any other applicable immunity and/or protection ("Protected

Information"), the disclosure of that Protected Information will not constitute or be deemed a waiver or forfeiture – in this or any other action – of any claim of privilege or work product protection that the producing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter.

This Order protects any disclosure of Protected Information, whether that disclosure is inadvertent or otherwise.

A producing Party must notify the receiving Party, via email, that it has disclosed that Protected Information without intending a waiver by the disclosure, and provide a privilege log that complies with Section II of this Order.  Upon receipt of notification, the receiving Party shall not further review the inadvertently produced documents, and shall immediately, and in no event more than five calendar days after receiving such notification, sequester, destroy, or return all copies, electronic or otherwise, of such document(s) or other information, and shall provide a certification that it will cease further review, dissemination, and use of the Protected Information (provided, however, that if the receiving Party intends to raise the privilege issue with the Court, it may retain and use one sequestered copy of the information solely for this purpose, which must be returned or destroyed in the event that the Court upholds the claim of privilege).

It is the desire, intention, and mutual understanding of the Parties that all materials identified as inadvertently or unintentionally disclosed or produced as privileged information by the producing Party shall be treated as confidential and may not be disclosed by the receiving Party to persons or entities other than the producing Party without the written consent of the producing Party.

If a Party who received documents or information over which a privilege is asserted has disclosed such document(s) or information to any person or in any circumstance, the Party must immediately: (1) notify, in writing, the producing Party of the disclosure; (2) use best efforts to retrieve or secure the destruction of all copies of the document(s) or information over which the privilege is asserted; and (3) notify the producing Party in writing regarding whether all copies have been retrieved or destroyed.

No argument for subject matter waiver will be made solely based on the inadvertent or unintentional production or disclosure of privileged information.

This Order shall be interpreted to provide the maximum protection allowed to the producing Party by Fed. R. Evid. 502(d).  However, if for any reason, a court finds that this Section is inapplicable to Protected Information, then Rule 502(b) will apply in its absence.

### D.      Contesting Claim of Privilege or Work Product Protection

Nothing in this Order shall limit the receiving Party's right to challenge (on grounds unrelated to the fact of the disclosure itself) the producing Party's claim that disclosed information is protected from disclosure by the attorney-client privilege, common interest privilege, work product doctrine, and any other applicable immunity and/or protection.  If, after undertaking an appropriate meet-and-confer process (which shall include a telephonic conference), the Parties are unable to resolve any dispute they have concerning the protection of documents for which a claim of Disclosure has been asserted, the receiving Party may seek relief as provided by the Court's procedures to compel production of such material.  The disclosing party shall bear the burden of proving that the disclosed information is properly privileged or subject to work product protection.  Any Protected Information submitted to the Court in connection with a challenge to the producing

Party's claim of attorney-client privilege or work product protection shall not be filed in the public record, but rather shall be redacted, filed under seal in accordance with the procedures set forth in Local Rule 5.4(b), or submitted for in camera review as appropriate.

## III.    NON-PARTY SUBPOENAS

A Party that issues a non-party subpoena is responsible for promptly producing any documents obtained under that subpoena to all other Parties in the same format the documents are produced in response to the non-party subpoena.  For the avoidance of doubt, if files are received by means other than electronic transmission, they can be sent to other Parties via electronic transmission providing that doing so does not unreasonably alter any metadata contained therein. Subject to agreement among the Parties, non-party documents may be produced in a format other than how they were produced by the non-party, *e.g.*, documents produced in native format may be formatted for production and Bates numbered to identify the producing non-party, provided that, for any purposes related to this litigation, all parties only utilize the documents in the format in which they are ultimately produced.

## IV.    DATA PRIVACY

The Parties agree to meet and confer in the event there are custodians or data sources subject to a foreign country's data privacy laws in any ESI or other discovery requests.  Nothing in this Protocol alters any Party's rights, obligations, or responsibilities under any applicable law or regulation regarding data protection or privacy, including the "French Blocking Statute and GDPR.

## V.   LIMITATIONS ON PRODUCTION

The Parties will meet and confer regarding any potential deviations from this Order, and any such conferral will be requested in writing with a specific description of the potential deviation. Production in the litigation is anticipated to be conducted on a rolling basis with the Parties making reasonable efforts to expedite the process.  If either Party feels production has been unreasonably delayed, the Parties agree to confer via telephone, email, or in person to reach a mutually agreeable consensus prior to Court involvement.  If agreement cannot be reached following the meet and confer, any party may move for resolution from the Court, consistent with the Court's applicable rules.

