UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. 23-24580-CIV-ALTONAGA/REID

CITY OF WARREN GENERAL EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated,

Plaintiff,

vs.

TELEPERFORMANCE SE, et al.,

Defendants.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ....................................................................................................1

II. OVERVIEW OF THE LITIGATION ....................................................................1

III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL...........3

A. The Rule 23(e)(2) Factors Support Approval ..........................................4

1. Plaintiffs and Lead Counsel Have Adequately Represented the Class Under Rule 23(e)(2)(A)..........................................4

2. The Settlement Was Negotiated at Arm's Length ..........................5

3. The Settlement Is Adequate in Light of the Rule 23(e)(2)(C) Factors..........................................................5

4. Class Members Are Treated Equitably ..........................................8

B. The Additional Factors Considered in the Eleventh Circuit Also Support Approval ..........................................................9

IV. CLASS CERTIFICATION IS APPROPRIATE ...........................................11

A. The Proposed Class Satisfies Rule 23(a) ............................................12

1. The Class Is so Numerous that Joinder Is Impracticable...........................12

2. Common Questions of Law and Fact Exist ..........................................12

3. Plaintiffs' Claims Are Typical of Those of the Class ..............................13

4. The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Class..........................................14

B. The Proposed Class Satisfies Rule 23(b)(3) .........................................15

V. THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY RULE 23 ...............................17

VI. PROPOSED SCHEDULE .................................................................18

VII. CONCLUSION.........................................................................19

## TABLE OF AUTHORITIES

**Page**

**CASES**

*AAL High Yield Bond Fund v. Ruttenberg*,
229 F.R.D. 676 (N.D. Ala. 2005) ..... 12

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ..... 15, 16

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984) ..... 9, 10

*Burrow v. Forjas Taurus S.A.*,
2019 WL 4247284 (S.D. Fla. Sept. 6, 2019) ..... 9

*Busby v. JRHBW Realty, Inc.*,
513 F.3d 1314 (11th Cir. 2008) ..... 14

*Collado v. 450 N. River Drive, LLC*,
2023 WL 8371030 (S.D. Fla. Dec. 4, 2023) ..... 13

*Cotter v. Checkers Drive-In Rests., Inc.*,
2021 WL 3773414 (M.D. Fla. Aug. 25, 2021) ..... 10

*DeSouza v. Aerocare Holdings LLC*,
2024 WL 1252384 (M.D. Fla. Mar. 25, 2024) ..... 5

*Desue v. 20/20 Eye Care Network, Inc.*,
2023 WL 4420348 (S.D. Fla. July 8, 2023) ..... 11

*Fleming v. Impax Labs. Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022) ..... 11

*Francisco v. Numismatic Guar. Corp. of Am.*,
2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ..... 10

*Goldstein v. Juris Publ'g, Inc.*,
2007 WL 9702141 (S.D. Fla. May 29, 2007) ..... 7

*Gonzalez v. TCR Sports Broadcasting Holding, LLP*,
2019 WL 2249941 (S.D. Fla. May 24, 2019) ..... 10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ..... 15

*Harvey v. Hammel & Kaplan Co.*,
2020 WL 7138568 (M.D. Fla. Dec. 7, 2020)....................9

*In re Blue Cross Blue Shield Antitrust Litig.*,
2024 WL 4982979 (N.D. Ala. Dec. 4, 2024)....................8

*In re Catalina Mktg. Corp. Sec. Litig.*,
2007 WL 9723529 (M.D. Fla. July 9, 2007)....................8

*In re Checking Account Overdraft Litig.*,
2022 WL 472057 (11th Cir. Feb. 16, 2022)....................13

*In re Domestic Air Transp. Antitrust Litig.*,
141 F.R.D. 534 (N.D. Ga. 1992)....................17

*In re Genworth Fin. Sec. Litig.*,
2016 WL 7187290 (E.D. Va. Sept. 26, 2016)....................7

*In re Health Ins. Innovations Sec. Litig.*,
2021 WL 1341881 (M.D. Fla. Mar. 23, 2021)
*report and recommendation adopted*
2021 WL 1186838 (M.D. Fla. Mar. 30, 2021....................5, 7

*In re HealthSouth Corp. Sec. Litig.*,
334 F. App'x 248 (11th Cir. 2009)....................8

*In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*,
2024 WL 4415214 (S.D. Fla. Oct. 5, 2024)....................7

*In re Netbank, Inc. Sec. Litig.*,
2011 WL 13176646 (N.D. Ga. Nov. 9, 2011)....................10

*In re Netbank, Inc. Sec. Litig.*,
259 F.R.D. 656 (N.D. Ga. 2009)....................12

*In re Nissan Motor Corp. Antitrust Litig.*,
552 F.2d 1088 (5th Cir. 1997)....................17

*In re U.S. Oil & Gas Litig.*,
967 F.2d 489 (11th Cir. 1992)....................3

*Kamakana v. City & Cnty. of Honolulu*,
447 F.3d 1172 (9th Cir. 2006)....................8

*Kirkpatrick v. J.C. Bradford & Co.*,
827 F.2d 718 (11th Cir. 1987)....................16

*Kukorinis v. Walmart, Inc.*,
2024 WL 3226772 (M.D. Fla. June 28, 2024) ... 9

*Lipuma v. Am. Express Co.*,
406 F. Supp. 2d 1298 (S.D. Fla. 2005) ... 11

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
762 F.3d 1248 (11th Cir. 2014) ... 14