## VI.   MODIFICATION

This Order may be modified by a stipulated order of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED THROUGH THE PARTIES' UNDERSIGNED COUNSEL OF RECORD.**

DATED:  November 21, 2024

ROBBINS GELLER RUDMAN
 & DOWD LLP
STEPHEN R. ASTLEY (SBN 0139254)
SABRINA E. TIRABASSI (SBN 25521)
LUKE GOVEAS (admitted *pro hac vice*)
ALEX KAPLAN (SBN 1030761)


*s/ Stephen R. Astley*
STEPHEN R. ASTLEY

Case No. 23-24580-CIV-ALTONAGA/REID

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
sastley@rgrdlaw.com
stirabassi@rgrdlaw.com
lgoveas@rgrdlaw.com
akaplan@rgrdlaw.com

*Lead Counsel for Lead Plaintiffs*

VANOVERBEKE, MICHAUD
  & TIMMONY, P.C.
THOMAS C. MICHAUD
(admitted *pro hac vice*)
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
tmichaud@vmtlaw.com

*Additional Counsel for Lead Plaintiff*

DATED:  November 21, 2024          LASH GOLDBERG
                                   MARTIN B. GOLDBERG (SBN 0827029)
                                   BENJAMIN R. SHIEKMAN (SBN 113114)


                                            *s/ Christopher Turner*
                                   CHRISTOPHER TURNER

                                   Miami Tower, Suite 1200
                                   100 S.E. Second Street
                                   Miami, FL  33131
                                   Telephone:  305/347-4040
                                   mgoldberg@lashgoldberg.com
                                   bshiekman@lashgoldberg.com

                                   LATHAM & WATKINS LLP
                                   MICHELE D. JOHNSON (admitted *pro hac vice*)
                                   650 Town Center Drive, 20th Floor
                                   Costa Mesa, CA  2626
                                   Telephone:  714/540-1235
                                   michele.johnson@lw.com

- 18 -

Case No. 23-24580-CIV-ALTONAGA/REID

COLLEEN C. SMITH (admitted *pro hac vice*)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
Telephone:  858/523-5400
colleen.smith@lw.com

LATHAM & WATKINS LLP
CHRISTOPHER TURNER (admitted *pro hac vice*)
DONALD LEE THOMPSON
Florida Bar No. 1003698
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
Telephone:  202/637-2200
christopher.turner@lw.com
donald.thompson@lw.com

*Attorneys for Defendants Teleperformance SE,*
*Daniel Julien, Akash Pugalia, and Olivier Rigaudy*

- 19 -

## APPENDIX 1: METADATA FIELDS

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001  (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003  (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001  (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008  (Unique ID Parent-Child Relationships) | The Document ID number associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD, or Hard Drive. |
| RECORDTYPE | eMail, Attachment, Scanned Doc, eFile, Chat/Text | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the email or calendar entry was sent. |
| SENTTIME | HH:MM | The time the email or calendar entry was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| FILEPATH | i.e. /JsmithPC/Users/Jsmith/Desktop | The file path from the location in which the document was stored in the usual course of business.  This field should be populated for both email and e-files. |
| FILEPATH-DUP | i.e. /JSmith.pst/Inbox /Network Share/Accounting/… /TJohnsonPC/Users/TJohnson/My  Documents/... | The file paths from the locations in which the duplicate documents were stored in the usual course of business.  This field should be populated for both email and e-files and separated by semicolons. |
| AUTHOR | jsmith | The author or owner of a document from extracted metadata. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and email address of the author of an email/calendar item. An email address should always be provided. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email address of the recipient(s) of an email/calendar item. An email address should always be provided for every email if a recipient existed. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the copyee(s) of an email/calendar item.  An email address should always be provided for every email if a copyee existed. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the blind copyee(s) of an email or calendar item. An email address should always be provided for every email if a blind copyee existed. |
| SUBJECT | | The subject line of the email/calendar item. |
| MESSAGE TYPE | Appointment, Contact, Task, Distribution List, Message, etc. | An indication of the email system message type. |
| IMPORTANCE | Normal, Low, High | Email Importance Flag |
| TITLE | | The extracted document title of a document. |
| CUSTODIAN-ALL | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document originated, separated by semicolons. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| TRACK CHANGES | Yes or No | The yes/no indicator of whether tracked changes exist in the file. |
| IS EMBEDDED | Yes or No | The yes/no indicator of whether a file is embedded in another document. |
| HASH | | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document.  The same hash method (MD5 or SHA-1) should be used throughout production. |
| CONVERSATION INDEX | | ID used to tie together email threads. |
| REDACTED | Yes or Blank | If a document contains a redaction, this field will display 'Yes'. |
| TIMEZONE | PST, CST, EST, etc | The time zone the document was processed in.  **NOTE:** All documents will be normalized to a single time zone whether its where the majority of custodians are located, the company's corporate headquarters, or UTC if custodians are located in multiple locations. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document.  There should be a folder on the deliverable, containing a separate text file per document.  These text files should be named with their corresponding Bates numbers.  **Note**: Emails should include header information: author, recipient, cc, bcc, date, subject, etc.  If the attachment or e-file does not extract any text, then OCR for the document should be provided. |