*M.D. v. Centene Corp.*,
2020 WL 7585033 (S.D. Fla. Oct. 7, 2020) ... 10

*Mashburn v. Nat'l Healthcare, Inc.*,
684 F. Supp. 660 (M.D. Ala. 1988) ... 17

*Millstein v. Holtz*,
2022 WL 18024840 (S.D. Fla. Dec. 30, 2022) ... 3, 4, 6

*Monroe Cnty. Emps.' Ret. Sys. v. Southern Co.*,
332 F.R.D. 370 (N.D. Ga. 2019) ... 12, 13, 14

*Parsons v. Brighthouse Networks, LLC*,
2015 WL 13629647 (N.D. Ala. Feb. 5, 2015) ... 10

*Pelzer v. Vassalle*,
655 F. App'x 352 (6th Cir. 2016) ... 8

*Ponzio v. Pinon*,
87 F.4th 487 (11th Cir. 2023) ... 4, 9

*Pub. Emps.' Ret. Sys. of Miss. v. Mohawk Indus., Inc.*,
2022 WL 17920570 (N.D. Ga. Nov. 28, 2022) ... 12, 16

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
297 F.R.D. 683 (S.D. Fla. 2014) ... 10

*Schojan v. Papa Johns Int'l, Inc.*,
303 F.R.D. 659 (M.D. Fla. 2014) ... 12

*Seller v. Rushmore Loan Mgmt. Servs., LLC*,
941 F.3d 1031 (11th Cir. 2019) ... 12

*Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp.*,
2023 WL 7180604 (N.D. Ala. Aug. 25, 2023) ... 18

*Shutler v. Citizen's Disability LLC*,
347 F.R.D. 663 (S.D. Fla. 2024) ....................14

*Taig v. Currey*,
2022 WL 18539319 (S.D. Fla. June 28, 2022) ....................13

*Thorpe v. Walter Inv. Mgmt. Corp.*,
2016 WL 10518902 (S.D. Fla. Oct. 17, 2016) ....................10

*Thorpe v. Walter Inv. Mgmt. Corp.*,
2016 WL 4006661 (S.D. Fla. Mar. 16, 2016) ....................13, 15

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ....................12, 14

*Williams v. Mohawk Indus., Inc.*,
568 F.3d 1350 (11th Cir. 2009) ....................12, 16

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§78j(b) ....................2
§78t(a) ....................2
§78u-4(a)(4) ....................7

Federal Rules of Civil Procedure
Rule 23 ....................1, 11, 17, 18
Rule 23(a) ....................12
Rule 23(a)(1) ....................12
Rule 23(a)(2) ....................12
Rule 23(a)(3) ....................13
Rule 23(a)(4) ....................14
Rule 23(b)(1) ....................17
Rule 23(b)(3) ....................6, 15, 16
Rule 23(c)(2)(A) ....................17
Rule 23(e) ....................1, 3
Rule 23(e)(2) ....................4, 8, 9
Rule 23(e)(2)(A) ....................4
Rule 23(e)(2)(B) ....................5
Rule 23(e)(2)(C) ....................5
Rule 23(e)(2)(C)(ii) ....................6
Rule 23(e)(2)(C)(iii) ....................7
Rule 23(e)(2)(D) ....................8

17 C.F.R.
§240.10b-5 ....................................................................................................................1, 6, 15

**SECONDARY AUTHORITIES**

Cornerstone Research,
*Securities Class Action Settlements: 2023 Review and Analysis* (2024) ..................................6

Lead Plaintiffs City of Warren General Employees' Retirement System and City of Westland Police and Fire Retirement System (collectively, "Plaintiffs") respectfully submit this unopposed motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order").[1]

## I. INTRODUCTION

After more than a year-and-a-half of hard-fought litigation, and following months of arm's-length negotiations, the Settling Parties (defined below) have reached a proposed Settlement of this securities class action in exchange for $5,500,000 for the Class's benefit. As set forth below, this Settlement is the product of good-faith, arm's-length negotiations between experienced counsel which were supervised by David M. Murphy, a highly respected mediator with extensive experience in complex securities litigation. Plaintiffs reached this Settlement only after acquiring a thorough appreciation for the strengths and weaknesses of the case. Critically, the Settlement represents ***over 70% of potential recoverable damages***. This is a tremendous result, particularly since the median recovery in securities fraud class action settlements involving Rule 10b-5 claims is only 4.8%.[2]

The Settlement meets the standards for preliminary approval because it is likely this Court will be able to find that the Settlement is fair, reasonable, and adequate under Rule 23(e). In addition to preliminary approval, Plaintiffs request certification of the Class for settlement purposes, including the appointment of Plaintiffs as Class Representatives and Lead Counsel as Class Counsel, as well as approval of notice to the Class. Granting these requests will enable Lead Counsel to notify the Class and solicit claims, requests for exclusion, and objections, at which point the Court will be able to make a determination on final approval.

## II. OVERVIEW OF THE LITIGATION

The initial complaint was filed on April 19, 2023 in the United States District Court for the District of Idaho. ECF 1. On July 17, 2023, Judge B. Lynn Winmill appointed City of Warren

---

[1] All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation of Settlement dated January 10, 2025 ("Stipulation"), which is attached as Exhibit A to the accompanying Declaration of Stephen R. Astley.

[2] *See* Cornerstone Research, *Securities Class Action Settlements: 2023 Review and Analysis* (2024), at 6, https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf (analyzing settlements from 2014-2023).

General Employees' Retirement System and City of Westland Police and Fire Retirement System as Lead Plaintiffs, and approved their selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel. ECF 16. Following that appointment, the Settling Parties agreed to postpone the filing of an amended complaint and briefing of a motion to dismiss until after litigating a motion to transfer the case. *See* ECF 26, 29-30. Judge Winmill granted the motion on December 4, 2023, and the case was transferred to this District. ECF 32. On December 29, 2023, Plaintiffs filed their first amended complaint (ECF 62); Defendants Teleperformance SE ("Teleperformance" or "Company"), Daniel Julien, Akash Pugalia, and Olivier Rigaudy (collectively, "Defendants," and together with Plaintiffs, "Settling Parties") moved to dismiss on January 12, 2024. ECF 65. The Court granted that motion in part on May 22, 2024, but gave leave to amend. ECF 68.

On June 3, 2024, Plaintiffs filed the operative Second Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF 71) ("SAC"), asserting violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C §§78j(b) and 78t(a), based on Defendants' allegedly materially false and misleading statements and omissions regarding the working conditions of Teleperformance content moderators. These statements included representations that Teleperformance had taken particular steps to protect its content moderators, including "hiring procedure[s] involving a series of psychometric tests designed to identify resilient candidates"; "resilience training"; "continuous access to counseling, including by certified therapists"; and "a 24/7 support program during and after the work cycle." SAC, ¶44. The SAC alleged that the truth regarding the working conditions of Teleperformance content moderators was revealed through reporting published in *Forbes* and *Time*, causing losses to investors following the publication of those articles on August 4, 2022 and November 9, 2022, respectively. *Id.*, ¶¶47-52, 70-73. On June 17, 2024, Defendants again moved to dismiss. ECF 72. The Court denied this motion, but found that loss causation was not sufficiently alleged as to one of the two corrective disclosures pleaded in the SAC. ECF 75 at 23-26.

Thereafter, the Court entered a case schedule setting all deadlines through trial, which was set to begin on September 8, 2025. ECF 77. The parties began pursuing discovery, including by exchanging requests for production, negotiating a Stipulated Protocol Governing Discovery of Hard Copy and Electronically Stored Information and an Agreed Confidentiality and Rule 502(d) Order

(which the Court entered on November 27, 2024, ECF 86), and exchanging expert reports relevant to class certification. Over the course of several months, the Settling Parties engaged in protracted, substantive discussions regarding the scope of merits discovery. Plaintiffs also produced documents and Defendants deposed Plaintiffs' market efficiency expert, Dr. Zahn Bozanic. Plaintiffs then moved for class certification on December 5, 2024.[3] ECF 87.

In September 2024, the Settling Parties engaged the services of David M. Murphy of Phillips ADR, who has extensive experience mediating complex class action litigations such as this action. *See* ECF 79. The Settling Parties scheduled mediation to occur on November 7, 2024, and exchanged briefs setting forth their respective arguments concerning liability and damages. Early on the morning of the scheduled mediation, Mr. Murphy informed counsel for the Settling Parties that he was ill and would be unable to attend. Counsel for the Settling Parties met in person without Mr. Murphy present and attempted to resolve the claims, but were unable to do so. *See* ECF 84. The Settling Parties and Mr. Murphy then rescheduled mediation for December 2, 2024. *Id.* The rescheduled mediation took place as scheduled, but did not result in a settlement. *See* ECF 88-1.

In the week following the mediation, the Settling Parties continued to communicate with Mr. Murphy regarding a potential resolution. *Id.* On Saturday, December 7, 2024, Mr. Murphy issued a mediator's recommendation, which the Settling Parties accepted on Monday, December 9, 2024, agreeing to settle this action in the amount of $5,500,000, subject to approval by the Court. *Id.*

## III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any class action settlement, but such approval is "'committed to the sound discretion of the district court.'" *Millstein v. Holtz*, 2022 WL 18024840, at *3 (S.D. Fla. Dec. 30, 2022) (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992)).[4] Courts recognize a "strong judicial policy favoring

[3] Because the Court's May 22, 2024 ruling on the motion to dismiss found loss causation insufficiently alleged as to the November 9, 2022 *Time* article, the Class Period was narrowed, for purposes of that motion, to February 20, 2020 to August 3, 2022.

[4] Unless otherwise noted, all emphasis is added and citations are omitted. This brief uses (cleaned up) to indicate that internal quotation marks, alterations, and/or citations have been omitted from quotations.

settlement," particularly in class actions. *See, e.g.*, *Ponzio v. Pinon*, 87 F.4th 487, 494 (11th Cir. 2023). This is because "in class actions and other complex matters . . . the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain." *Millstein*, 2022 WL 18024840, at *3.

### A. The Rule 23(e)(2) Factors Support Approval

In determining whether a settlement is "fair, reasonable, and adequate," Rule 23(e)(2) directs courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . .; and (D) the proposal treats class members equitably relative to each other.

#### 1. Plaintiffs and Lead Counsel Have Adequately Represented the Class Under Rule 23(e)(2)(A)

Plaintiffs and Lead Counsel have satisfied Rule 23(e)(2)(A) by diligently prosecuting this action for more than a year-and-a-half. Among other things, Plaintiffs conducted a detailed factual investigation that included: (1) analysis of the relevant factual events; (2) review of Teleperformance's public statements (including in regulatory filings, conference call transcripts, and press releases); (3) review of analyst reports concerning Teleperformance; (4) consultation with experts; and (5) interviews with former Teleperformance employees. In tandem with this investigation, Plaintiffs researched the legal issues underlying the claims, and produced a detailed complaint and two amended complaints. *See generally* SAC; ECF 1, 62.

Plaintiffs then prevailed in large part against Defendants' motion to dismiss the SAC, and began conducting discovery. Given the Court-ordered schedule (ECF 77), which provided for class discovery to be completed well before merits discovery, the focus in the early months of discovery was on class issues. However, Plaintiffs also engaged in protracted, substantive negotiations regarding the scope of merits discovery and the parameters for Defendants' collection of electronically stored information.

The net result of all these efforts is an impressive settlement. There can be no doubt that Plaintiffs and Lead Counsel have adequately represented the Class.

**2. The Settlement Was Negotiated at Arm's Length**

The Settlement was "negotiated at arm's length" as required by Rule 23(e)(2)(B). Settlement negotiations took place over several months, and included an all-day mediation session on December 2, 2024 before David M. Murphy, a highly respected mediator. Mr. Murphy's involvement – and the settlement at an amount recommended by Mr. Murphy and then accepted by all parties – demonstrate that the Settlement was negotiated at arm's length. *See, e.g.*, *DeSouza v. Aerocare Holdings LLC*, 2024 WL 1252384, at *3 (M.D. Fla. Mar. 25, 2024) ("[T]he proposal was negotiated at arm's length because there is no evidence of fraud or collusion and this is presumed because the agreement was reached assisted by a skilled mediator.").

**3. The Settlement Is Adequate in Light of the Rule 23(e)(2)(C) Factors**

Rule 23(e)(2)(C) specifies four factors for courts to consider in determining whether "the relief provided for the class is adequate":

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]"

Each one supports the Settlement.

***First***, in assessing the proposed Settlement, the Court should balance the benefits afforded to the Class – including the immediacy and certainty of the recovery – against the significant costs, risks, and delay of proceeding further. While Plaintiffs remain confident in their ability to ultimately prove the alleged claims, further litigation is always a risky proposition – particularly given the complexity of securities litigation. *See, e.g.*, *In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *8 (M.D. Fla. Mar. 23, 2021) ("[T]here is an inherent risk in any litigation but particularly so in securities class action litigation."), *report and recommendation adopted* 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021). Defendants had already advanced a number of arguments disputing both liability and damages. For instance, in their most recent motion to dismiss, Defendants argued that the SAC alleged only an "isolated operational problem[,]" rather than "widespread issues[,]" among the Company's 400,000+ employees, and therefore it was implausible that high level executives like the Individual Defendants would have known anything about the

horrible working conditions alleged in the SAC. *See* ECF 72 at 8- 9, 16. While Plaintiffs prevailed against these arguments at the pleadings stage, Defendants would no doubt have continued to dispute those facts – and persisted in their various other arguments regarding falsity, materiality, and loss causation (*see generally id.* at 5-18) – at later stages of the case. No Class has yet been certified, and Defendants would certainly have opposed the motion for certification had the Settlement not been reached. Indeed, Defendants retained an expert witness to opine that it would require difficult, detailed analysis of records from multiple sources to determine whether a potential Class Member's purchase of Teleperformance ADRs met the relevant domesticity requirements – presumably to challenge the predominance requirement of Rule 23(b)(3), which would have been an issue of first impression in this Circuit. In short, there were significant obstacles to any recovery.

The potential cost, risks, and delays of further litigation are particularly salient in light of the outstanding result here, where the Settlement represents over 70% of potential recoverable damages and compensates Class Members for losses caused on November 9, 2022 – an alleged corrective disclosure that the Court dismissed from the case.[5] To achieve a better result, Plaintiffs would need to succeed not only at trial, but also on an appeal of the Court's rulings on loss causation. Trying, and then appealing, a complex case like this one would cause litigation costs to balloon. *See Millstein*, 2022 WL 18024840, at *3 ("The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain."). This dramatically exceeds the typical result in securities class actions; over the past decade, the median settlement in cases alleging Rule 10b-5 claims recovered only 4.8%.[6]

***Second***, the method of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) is effective. The notice plan includes direct mail notice to all those who can be identified with reasonable effort, as well as publication in a newspaper directed towards investors

[5] Plaintiffs estimate aggregate damages of approximately $7.845 million for the entire Class Period, which includes the full period pleaded in the SAC. This estimate reflects a 95% discount applied to the portion of the Class Period that the Court dismissed, to reflect the lower value of those claims.

[6] *See Securities Class Action Settlements*, *supra* note 1, at 6 (analyzing settlements from 2014-2023).

and over the Internet. In addition, toll-free telephone and email support will be provided, and a Settlement-specific website will be created where key documents will be posted, including the Stipulation, Notice, Proof of Claim and Release, and Preliminary Approval Order.

The distribution of the Settlement proceeds to the Class is also effective, as it includes a standard claim form which requests the information necessary to calculate a claimant's claim pursuant to the Plan of Allocation ("Plan"). The Plan will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan was prepared by Plaintiffs' damages expert and is based on an analysis of the artificial inflation in the price of Teleperformance ADRs during the Class Period. The Claims Administrator will conduct a thorough claims process and address claim deficiencies before any funds are distributed.

***Third***, the proposed attorneys' fees are appropriate and weigh in favor of approval. Rule 23(e)(2)(C)(iii) addresses the terms of any proposed award of attorneys' fees. As stated in the Notice, Lead Counsel intends to seek an award of attorneys' fees in an amount up to one-third of the Settlement Amount and expenses in an amount not to exceed $200,000, plus interest on both amounts. This fee request is in line with other fee awards approved in similar class action cases; indeed, "district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund." *In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*, 2024 WL 4415214, at *5 (S.D. Fla. Oct. 5, 2024); *see also Goldstein v. Juris Publ'g, Inc.*, 2007 WL 9702141, at *3 n.1 (S.D. Fla. May 29, 2007) (Altonaga, J.) (collecting cases awarding 30% or similar percentages). "This is true for comparable securities actions in district courts in the Eleventh Circuit as well." *Health Ins. Innovations*, 2021 WL 1341881, at *12 (collecting cases awarding a third or more of the settlement fund).[7]

The Stipulation also provides that any attorneys' fees and expenses awarded by the Court shall be paid to Lead Counsel upon entry of the Judgment and an order awarding such fees and expenses. *See* Stipulation, ¶6.2; *see also In re Genworth Fin. Sec. Litig.*, 2016 WL 7187290, at *2 (E.D. Va. Sept. 26, 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order"). Such "provisions are

---

[7] Further, as explained in the Notice, Plaintiffs intend to request an amount not to exceed $10,000 each pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class.

common." *Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016); *see also In re Blue Cross Blue Shield Antitrust Litig.*, 2024 WL 4982979, at *22 (N.D. Ala. Dec. 4, 2024) (approving "quick pay" agreement as "fair and reasonable").

***Fourth***, there are no agreements to disclose, other than a standard supplemental agreement concerning the number of opt-outs; that agreement provides that, if enough Class Members opt out of the Settlement such that the number of Teleperformance ADRs meets or exceeds a certain amount, Defendants shall have the option to terminate the Settlement. *See* Stipulation, ¶7.4.[8]

#### 4. Class Members Are Treated Equitably

The proposed Plan "treats class members equitably relative to each other." Rule 23(e)(2)(D). The Plan was drafted with the assistance of Plaintiffs' expert, Dr. Zahn Bozanic, and is designed to equitably distribute the Net Settlement Fund to those Class Members who suffered economic losses as a proximate result of the alleged wrongdoing. The Plan treats Class Members equitably by providing that each Class Member will receive a *pro rata* share of the Net Settlement Fund based on their purchases, acquisitions, and sales of Teleperformance ADRs during the Class Period. *See, e.g.*, *In re Catalina Mktg. Corp. Sec. Litig.*, 2007 WL 9723529, at *1 (M.D. Fla. July 9, 2007) ("Although the plan of allocation benefits some members of the class differently, it was developed to fairly account for the relative strength of individual claims and the timing of the relevant securities purchases.").

* * *

Thus, each factor identified under Rule 23(e)(2) is satisfied. Given the litigation risks involved, the complexity of the underlying issues, and the skill of defense counsel, the $5,500,000.00 recovery is excellent. Such a result could not have been achieved without the full commitment of Plaintiffs and Lead Counsel.

---

[8] There are "compelling reasons" for keeping the Supplemental Agreement confidential. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Keeping confidential the threshold number of exclusions which give Defendants the option to terminate the Settlement is necessary to avoid enabling one or more stockholders to selfishly use this knowledge to insist on a higher payout for themselves while threatening to eviscerate the Settlement, which would be detrimental to the interest of the Class. *See In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 & n.4 (11th Cir. 2009) ("The threshold number of opt outs required to trigger the blow provision is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out.").

### B. The Additional Factors Considered in the Eleventh Circuit Also Support Approval

In addition to the Rule 23(e)(2) factors, courts in the Eleventh Circuit consider six additional factors set forth in *Bennett v. Behring Corp.*, 737 F.2d 982, 985 (11th Cir. 1984) – many of which overlap with Rule 23(e)(2). *See Ponzio*, 87 F.4th at 494-95 (explaining that the *Bennett* factors do not "displace" the provisions of Rule 23(e)(2), which are the "core concerns" for this inquiry, but can "complement" and "inform" them). These factors are:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986. These factors support a finding that the Settlement is fair, reasonable, and adequate.

First, as discussed above (*see* §III.A.1 and 3), while Plaintiffs believe in the merits of their claims, success at trial is never guaranteed. Litigation is risky, and Plaintiffs would face additional obstacles at the class certification and summary judgment stages even before trial began. This factor therefore weighs in favor of approval. *See, e.g.*, *Kukorinis v. Walmart, Inc.*, 2024 WL 3226772, at *5 (M.D. Fla. June 28, 2024) (finding the "likelihood of success at trial is far from certain" and citing arguments against class certification and liability).

The second and third *Bennett* factors focus on the range of possible recovery and the point on (or below) and whether the Settlement falls within a range of reasonableness. "[T]he relevant inquiry is whether the proposed Settlement affords relief that falls within the range of reasonableness, and not whether it is the most favorable possible result of litigation." *Harvey v. Hammel & Kaplan Co.*, 2020 WL 7138568, at *6 (M.D. Fla. Dec. 7, 2020) (cleaned up). "The fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate. Indeed, a settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Burrow v. Forjas Taurus S.A.*, 2019 WL 4247284, at *9 (S.D. Fla. Sept. 6, 2019) (cleaned up). This factor clearly favors approval, given the recovery of over 70% of potential recoverable damages. *See* §III.A.3, *supra*.

The fourth factor is "the complexity, expense and duration of litigation." *Bennett*, 737 F.2d at 986. "A securities case, by its very nature, is a complex animal." *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016). Continuing to litigate the case would cause expenses to skyrocket – particularly since all parties would have had to prepare the case for trial in under a year. *See* ECF 77 (scheduling trial). Thus, this factor favors approval. *See In re Netbank, Inc. Sec. Litig.*, 2011 WL 13176646, at *4 (N.D. Ga. Nov. 9, 2011) ("The complexities and uncertainties characteristic of complex securities litigation and the additional time and expense which would be required to further prosecute this case also militate in favor of approving the Settlement.").

The final *Bennett* factor is "the stage of proceedings at which the settlement was achieved."[9] 737 F.2d at 986. The purpose of this factor is to ensure that Plaintiffs "had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008). But this does not mean that significant discovery is required; indeed, "early settlements are favored and 'vast formal discovery need not be taken.'" *M.D. v. Centene Corp.*, 2020 WL 7585033, at *7 (S.D. Fla. Oct. 7, 2020) (quoting *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014)). While formal merits discovery was still in its early stages, Lead Counsel conducted an extensive investigation prior to filing the amended complaint – including consultation with experts regarding potential damages – and participated in class discovery. This is all that is required. *See Parsons v. Brighthouse Networks, LLC*, 2015 WL 13629647, at *12 (N.D. Ala. Feb. 5, 2015) (approving settlement where "[a]lthough full-blown merits discovery has not been taken in this case, class discovery was extensive, and even before filing the complaint, Plaintiffs' counsel conducted an extensive economic and factual investigation"). Accordingly, courts frequently approve settlements even with little to no discovery completed. *Cotter v. Checkers Drive-In Rests., Inc.*, 2021 WL 3773414, at *9 (M.D. Fla. Aug. 25, 2021) (finding this factor weighed in favor of settlement where the parties "settled relatively early"); *Gonzalez v. TCR Sports Broadcasting Holding, LLP*, 2019 WL 2249941, at *5 (S.D. Fla. May 24,

[9] The fifth *Bennett* factor – "the substance and amount of opposition to the settlement" – cannot be analyzed at this stage because notice has not yet been provided to the Class. 737 F.2d at 986.

2019) (same, where the parties settled before plaintiffs moved for class certification); *Fleming v. Impax Labs. Inc.*, 2022 WL 2789496, at *6 (N.D. Cal. July 15, 2022) (finding this factor weighed in favor of settlement in securities case where formal discovery had not yet begun); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1316 (S.D. Fla. 2005) (Altonaga, J.) (approving settlement with "minimal discovery about this claim").

Finally, in evaluating these factors, "[t]he Court should also give great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Desue v. 20/20 Eye Care Network, Inc.*, 2023 WL 4420348, at *9 (S.D. Fla. July 8, 2023). Lead Counsel is highly experienced in securities fraud class actions, and strongly recommends approval of the Settlement. Accordingly, the Court should grant preliminary approval.

## IV. CLASS CERTIFICATION IS APPROPRIATE

Plaintiffs also seek to certify a Class for the purpose of settlement, which is appropriate if the Class meets the certification requirements of Rule 23. *See, e.g.*, *id.* at *5 ("A class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue."). The Class meets these requirements. Moreover, under the terms of the Settlement, Defendants have agreed, for purposes of settlement, to certification of the following Class: "all Persons who purchased or otherwise acquired Teleperformance ADRs during the Class Period."[10] Stipulation, ¶1.4. The Class is the same as that alleged in the SAC, and differs from the class Plaintiffs previously moved to certify for litigation purposes (ECF 87) only in terms of the length of the Class Period.[11]

[10] "Excluded from the Class are Defendants and members of their immediate families, the Officers and directors of the Company at all relevant times, and members of their immediate families, the legal representatives, heirs, successors or assigns of any of the foregoing, and any entity in which Defendants have or had a controlling interest. Also excluded from the Class is any Person who would otherwise be a Member of the Class but who validly and timely requests exclusion in accordance with the requirements set by the Court." Stipulation, ¶1.4.

[11] For purposes of the prior Motion for Class Certification (ECF 87) – which the Court denied as moot in light of the Settlement (ECF 89) – the Court's loss causation rulings had the effect of shortening the Class Period so as to end on August 3, 2022. However, for purposes of the Settlement, Class Members that purchased Teleperformance ADRs after that date also receive a recovery that is discounted to reflect the lower value of their claims in light of the loss causation ruling.

**A. The Proposed Class Satisfies Rule 23(a)**

Rule 23(a) requires that: "(1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy]." Each of these requirements is easily met.

**1. The Class Is so Numerous that Joinder Is Impracticable**

Rule 23(a)(1)'s numerosity requirement is a "generally low hurdle," and "a plaintiff need not show the precise number of members in the class." *Schojan v. Papa Johns Int'l, Inc.*, 303 F.R.D. 659, 664 (M.D. Fla. 2014). "The general rule of thumb in the Eleventh Circuit for meeting the numerosity requirement is that less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Pub. Emps.' Ret. Sys. of Miss. v. Mohawk Indus., Inc.*, 2022 WL 17920570, at *3 (N.D. Ga. Nov. 28, 2022). As a result, numerosity "is generally assumed to have been met in class action suits involving nationally traded securities." *In re Netbank, Inc. Sec. Litig.*, 259 F.R.D. 656, 664 (N.D. Ga. 2009). This case is no different; approximately 2.1% of the total outstanding Teleperformance ADRs were traded on a weekly basis during the Class Period – representing an average daily trading volume of 8,922 ADRs. *See* ECF 87 at 2.

**2. Common Questions of Law and Fact Exist**

Rule 23(a)(2) requires a showing that "questions of law or fact" are common to the class. This is also a "low hurdle." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009). Indeed, "'even a single common question will do.'" *Seller v. Rushmore Loan Mgmt. Servs., LLC*, 941 F.3d 1031, 1040 (11th Cir. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)). In the securities fraud arena, "[t]he inherent legal and factual questions arising from the alleged existence of a single fraudulent scheme against many investors are illustrative of the kind of common questions contemplated by the commonality requirement." *AAL High Yield Bond Fund v. Ruttenberg*, 229 F.R.D. 676, 681 (N.D. Ala. 2005). "Generally, where plaintiffs allege that the action is a result of a unified scheme to defraud investors, the element of commonality is met." *Monroe Cnty. Emps.' Ret. Sys. v. Southern Co.*, 332 F.R.D. 370, 378 (N.D. Ga. 2019) (citing *Netbank*, 259 F.R.D. at 664). Just so here, where all Class Members are alleged to have been

defrauded by the same misleading statements and omissions over the same period of time, and suffered similar losses as a result. Common questions abound.

### 3. Plaintiffs' Claims Are Typical of Those of the Class

Rule 23(a)(3) requires that the class representatives' claims or defenses be "typical" of those of the class. "The typicality requirement focuses on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification," and "the claim of a class representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Collado v. 450 N. River Drive, LLC*, 2023 WL 8371030, at *7 (S.D. Fla. Dec. 4, 2023) (cleaned up). "Typicality 'does not require ***identical*** claims or defenses, and factual variations will render a class representative's claim atypical only if the representative's position differs markedly from other class members.'" *Taig v. Currey*, 2022 WL 18539319, at *2 (S.D. Fla. June 28, 2022) (quoting *In re Checking Account Overdraft Litig.*, 2022 WL 472057, at *3 (11th Cir. Feb. 16, 2022)) (emphasis in original).

Like other Class Members, Plaintiffs purchased Teleperformance ADRs at market prices during the Class Period, and suffered losses as a result. *See* Declaration of Christine Cassani on Behalf of City of Warren General Employees' Retirement System in Support of Lead Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel, ECF 87-1, Ex. B ("Cassani Decl."), ¶2; Declaration of Steven J. Smith on Behalf of City of Westland Police and Fire Retirement System in Support of Lead Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel, ECF 87-1, Ex. C ("Smith Decl."), ¶2. Plaintiffs' claims rest on the same alleged facts and legal theories as those of the Class, and therefore fulfill the typicality requirement. *See Monroe Cnty.*, 332 F.R.D. at 379; *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 4006661, at *8 (S.D. Fla. Mar. 16, 2016) (typicality established where "[t]he alleged fraudulent statements comprise the wrongful acts which will serve as the ***same*** factual predicate for Plaintiffs and all members of the class and which will determine whether Defendants are liable under the ***same*** securities fraud theories") (emphasis in original).

### 4. The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequacy is assessed through a two-pronged inquiry: "'(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Shutler v. Citizen's Disability LLC*, 347 F.R.D. 663, 674 (S.D. Fla. 2024) (quoting *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008)).

Plaintiffs and Lead Counsel readily satisfy adequacy. In support of their Motion for Class Certification filed last month (ECF 87), Plaintiffs explained that they had supervised and monitored the case to date and reaffirmed their commitment to its continued prosecution going forward. *See* Cassani Decl., ¶¶4-5; Smith Decl., ¶¶4-5. As discussed above, Plaintiffs have suffered the same injury as the Class and their claims rest on the same legal theories and facts. *See* §IV.A.2-3, *supra*; *cf. Wal-Mart*, 564 U.S. at 349 n.5 (noting that the adequacy requirement "tend[s] to merge" with the typicality and commonality analyses). Their interest in maximizing the recovery is aligned with the interests of the Class. *See* Cassani Decl., ¶¶6-7; Smith Decl., ¶¶6-7; *see also Monroe Cnty.*, 332 F.R.D. at 379 ("Plaintiffs' interests in establishing Defendants' liability and maximizing the recovery are aligned with the interests of absent Class members."). And as sophisticated, institutional investors, Plaintiffs are exactly the type of plaintiffs Congress sought to encourage to lead securities class actions when it enacted the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1260 (11th Cir. 2014).

Plaintiffs have also retained qualified, experienced counsel to prosecute the case. *See, e.g.*, *Monroe Cnty.*, 332 F.R.D. at 380 ("Robbins Geller is well qualified to prosecute this case on behalf of Plaintiffs and the other members of the Class. Robbins Geller attorneys have extensive securities litigation experience and have successfully prosecuted numerous securities fraud class actions[.]"). Lead Counsel have committed (and continue to commit) considerable resources to prosecuting this action, and have vigorously represented the interests of the Class to date. Thus, adequacy is satisfied.

**B. The Proposed Class Satisfies Rule 23(b)(3)**

The Rule 23(b)(3) requirements – namely, that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" – are also met. As the Supreme Court has explained, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Further, predominance of common questions is also readily found in this securities fraud class action because the plaintiffs are entitled to rely on the fraud-on-the-market presumption of reliance. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014). The fraud-on-the-market theory "holds that the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations" and that whenever an "investor buys or sells stock at the market price, his reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action." *Id.*

Here, the common questions of law and fact set forth above predominate over any conceivable individual question because Defendants' alleged misconduct affected all Class Members in the same manner. Specifically, throughout the Class Period, Defendants allegedly made material misrepresentations and omissions, which were disseminated to shareholders, and allegedly artificially inflated the price of Teleperformance ADRs. The Class relied on Defendants' alleged material misrepresentations and omissions, as reflected in the prices they paid for Teleperformance ADRs. Thus, each Class Member would need to demonstrate the same facts to establish Defendants' alleged violations of the Exchange Act (*i.e.*, through public statements made to the market and documents publicly filed with the SEC). Specifically, generalized proof would be necessary with respect to whether: (1) Defendants' alleged misstatements and omissions were materially false or misleading; (2) Defendants allegedly possessed the requisite scienter; and (3) Teleperformance's investors relied on Defendants' alleged misstatements and omissions, and were allegedly damaged thereby. *Cf. Thorpe*, 2016 WL 4006661, at *10 ("the overriding aim of the Plaintiffs and the class will be to prove liability by, in part, establishing the materiality of the alleged misstatements and that they were made with scienter"). Accordingly, Plaintiffs would be able to present common legal and

factual arguments regarding all elements of their claims, including reliance, thus satisfying the predominance requirement of Rule 23(b)(3).

Rule 23(b)(3) further requires a showing that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The relevant concerns include "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.* However, the fourth factor, manageability, does not apply in the context of a settlement class because the "proposal is that there be no trial." *See Amchem*, 521 U.S. at 593.

Each of the relevant factors weighs in favor of certification – as is typical in securities fraud cases. *See, e.g.*, *Pub. Emps.' Ret. Sys.*, 2022 WL 17920570, at *11 ("As a general rule, class action treatment presents a superior method for the fair and efficient resolution of securities fraud cases."). First, there is no indication that individual Class Members have individualized interests in controlling their claims – indeed, the Class is numerous and geographically dispersed, and individual damages are likely too small to make litigation economically viable. Second, Lead Counsel is unaware of any other litigation by Class Members related to the facts and legal theories underlying this case. Third, the Southern District of Florida is a suitable forum, as evidenced by the fact that another district court transferred the case here at Defendants' request. *See generally* ECF 32. And fourth, Lead Counsel does not foresee any management difficulties, particularly because common issues predominate over individual ones. *See Williams*, 568 F.3d at 1358 ("If a district court determines that issues common to all class members predominate over individual issues, then a class action will likely be more manageable than and superior to individual actions."). All of the Rule 23(b)(3) factors weigh in favor of certification. In contrast, "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 (11th Cir. 1987).

Class certification for the purposes of settlement is, therefore, appropriate.

## V. THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY RULE 23

Rule 23(c)(2)(A) states, "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A). The due process clause requires that in a class action, notice of the settlement and an opportunity to be heard must be given to absent class members. *Cf. Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) ("This Court is of the opinion that the notice given to members of the plaintiff class by publication and by mail, as aforesaid, complied with all requirements of due process, all requirements of Rule 23 of the Federal Rules of Civil Procedure, and constituted the best notice practicable under the circumstances."). Thus, the proposed method of notice comports with Rule 23 and the requirements of due process. *See, e.g.*, *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 550-51 (N.D. Ga. 1992) (providing that notice by mail to those class members who could be identified and by publication only to those who could not be identified satisfies due process requirements).

Here, the Settling Parties have negotiated the form of a Notice to be disseminated to all persons who fall within the definition of the Class and whose names and addresses can be identified by brokers or other nominees. The Settling Parties further propose to publish a summary form of notice of an investor-focused newspaper and over the Internet, establish a Settlement website to post Settlement-related information, and a toll-free telephone number to answer Class Member inquiries.

Where notice is being sent in connection with a proposed settlement, the notice must also inform class members of the terms of the settlement and their options with respect thereto. *See id.* at 553-55; *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1103-05 (5th Cir. 1997). The proposed form of the Notice describes the nature, history, and status of the Litigation; sets forth the definition of the Class; states the Class's claims and issues; discloses the right of people who fall within the definition of the Class to object or seek exclusion from the Class, as well as the deadlines and procedures for doing so and warns of the binding effect of the Settlement approval proceedings. In addition, the Notice describes the Settlement and sets forth the $5,500,000.00 amount of the Settlement; explains the proposed Plan and the procedure and deadline for submitting a Proof of Claim and Release; describes the maximum amount of attorneys' fees and expenses that Lead Counsel intends to seek in connection with final Settlement approval; provides contact information for Lead Counsel; and summarizes the reasons the Settling Parties are proposing the Settlement. The

Notice also discloses the date, time, and place of the formal Settlement Hearing, and the procedures for commenting on the Settlement and appearing at the hearing. The manner and content of the Notice, Proof of Claim and Release, and Summary Notice proposed here fulfill all applicable requirements of Fed. R. Civ. P. 23, the PSLRA, and due process. Courts routinely approve similar methods of notice in securities class action settlements. *See, e.g.*, *Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp.*, 2023 WL 7180604, at *8 (N.D. Ala. Aug. 25, 2023).

## VI. PROPOSED SCHEDULE

In connection with the final approval of the Settlement, the Settling Parties propose the following schedule:

| EVENT | TIME FOR PERFORMANCE OR COMPLIANCE |
|---|---|
| Deadline for commencing mailing of the Notice and Proof of Claim and Release to Class Members ("Notice Date") | 21 calendar days after entry of the Preliminary Approval Order |
| Deadline for publication of the Summary Notice | 7 calendar days after the Notice Date |
| Deadline for filing initial papers in support of final approval of the Settlement, Plan, and application for an award of attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for submitting objections and requests for exclusion | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply in response to any objections and in further support of approval of the Settlement and Plan, or in support of application for an award of attorneys' fees and expenses | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | Approximately 100 calendar days from entry of the Preliminary Approval Order, at the Court's convenience |
| Deadline for submitting Proofs of Claim and Release | 90 calendar days after the Notice Date |

## VII. CONCLUSION

Plaintiffs respectfully request that the Court: (1) preliminarily approve the Settlement; (2) preliminarily certify the Class for settlement purposes; (3) approve the form and manner of providing notice of pendency and Settlement to the Class; and (4) set a Settlement Hearing date to consider final approval of the Settlement and related matters.

DATED: January 10, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
STEPHEN R. ASTLEY (SBN 0139254)
SABRINA E. TIRABASSI (SBN 25521)
LUKE GOVEAS (admitted *pro hac vice*)
ALEX KAPLAN (SBN 1030761)

*/s/ Stephen R. Astley*
STEPHEN R. ASTLEY

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
sastley@rgrdlaw.com
stirabassi@rgrdlaw.com
lgoveas@rgrdlaw.com
akaplan@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
THEODORE J. PINTAR
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com

*Lead Counsel for Lead Plaintiffs*

VANOVERBEKE, MICHAUD
& TIMMONY, P.C.
THOMAS C. MICHAUD (admitted *pro hac vice*)
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

*Additional Counsel for Lead Plaintiffs*