UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. 23-24580-CIV-ALTONAGA/REID

| | |
|---|---|
| CITY OF WARREN GENERAL EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| TELEPERFORMANCE SE, et al., | ) ) ) |
| Defendants. | ) ) ) |

LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION AND INCORPORATED
MEMORANDUM OF LAW

Case No. 23-24580-CIV-ALTONAGA/REID

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND..........................................................3

III.  THE SETTLEMENT WARRANTS FINAL APPROVAL................................................5

    A.    The Standards for Final Approval of Class Action Settlements ............................5

    B.    The Proposed Settlement Satisfies Both the Rule 23(e)(2) and the Eleventh
        Circuit Requirements ...........................................................................................6

        1.    Plaintiffs and Lead Counsel Have Adequately Represented the
               Class.................................................................................................6

        2.    The Settlement Is the Product of Arm's-Length Negotiations ...................8

        3.    The Relief Provided to the Class Is Adequate .............................................9

               a.    The Substantial Benefits for the Class, Weighed Against
                    the Costs, Risks, and Delay of Further Litigation Support
                    Final Approval ...................................................................9

               b.    The Proposed Method for Distributing Relief to the Class Is
                    Effective..........................................................................12

               c.    Lead Counsel's Fee Request Is Fair and Reasonable ...................12

               d.    There Are No Other Agreements Other than the Opt-Out
                      Agreement.......................................................................13

        4.    All Class Members Are Treated Equitably ................................................13

         5.    The Likelihood of Success at Trial and Complexity, Expense, and
               Duration of the Litigation Support Final Approval of the
               Settlement ....................................................................................13

        6.    The Settlement Amount Is Reasonable Considering the Range of
               Possible Recoveries .....................................................................14

        7.    The Stage of Proceedings at Which Settlement Was Achieved
               Supports Final Approval ..............................................................14

4905-9824-8241.v1

Case No. 23-24580-CIV-ALTONAGA/REID

**Page**

8.      The Favorable Response to the Settlement from the Class Supports
        Final Approval ............................................................................................15

IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE....................................16

V.     NOTICE TO THE CLASS SATISFIES RULE 23 AND DUE PROCESS .....................17

VI.    THE COURT SHOULD CERTIFY THE CLASS ............................................................18

VII.   CONCLUSION...............................................................................................................18

4905-9824-8241.v1

Case No. 23-24580-CIV-ALTONAGA/REID

# TABLE OF AUTHORITIES

**Page**

## CASES

*AAL High Yield Bond Fund v. Ruttenberg,*
   2005 WL 5926936 (N.D. Ala. June 2, 2005)..........................................................5

*Bennett v. Behring Corp.,*
   737 F.2d 982 (11th Cir. 1984) ...................................................................... *passim*

*Cabot E. Broward 2 LLC v. Cabot,*
   2018 WL 5905415 (S.D. Fla. Nov. 9, 2018)........................................................13

*Christine Asia Co. v. Yun Ma,*
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ...........................................12, 13, 16

*City of Warren Gen. Emps.' Ret. Sys. v. Teleperformance SE,*
   746 F. Supp. 3d 1395 (S.D. Fla. 2024) ...............................................................1

*Cotter v. Checkers Drive-In Rests., Inc.,*
   2021 WL 3773414 (M.D. Fla. Aug. 25, 2021) .....................................................15

*Deas v. Russell Stover Candies, Inc.,*
   2005 WL 8158201 (N.D. Ala. Dec. 22, 2005)..................................................9, 14

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974)............................................................................................17

*Fleming v. Impax Laby's Inc.,*
   2022 WL 2789496 (N.D. Cal. July 15, 2022)......................................................15

*Francisco v. Numismatic Guar. Corp. of Am.,*
   2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ........................................................15

*Goldstein v. Juris Publ'g, Inc.,*
   2007 WL 9702141 (S.D. Fla. May 29, 2007) ......................................................13

*Gonzalez v. TCR Sports Broadcasting Holding, LLP,*
   2019 WL 2249941 (S.D. Fla. May 24, 2019) ......................................................15

*Guevoura Fund Ltd. v. Sillerman,*
   2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ............................................9, 10, 12

*In re Auto. Parts Antitrust Litig.,*
   2019 WL 7877812 (E.D. Mich. Dec. 20, 2019) ..................................................16

- iii -

Case No. 23-24580-CIV-ALTONAGA/REID

**Page**

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .........................................................................12

*In re Catalina Mktg. Corp. Sec. Litig.*,
  2007 WL 9723529 (M.D. Fla. July 9, 2007) ..........................................................................16

*In re Checking Account Overdraft Litig.*,
  2020 WL 4586398 (S.D. Fla. Aug. 10, 2020)..........................................................................18

*In re Checking Acct. Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) .................................................................................7, 9

*In re Flowers Foods, Inc. Sec. Litig.*,
  2019 WL 6771749 (M.D. Ga. Dec. 11, 2019) ........................................................................13

*In re Forta File Transfer Software Data Sec. Breach Litig.*,
  2025 WL 457896 (S.D. Fla. Feb. 11, 2025) ..............................................................................6

*In re Genworth Fin. Sec. Litig.*,
  210 F. Supp. 3d 837 (E.D. Va. 2016) ..................................................................................8, 11

*In re Health Ins. Innovations Sec. Litig.*,
  2021 WL 1341881 (M.D. Fla. Mar. 23, 2021)
  *report and recommendation adopted*,
  2021 WL 1186838 (M.D. Fla. Mar. 30, 2021) ............................................................... *passim*

*In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  2023 WL 2284684 (S.D. Fla. Feb. 28, 2023),
  |*vacated and remanded on other grounds by*
  2024 WL 3065907 (11th Cir. June 20, 2024) ..................................................................6, 8, 9

*In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*,
  2024 WL 4415214 (S.D. Fla. Oct. 5, 2024)............................................................................12

*In re NetBank, Inc. Sec. Litig.*,
  2011 WL 13353222 (N.D. Ga. Nov. 9, 2011) ..........................................................................9

*In re S. Co. S'holder Derivative Litig.*,
  2022 WL 4545614 (N.D. Ga. June 9, 2022).............................................................................8

Case No. 23-24580-CIV-ALTONAGA/REID

**Page**

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ............................................................................5

*In re Walter Energy, Inc. Sec. Litig.*,
    2016 WL 7230505 (N.D. Ala. May 3, 2016) .......................................................13

*Lipuma v. Am. Express Co.*,
    406 F. Supp. 2d 1298 (S.D. Fla. 2005) ...............................................................15

*M.D. v. Centene Corp.*,
    2020 WL 7585033 (S.D. Fla. Oct. 7, 2020)........................................................15

*McWhorter v. Ocwen Loan Servicing, LLC*,
    2019 WL 9171207 (N.D. Ala. Aug. 1, 2019) ............................................. *passim*

*Morgan v. Pub. Storage*,
    301 F. Supp. 3d 1237 (S.D. Fla. 2016) ...........................................................7, 14

*Parsons v. Brighthouse Networks, LLC*,
    2015 WL 13629647 (N.D. Ala. Feb. 5, 2015) .....................................................15

*Ponzio v. Pinon*,
    87 F.4th 487 (11th Cir. 2023) ..............................................................................5

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ...........................................................................12

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
    297 F.R.D. 683 (S.D. Fla. 2014)..........................................................................15

*Thorpe v. Walter Inv. Mgmt. Corp.*,
    2016 WL 10518902 (S.D. Fla. Oct. 17, 2016).......................................... *passim*

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §78j(b)......................................................................................................1, 3
    §78t(a)............................................................................................................3
    §78u-4(a)(7) ....................................................................................................17

**Page**

Federal Rules of Civil Procedure
    Rule 23 .................................................................................................................17, 18
    Rule 23(a) ...................................................................................................................18
    Rule 23(b)(3) .......................................................................................................11, 18
    Rule 23(c)(2)(B) .................................................................................................17, 18
    Rule 23(e) .....................................................................................................................5
    Rule 23(e)(2)(B) ..........................................................................................................8
    Rule 23(e)(2)(C) ..........................................................................................................9
    Rule 23(e)(2)(C)(ii) ...................................................................................................12
    Rule 23(e)(2) ......................................................................................................1, 5, 6
    Rule 23(e)(3) ................................................................................................................5

**SECONDARY AUTHORITIES**

*Securities Class Action Settlements, 2024 Review & Analysis*
    (Cornerstone Research 2025) ..........................................................................1, 10, 14

Case No. 23-24580-CIV-ALTONAGA/REID

Lead Plaintiffs City of Warren General Employees' Retirement System and City of Westland Police and Fire Retirement System (together, "Lead Plaintiffs" or "Plaintiffs") respectfully submit this motion for final approval of the proposed Settlement and Plan of Allocation.[1]

## I.    INTRODUCTION

The $5.5 million all-cash Settlement represents a very good result for the Class in a case that was highly complex, uncertain, and risky. The Court granted preliminary approval of the Settlement on January 14, 2025, recognizing that "*the Settlement appears to fall within the range of possible approval and is therefore sufficiently fair, reasonable, and adequate to warrant providing notice of the Settlement to the Class*." ECF 93 at 2 ("Preliminary Approval Order"). Lead Plaintiffs now seek the Court's final approval, which they submit is strongly warranted, satisfying each of the factors set forth in Rule 23(e)(2) of the Federal Rules of Civil Procedure and in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Indeed, the $5.5 million Settlement is significant, as it represents over 70% of the potential recoverable damages, far exceeding the 8.2% median recovery in Eleventh Circuit securities settlements from 2015 to 2024.[2] The Settlement is also impressive considering the significant risks that Plaintiffs faced in establishing Defendants' liability, given that Defendants continued to vigorously dispute several key issues. *See* ¶¶4, 54-57. In fact, the Court significantly narrowed Plaintiffs' case by ruling that the Colombian labor investigation disclosed in a *Time* article could not serve as a corrective disclosure. *City of Warren Gen. Emps.' Ret. Sys. v. Teleperformance SE*, 746 F. Supp. 3d 1395, 1414-15 (S.D. Fla. 2024). Furthermore, Defendants would have continued to maintain that Plaintiffs' claims constituted an improper attempt to apply §10(b) of the Securities

---

[1]    Unless otherwise indicated, all capitalized terms have the same meanings as in the Stipulation of Settlement dated January 10, 2025 (ECF 90-2) (the "Stipulation" or "Settlement Agreement"), or the accompanying Declaration of Stephen R. Astley in Support of: (I) Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (II) Motion for an Award of Attorneys' Fees and Expenses ("Astley Declaration" or "Astley Decl."). "¶" references are to the Astley Declaration. Unless otherwise indicated, emphasis is added and all internal citations are omitted.

[2]    *See Securities Class Action Settlements, 2024 Review & Analysis* at 20 (Cornerstone Research 2025) ("Cornerstone Report"), available at https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-Settlements-2024-Review-and-Analysis.pdf.

Case No. 23-24580-CIV-ALTONAGA/REID

Exchange Act of 1934 ("Exchange Act") extraterritorially, that the alleged misstatements were not false and misleading when made, that the alleged misstatements were non-actionable puffery or opinion statements, and that Plaintiffs could not establish that Defendants acted with a strong inference of scienter or establish loss causation. *See generally* Astley Decl. Had the Court or a jury accepted any of these arguments, either in whole or in part, damages in the case would have been reduced even further or potentially eliminated. The Settlement avoids these risks, including the possibility of no recovery at all, while securing a $5.5 million non-reversionary recovery for the Class.

As detailed in the Astley Declaration, Lead Plaintiffs vigorously prosecuted this Litigation for more than a year-and-a-half. Without their efforts, the Settlement would not have been possible. Lead Plaintiffs' and Lead Counsel's extensive efforts include: (i) a thorough investigation, which included analysis of the relevant factual events, review of Teleperformance's public statements, review of analyst reports, consultation with experts, and engaging a private investigative firm to conduct interviews with former Teleperformance employees; (ii) filing a highly detailed complaint and two amended complaints; (iii) largely prevailing against Defendants' motion to dismiss the Second Amended Complaint; (iv) serving comprehensive written discovery on Defendants and engaging in lengthy meet and confers over that discovery; (v) responding to Defendants' discovery requests, including the production of 1,116 pages of documents by Lead Plaintiffs; (vi) filing a motion for class certification supported by an expert declaration establishing that Teleperformance ADRs traded on an efficient market, among other things; (vii) submitting detailed mediation statements prior to the mediation before well-respected mediator David M. Murphy, setting forth Plaintiffs' positions on hotly disputed issues in the case; and (viii) engaging in two days of settlement negotiations with Defendants' counsel, the second of which was an in-person mediation session, as well as further settlement negotiations in the week following the mediation session, all of which involved extensive, arm's-length negotiations, and resulted in a "mediator's proposal" accepted by the Settling Parties. *See* ¶¶19-44. Accordingly, by the time the Settling Parties agreed to the Settlement, Lead Plaintiffs had gained an in-depth understanding of the strengths and weaknesses of the Litigation. ¶57.

Case No. 23-24580-CIV-ALTONAGA/REID

Further confirming the fairness of the proposed Settlement is the fact that, to date, not a single objection to any aspect of the Settlement, the Plan of Allocation, or the attorneys' fee and expense request has been submitted, and no exclusion requests have been received. Moreover, Lead Plaintiffs – sophisticated institutional investors which have actively overseen and participated in the Litigation from its inception – wholly endorse the Settlement in all respects. Thus, the Class's overwhelming endorsement of the Settlement weighs heavily in favor of granting final approval.

For these and many other reasons set forth herein, in the Fee Motion, and the Astley Declaration, the proposed Settlement and proposed Plan of Allocation warrant the Court's final approval.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

To avoid repetition, Lead Plaintiffs only briefly describe the procedural history of the Litigation here. Lead Plaintiffs respectfully refer the Court to the accompanying Astley Declaration for a more detailed discussion of the factual background and the procedural history of the Litigation, the extensive efforts undertaken by Lead Plaintiffs and Lead Counsel during the Litigation, and the factors bearing on the approval of the Settlement and Plan of Allocation. *See generally* Astley Decl.

The initial complaint was filed on April 19, 2023 in the United States District Court for the District of Idaho. ECF 1. On July 17, 2023, Judge B. Lynn Winmill appointed City of Warren General Employees' Retirement System and City of Westland Police and Fire Retirement System as Lead Plaintiffs, and approved their selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel. ECF 16. *See* ECF 26, 29-30. On December 4, 2023, Judge Winmill granted a motion to transfer the case to this District. ECF 32.

On December 29, 2023, Plaintiffs filed their first amended complaint (ECF 62); Defendants Teleperformance SE ("Teleperformance" or "Company"), Daniel Julien, Akash Pugalia, and Olivier Rigaudy (collectively, "Defendants," and together with Plaintiffs, "Settling Parties") moved to dismiss on January 12, 2024. ECF 65. The Court granted that motion in part on May 22, 2024, but gave leave to amend. ECF 68.

On June 3, 2024, Plaintiffs filed the operative Second Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF 71) ("SAC"), asserting violations of §§10(b) and 20(a) of the Exchange Act, 15 U.S.C §§78j(b) and 78t(a), based on Defendants' allegedly materially

- 3 -

Case No. 23-24580-CIV-ALTONAGA/REID

false and misleading statements and omissions regarding the working conditions of Teleperformance content moderators. On June 17, 2024, Defendants again moved to dismiss. ECF 72. The Court denied this motion, but found that loss causation was not sufficiently alleged as to one of the two corrective disclosures pleaded in the SAC – a *Time* article regarding a Colombian labor investigation. ECF 75 at 23-26. This ruling shortened the ligation Class Period to end on August 3, 2022.

Thereafter, the Court entered a case schedule setting all deadlines through trial, which was set to begin on September 8, 2025. ECF 77. The parties began pursuing discovery, including by exchanging requests for production, negotiating a Stipulated Protocol Governing Discovery of Hard Copy and Electronically Stored Information and an Agreed Confidentiality and Rule 502(d) Order (which the Court entered on November 27, 2024, ECF 86), and exchanging expert reports relevant to class certification. Over the course of several months, the Settling Parties engaged in protracted, substantive discussions regarding the scope of merits discovery. *See* ¶¶34-37. Plaintiffs also produced documents and Defendants deposed Plaintiffs' market efficiency expert, Dr. Zahn Bozanic. ¶¶34, 39. Plaintiffs then moved for class certification on December 5, 2024. ECF 87.

In September 2024, the Settling Parties engaged the services of David M. Murphy of Phillips ADR, who has extensive experience mediating complex class action litigations such as this action. *See* ECF 79. The Settling Parties scheduled mediation to occur on November 7, 2024, and exchanged detailed mediation statements setting forth their respective arguments concerning liability and damages. Early on the morning of the scheduled mediation, Mr. Murphy informed counsel for the Settling Parties that he was ill and would be unable to attend. Counsel for the Settling Parties nevertheless met in person without Mr. Murphy present and attempted to resolve the claims, but were unable to do so. *See* ECF 84. The Settling Parties and Mr. Murphy then rescheduled mediation for December 2, 2024. *Id.* The rescheduled mediation took place as scheduled, but did not result in a settlement. *See* ECF 88-1.

In the week following the mediation, the Settling Parties continued to communicate with Mr. Murphy regarding a potential resolution. On Saturday, December 7, 2024, Mr. Murphy issued a mediator's recommendation, which the Settling Parties accepted on Monday, December 9, 2024, agreeing to settle this action in the amount of $5,500,000, subject to approval by the Court. *Id.*

- 4 -

Case No. 23-24580-CIV-ALTONAGA/REID

The Settling Parties thereafter negotiated and entered into a Stipulation of Settlement.  On January 10, 2025, Lead Plaintiffs filed their motion for preliminary approval, which the Court granted on January 14, 2025.  ECF 90; Preliminary Approval Order.

## III.  THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.  The Standards for Final Approval of Class Action Settlements

The Eleventh Circuit and courts nationwide recognize that there is a "strong judicial policy favoring settlement." *Bennett*, 737 F.2d at 986; *accord Ponzio v. Pinon*, 87 F.4th 487, 494 (11th Cir. 2023); *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  "Complex securities litigation 'can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.'" *AAL High Yield Bond Fund v. Ruttenberg*, 2005 WL 5926936, at *5 (N.D. Ala. June 2, 2005).  Thus, "[i]t is well established that settlements are 'highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *McWhorter v. Ocwen Loan Servicing, LLC*, 2019 WL 9171207, at *8 (N.D. Ala. Aug. 1, 2019).  Indeed, the Court may "'rely upon the judgment of experienced counsel for the parties,' and 'absent fraud, collusion, or the like,' is 'hesitant to substitute its own judgment for that of counsel.'" *Id.*

Federal Rule of Civil Procedure 23(e) requires judicial approval of class settlements.  Under that rule, courts consider whether a proposed settlement is "fair, reasonable, and adequate," by specifically examining whether:

> "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."

*Id.* at *8-*9 (quoting Fed. R. Civ. P. 23(e)(2)).

In addition to Rule 23(e)(2), courts in the Eleventh Circuit also consider the following factors when assessing the fairness of a settlement:

> "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of the litigation; (5) the

- 5 -

substance and amount of opposition to the settlement; and (6) the stage of the
proceedings at which the settlement was achieved."

*Id*. at *8 (quoting *Bennett*, 737 F.2d at 986).

Courts have noted that a plaintiff's satisfaction of these factors is supported where, as here,
little has changed between preliminary and final approval.  *E.g.*, *In re Johnson & Johnson Aerosol
Sunscreen Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2023 WL 2284684, at *9 (S.D. Fla. Feb. 28,
2023) ("[T]his Court already found at the preliminary approval stage" that the settlement satisfied
the standards of Rule 23(e)(2), which the "record continues to support."), *vacated and remanded on
other grounds by* 2024 WL 3065907 (11th Cir. June 20, 2024); *In re Forta File Transfer Software
Data Sec. Breach Litig.*, 2025 WL 457896, at *3 (S.D. Fla. Feb. 11, 2025) (granting final approval
and noting that "[n]othing has changed since the Court granted Preliminary Approval").  As set forth
below, the Settlement readily satisfies each of these factors.

**B.      The Proposed Settlement Satisfies Both the Rule 23(e)(2) and the
Eleventh Circuit Requirements**

**1.      Plaintiffs and Lead Counsel Have Adequately Represented the
Class**

In evaluating the adequacy of representation, courts in this Circuit consider: (1) whether class
representatives have interests antagonistic to the interests of other class members; and (2) whether
the proposed class counsel has the necessary qualifications and experience to lead the litigation.
*Johnson & Johnson*, 2023 WL 2284684, at *9.  Lead Plaintiffs and Lead Counsel readily satisfy both
of these criteria.

First, as this Court already held, Lead Plaintiffs "***will fairly and adequately represent the
interests of the Class***."  *See* Preliminary Approval Order, at 3.  Indeed, "'Plaintiff[s] and the
Settlement Class seek redress of the same alleged wrong.'"  *In re Health Ins. Innovations Sec. Litig.*,
2021 WL 1341881, at *5 (M.D. Fla. Mar. 23, 2021), *report and recommendation adopted*, 2021 WL
1186838 (M.D. Fla. Mar. 30, 2021).  Thus, Plaintiffs' and the Class's interests in establishing
Defendants' liability and maximizing recovery are aligned.

Second, as set forth in further detail in the Astley Declaration, Lead Counsel vigorously
prosecuted the Class's claims and expended significant time and effort throughout the Litigation.
*See* ¶¶19-44.  Among other things, Lead Counsel conducted an extensive investigation in which they
interviewed numerous former Teleperformance employees about the Class Period events and

- 6 -

Case No. 23-24580-CIV-ALTONAGA/REID

conducted a thorough forensic analysis of Teleperformance's regulatory filings; drafted a detailed complaint and two amended complaints; and defeated, in large part, Defendants' motion to dismiss the SAC.  ¶¶19, 22-24, 28-30.

Given the Court-ordered schedule (ECF 77), which provided for class discovery to be completed well before merits discovery, the focus in the early months of discovery was on class issues.  However, Plaintiffs also engaged in protracted, substantive negotiations regarding the scope of merits discovery, the parameters for Defendants' collection of electronically stored information, and the effect of foreign blocking statutes on the discovery process.  ¶¶36, 51.  Lead Plaintiffs served Defendants with a comprehensive set of document requests which resulted in several lengthy meet and confers; issued subpoenas for documents on numerous third parties, including various U.S. depository banks; and responded to Defendants' document requests, including the Lead Plaintiffs' production of 1,116 pages of responsive documents.  *See* ¶¶34-36.  Lead Counsel then filed a motion for class certification supported by the expert declaration of Zahn Bozanic, Ph.D. and consulted extensively with Dr. Bozanic and various other experts.  ¶¶3, 8, 38-40.

Moreover, Lead Plaintiffs and Lead Counsel successfully negotiated the outstanding recovery obtained in this case – in the face of numerous legal and factual obstacles and formidable opposition – attesting to the skill and vigor with which Lead Plaintiffs and Lead Counsel prosecuted this Litigation.  *See, e.g.*, *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *10 (S.D. Fla. Oct. 17, 2016) ("'It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained.'").  Therefore, the Class was adequately represented.

Further, the Court should give considerable weight to the judgment of Lead Plaintiffs and Lead Counsel that the Settlement is in the best interests of the Class.  *See, e.g.*, *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011) ("In evaluating a proposed class action settlement, the Court 'will not substitute its business judgment for that of the parties . . . .'").  Plaintiffs' chosen counsel are highly experienced in securities litigation and have a long and successful track record of representing investors in such cases (*see* RGRD Decl., Ex. E (Robbins Geller firm resume)), providing further weight to their judgment that the Settlement is fair and reasonable.  *See Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1251 (S.D. Fla. 2016) ("'In determining whether to approve a proposed settlement, the Court is entitled to rely upon the

- 7 -

judgment of the parties' experienced counsel.'"). Moreover, the fact that Lead Plaintiffs are sophisticated institutional investors, of the type favored by Congress when it passed the PSLRA, lends even more credibility to their recommendation that the Settlement be approved. *See In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 842 (E.D. Va. 2016) ("[T]he Lead Plaintiffs in the case are sophisticated institutional investors managing billions of dollars in pensioners' investments and experienced in the world of securities laws. The active participation by the Lead Plaintiffs in the negotiation process further weighs in favor of approving the Settlement.").

### 2.     The Settlement Is the Product of Arm's-Length Negotiations

In weighing approval of a class action settlement, a court must also ensure that the settlement is not the product of collusion and "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B); *see Bennett*, 737 F.2d at 986. The "presence of [a] 'highly experienced mediator' point[s] to 'absence of collusion.'" *Johnson & Johnson*, 2023 WL 2284684, at *9.

Here, as the Court preliminarily found, "***the Settlement resulted from informed, extensive arm's-length negotiations between experienced counsel following mediation under the direction of an experienced mediator, David M. Murphy of Phillips ADR***." Preliminary Approval Order, at 1. Indeed, the Settling Parties engaged in two in-person negotiations which included the exchange of detailed mediation statements. ¶9. No agreement was reached at the initial negotiation session, and the parties met again in-person with the mediator. ¶43. And while the parties were also unable to reach agreement at the in-person mediation with Mr. Murphy, the parties continued to negotiate through him over the following week. ¶44. Mr. Murphy then issued a "mediator's proposal" accepted by the parties. *In re S. Co. S'holder Derivative Litig.*, 2022 WL 4545614, at *10 (N.D. Ga. June 9, 2022) ("The negotiations were facilitated and supervised by [Murphy], who was familiar with the complexity of the issues, the risks and challenges confronted by [plaintiffs], as well as the magnitude and quality of [plaintiffs' counsel's] efforts in securing the [s]ettlement benefit.").

The posture of the case at settlement and the deliberative nature of the negotiations evidence a fair process involving "good faith, arm['s-]length bargaining." *Ocwen*, 2019 WL 9171207, at *10. All of these facts strongly support the conclusion that the Settlement is fair. *In re S. Co.*, 2022 WL 4545614, at *10 ("[Murphy's] role in the negotiations provides further assurances that the process was fair and the amount reasonable.").

### 3.    The Relief Provided to the Class Is Adequate

#### a.    The Substantial Benefits for the Class, Weighed Against the Costs, Risks, and Delay of Further Litigation Support Final Approval

In determining whether a settlement is "fair, reasonable, and adequate," the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C);[3] *see also Deas v. Russell Stover Candies, Inc.*, 2005 WL 8158201, at *9 (N.D. Ala. Dec. 22, 2005) (analyzing "whether the possible rewards of continuing the litigation – with its attendant risks and costs – are outweighed by the benefits of the settlement"); *Checking Acct. Overdraft*, 830 F. Supp. 2d at 1345 (court need not determine if the settlement "'is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial'").

As an initial matter, courts have recognized that the complexity of securities class actions renders this type of litigation "'notably difficult and notoriously uncertain.'" *In re NetBank, Inc. Sec. Litig.*, 2011 WL 13353222, at *3 (N.D. Ga. Nov. 9, 2011); *see also Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *7 (S.D.N.Y. Dec. 18, 2019) (securities class actions are "'expensive to litigate,'" and "notoriously complex"). Accordingly, the "policy favoring settlement is especially relevant in class actions . . . where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain." *Johnson & Johnson*, 2023 WL 2284684, at *5.

Here, Plaintiffs and Lead Counsel have achieved an outstanding benefit for the Class. The $5.5 million Settlement is remarkable when measured as a percentage of the Class's potential recoverable damages, as calculated by Lead Plaintiffs' damages expert. Indeed, the recovery represents over 70% of the potential recoverable damages, assuming that Plaintiffs had prevailed on all elements of their claims at summary judgment and trial (¶¶7, 58) – which far exceeds the 8.2%

---

[3]    Rule 23(e)(2)(C) encompasses the first four of the six factors of the traditional *Bennett* analysis. *Bennett*, 737 F.2d at 986; *see also Ocwen*, 2019 WL 9171207, at *10 ("These [Rule 23(e)(2)(C)] factors are analogous to several of the *Bennett* factors, which require courts to consider the likelihood of success and range of possible recovery for the class at trial, measured against the trial's anticipated complexity, cost, and duration."). These *Bennett* factors are considered in this section and/or in further detail below.

median recovery in securities settlements between 2015 and 2024 in the Eleventh Circuit.[4] Settlements which recover far lower percentages of damages are routinely approved and lauded by courts. *See, e.g.*, *Thorpe*, 2016 WL 10518902, at *3 (calling settlement worth 5.5% of maximum damages "an excellent recovery"); *Ocwen*, 2019 WL 9171207, at *11 ("Since 1995, class action settlements have been approved despite having 'recovered between 5.5% and 6.2%' of the class members' potential recovery."). Thus, the Settlement is an exceptional recovery for the Class.

Moreover, the Settlement provides immediate and substantial benefits to thousands of Class Members without the delay of further litigation. "Absent settlement, there exists real potential for years of further litigation and the possibility that [Defendants] could prevail on the merits or defeat contested class certification." *Ocwen*, 2019 WL 9171207, at *11; *Guevoura Fund*, 2019 WL 6889901, at *7 (further litigation would involve "complex expert reports and discovery of the expert witnesses; the negotiation and completion of a complex and voluminous pre-trial order; and extensive briefing on motions for summary judgment, motions to strike experts and other motions *in limine* likely to be made" followed by "inevitable post-trial motions and appellate proceedings").

Indeed, the risk in further litigating Lead Plaintiffs' claims is very real. *See, e.g.*, *Health Ins. Innovations*, 2021 WL 1341881, at *8 ("[T]here is an inherent risk in any litigation but particularly so in securities class action litigation."). Defendants had already advanced a number of arguments disputing both liability and damages. For instance, in their most recent motion to dismiss, Defendants argued that the SAC alleged only an "isolated operational problem[,]" rather than "widespread issues[,]" among the Company's 400,000+ employees, and therefore it was implausible that high level executives like the Individual Defendants would have known anything about the horrible working conditions alleged in the SAC. *See* ECF 72 at 8-9, 16. While Plaintiffs prevailed against these arguments at the pleading stage, Defendants would no doubt have continued to dispute those facts – and persisted in their various other arguments regarding falsity, materiality, and loss causation (*see generally id.* at 5-18) – at later stages of the case. Indeed, the Court ruled that the November 9, 2022 *Time* article was not a corrective disclosure. ECF 75, at 23-26. No Class has yet been certified, and Defendants would certainly have opposed the motion for certification had the

---

[4]       *See* Cornerstone Report at 20.

Settlement not been reached. In fact, Defendants retained an expert witness to opine that it would require difficult, detailed analysis of records from multiple sources to determine whether a potential Class Member's purchase of Teleperformance ADRs met the relevant domesticity requirements – presumably to challenge the predominance requirement of Rule 23(b)(3). ¶8. In short, there were significant obstacles to any recovery.

Moreover, even if Lead Plaintiffs' class certification motion was granted, Defendants would likely have moved for leave to file an interlocutory appeal under Rule 23(f), posing the risk of reversal and delay. And even if Lead Plaintiffs beat back those challenges, they would still have to overcome Defendants' summary judgment motion and ultimately prove their claims at trial, and would need to rely extensively on adverse witnesses affiliated with the Company and expert analysis of key issues. Each expert's testimony would be critical to demonstrating Defendants' liability and damages. Accordingly, the conclusions of each expert would be hotly contested at both summary judgment and trial. Additionally, if the Court determined that even one of Plaintiffs' experts should be excluded from testifying at trial, Plaintiffs' case would become more difficult (if not impossible) to prove. *See Genworth*, 210 F. Supp. 3d at 841-42 ("[T]he plaintiffs at trial would bear the burden of conveying complex information to a jury using financial records, complicated accounting principles, and expert testimony. . . . The high risk faced by taking the case to a jury verdict demonstrates the adequacy of this . . . settlement.").

While Plaintiffs believe they have a strong case supported by highly qualified experts and are confident in their ability to prove their claims, the fact remains that the Court at class certification or summary judgment, or the jury at trial, could have lent such arguments substantial weight, thereby further reducing or eliminating recoverable damages and undermining the viability of the entire Litigation. *See Thorpe*, 2016 WL 10518902, at *9 (Plaintiffs "would also have had to successfully maintain class certification through trial, and prove damages, requiring additional complicated expert testimony[, and such]. . . . battles of the experts are notoriously difficult to predict.").

Finally, even after a successful trial, there was no guarantee that Plaintiffs would have obtained a judgment greater than or even equivalent to the $5.5 million Settlement, and, indeed, there was a very significant risk that years of continued litigation might yield a smaller recovery – or

no recovery at all – after inevitable appeals.[5]  At "'[e]ach step of the way, expenses would continue to accumulate, further decreasing the funds available to Class Members'" if the litigation was to continue.  *Guevoura Fund*, 2019 WL 6889901, at *7.  These risks strongly support approval of the Settlement.

> **b.**     **The Proposed Method for Distributing Relief to the Class Is Effective**

Under Rule 23(e)(2)(C)(ii), courts consider "the effectiveness of [the] proposed method of distributing relief to the class."  Here, as demonstrated below in §IV., the procedures for processing Class Members' claims and distributing the proceeds of the Settlement to eligible claimants in this case are well-established, effective methods.  Rust Consulting ("Rust"), the Court-approved Claims Administrator, will process Claims under the guidance of Lead Counsel, allow Claimants an opportunity to cure any deficiencies in their Claims or request the Court to review a denial of their Claims, and, lastly, mail Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation).  Claims processing like the method proposed here is standard in securities class action settlements and has been long found to be effective.  *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *14 (S.D.N.Y. Oct. 16, 2019); *Health Ins. Innovations*, 2021 WL 1341881, at *2.

> **c.**     **Lead Counsel's Fee Request Is Fair and Reasonable**

The relief provided for the Class in the Settlement is also adequate when the terms of the proposed award of attorneys' fees are taken into account.  As discussed in the accompanying Fee Motion, the requested attorneys' fees of 25% of the Settlement Amount are reasonable in light of the efforts of Lead Counsel, the result achieved, and the risks in the Litigation.[6]  This fee request is reasonable and in line with other fee awards approved in similar class action cases; indeed, "'district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund.'"  *In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*, 2024 WL 4415214, at *5 (S.D.

---

[5]      *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict).

[6]      As detailed in the Fee Motion, in addition to the fee award, Lead Counsel is seeking $224,787.28 in expenses, plus interest on both amounts.

Case No. 23-24580-CIV-ALTONAGA/REID

Fla. Oct. 5, 2024); *see also Goldstein v. Juris Publ'g, Inc.*, 2007 WL 9702141, at *3 n.1 (S.D. Fla. May 29, 2007) (Altonaga, J.) (collecting cases awarding 30% or similar percentages).  "This is true for comparable securities actions in district courts in the Eleventh Circuit as well."  *Health Ins. Innovations*, 2021 WL 1341881, at *12 (collecting cases awarding a third or more of the settlement fund); *see also Cabot E. Broward 2 LLC v. Cabot*, 2018 WL 5905415, at *4 (S.D. Fla. Nov. 9, 2018) (awarding one-third fees in $100 million class action as it is "consistent with what courts routinely award in class actions"); *In re Flowers Foods, Inc. Sec. Litig.*, 2019 WL 6771749, at *1 (M.D. Ga. Dec. 11, 2019) (awarding one-third fees of $21 million securities class action settlement); *In re Walter Energy, Inc. Sec. Litig.*, 2016 WL 7230505, at *1 (N.D. Ala. May 3, 2016) (awarding 33% of $25 million securities class action settlement).

### d.     There Are No Other Agreements Other than the Opt-Out Agreement

The Settling Parties have entered into a confidential agreement establishing certain conditions under which Defendants may terminate the Settlement if an opt out threshold is met.  *See* Stipulation, ¶7.4.  This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.  *See Health Ins. Innovations*, 2021 WL 1341881, at *7 n.6 (approving similar agreement and noting that "'parties attempt to keep the precise level at which the exit is authorized private so as not to encourage opt outs'").

### 4.     All Class Members Are Treated Equitably

As explained further below in §IV., the Plan of Allocation – which was developed in consultation with Lead Plaintiffs' damages expert – treats all Class Members (including Lead Plaintiffs) equitably.  Under the Plan of Allocation, the Authorized Claimants shall receive their *pro rata* share of the Net Settlement Fund based upon their recognized claim compared to the total recognized claims of all Authorized Claimants.  *See* Notice, ECF 90-2, Ex. A-1 at 14-20; *Christine Asia Co.*, 2019 WL 5257534, at *15 (finding similar plan of allocation to treat all class members equitably).

### 5.     The Likelihood of Success at Trial and Complexity, Expense, and Duration of the Litigation Support Final Approval of the Settlement

The "first and most important *Bennett* factor is 'the likelihood of success at trial.'"  *Thorpe*, 2016 WL 10518902, at *2-*3.  This factor "is evaluated in the context of the relief proposed by the

settlement." *Id*. at *3.  The fourth *Bennett* factor – the complexity, expense, and duration of the litigation – "weighs in favor of settlement approval where the litigation, including the appellate process, involves numerous class members and significant time and expense."  *Morgan*, 301 F. Supp. 3d at 1248.  Both these factors favor final settlement approval.

As set forth above in §III.B.3.a., the many risks Plaintiffs would face before, during, and after trial weigh in favor of final approval of the Settlement.  "'The claims and defenses are complex; litigating them has been difficult and time consuming.'"  *Id.*  Defendants would have continued to present formidable defenses at class certification, summary judgment, and trial, no doubt focusing on scienter, causation, and damages.  There was a danger that Plaintiffs would not have prevailed against Defendants on their claims, in which case the Class would have received nothing.  Therefore, Lead Plaintiffs and Lead Counsel believe that the Settlement is in the best interests of the Class.

**6.    The Settlement Amount Is Reasonable Considering the Range of Possible Recoveries**

"The second and third factors in the Eleventh Circuit's *Bennett* analysis call for the Court to determine 'the possible range of recovery' and then ascertain where within that range 'fair, adequate, and reasonable settlements lie.'"  *Deas*, 2005 WL 8158201, at *11.

As set forth above in §III.B.3.a., the $5.5 million cash Settlement is well within the range of reasonableness under the circumstances to warrant final approval of the Settlement.  Indeed, the Settlement Amount represents over 70% of the potential recoverable damages (¶¶7, 58), assuming that Plaintiffs prevailed on all elements of their claims at summary judgment and trial, a result which far exceeds the 8.2% median recovery in securities settlements in the Eleventh Circuit between 2015 and 2024.[7]

**7.    The Stage of Proceedings at Which Settlement Was Achieved Supports Final Approval**

The next *Bennett* factor is "the stage of proceedings at which the settlement was achieved." 737 F.2d at 986.  The purpose of this factor is to ensure that Plaintiffs "had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against

---

[7]    *See* Cornerstone Report at 20.

- 14 -

further litigation." *Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124, at \*11 (S.D. Fla. Jan. 31, 2008). But this does not mean that significant discovery is required; indeed, "early settlements are favored and 'vast formal discovery need not be taken.'" *M.D. v. Centene Corp.*, 2020 WL 7585033, at \*7 (S.D. Fla. Oct. 7, 2020) (quoting *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014)). While formal merits discovery was still in its early stages, Lead Counsel conducted an extensive investigation prior to filing the amended complaint, including consultation with experts regarding potential damages and interviews of former Teleperformance employees – and participated in class discovery. This is all that is required. *See Parsons v. Brighthouse Networks, LLC*, 2015 WL 13629647, at \*12 (N.D. Ala. Feb. 5, 2015) (approving settlement where "[a]lthough full-blown merits discovery has not been taken in this case, class discovery was extensive, and even before filing the complaint, Plaintiffs['] counsel conducted an extensive economic and factual investigation"). Accordingly, courts frequently approve settlements even with little to no discovery completed. *Cotter v. Checkers Drive-In Rests., Inc.*, 2021 WL 3773414, at \*9 (M.D. Fla. Aug. 25, 2021) (finding this factor weighed in favor of settlement where the parties "settled relatively early"); *Gonzalez v. TCR Sports Broadcasting Holding, LLP*, 2019 WL 2249941, at \*5 (S.D. Fla. May 24, 2019) (same, where the parties settled before plaintiffs moved for class certification); *Fleming v. Impax Laby's Inc.*, 2022 WL 2789496, at \*6 (N.D. Cal. July 15, 2022) (finding this factor weighed in favor of settlement in securities case where formal discovery had not yet begun); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1316 (S.D. Fla. 2005) (Altonaga, J.) (approving settlement with "minimal discovery about this claim"). Thus, this factor also supports final approval.

### 8. The Favorable Response to the Settlement from the Class Supports Final Approval

The "amount of opposition to the Settlement weighs heavily in favor of the Settlement being fair and reasonable" where such opposition is limited, such as where, as here, there "have been no objections or requests for exclusion." *Health Ins. Innovations*, 2021 WL 1341881, at \*9. The deadline for submitting objections and requests for exclusions is May 5, 2025. *See* Preliminary Approval Order, at 7-8. To date, no objections to the Settlement or requests for exclusion have been received. *See* Declaration of Jason Rabe Regarding: (A) Mailing of Notice of Pendency and Proposed Settlement of Class Action and Proof of Claim and Release Form; (B) Publication of

- 15 -

Case No. 23-24580-CIV-ALTONAGA/REID

Summary Notice; (C) Establishment of Call Center Services and Website; (D) Claim Received; and (E) Requests for Exclusion Received to Date, ¶18 ("Rabe Decl."), filed herewith as Ex. C to the Astley Decl. *See Ocwen*, 2019 WL 9171207, at *12 ("low opt-out and objection rates weigh in favor of granting final approval to the settlement" because this "indicat[es] support for the proposed . . . settlement"). Plaintiffs will file reply papers on May 16, 2025, after the exclusion and objection deadline has passed, to further address this factor.

For the foregoing reasons, the Court should find that the proposed Settlement meets all of the relevant approval factors, and is in all respects fair, reasonable, and adequate.

## IV.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

In approving the Settlement, the Court must also assess whether the Plan of Allocation is "fair and reasonable." *Thorpe*, 2016 WL 10518902, at *1. Under this analysis, the Court's ""principal obligation" . . . "is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund."" *In re Auto. Parts Antitrust Litig.*, 2019 WL 7877812, at *1 (E.D. Mich. Dec. 20, 2019). The Plan of Allocation "need not be perfect," and "'need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'" *Christine Asia*, 2019 WL 5257534, at *15.

Here, the proposed Plan of Allocation fairly and reasonably distributes the Net Settlement Fund on a *pro rata* basis among Authorized Claimants based on their respective Recognized Losses. In developing the Plan of Allocation, Lead Plaintiffs' damages expert calculated the estimated alleged amount of artificial inflation in the per ADR closing price of Teleperformance ADRs throughout the Class Period, which allegedly was proximately caused by Defendants' false and misleading statements and omissions. Notice, ECF 90-2, Ex. A-1 at 14-15; *see, e.g., In re Catalina Mktg. Corp. Sec. Litig.*, 2007 WL 9723529, at *1 (M.D. Fla. July 9, 2007) ("Although the plan of allocation benefits some members of the class differently, it was developed to fairly account for the relative strength of individual claims and the timing of the relevant securities purchases.").

In calculating the estimated alleged artificial inflation caused by Defendants' alleged misrepresentations and omissions, Lead Plaintiffs' damages expert considered price changes in Teleperformance ADRs in reaction to certain public disclosures alleged to have corrected the misrepresentations and omissions. Similar plans of allocation are commonly used and approved in

- 16 -

class actions and represent a widely recognized means of fairly distributing settlement funds to class members. *See, e.g.*, *Health Ins. Innovations*, 2021 WL 1341881, at *2, *10 (similar plan of allocation developed by damages expert found fair and reasonable because "Settlement Class Members' recoveries are based upon their relative losses and Settlement Class Members will receive a *pro rata* distribution from the Net Settlement Fund, calculated in the same manner").

Moreover, to date, after mailing or emailing a total of 30,166 Notices, no Class Member has objected to the Plan of Allocation.  This fact supports approval.

## V.      NOTICE TO THE CLASS SATISFIES RULE 23 AND DUE PROCESS

Due process and Rule 23 require that class members be given "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974).

In accordance with the Preliminary Approval Order, Rust, the Court-appointed Claims Administrator, has emailed or mailed a total of 30,166 Notices and Proofs of Claim and Release to potential Class Members.  Rabe Decl., ¶11.  In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over *PR Newswire* on February 11, 2025.  *Id.*, ¶12.  Rust also maintains a website dedicated to the Settlement of the Litigation, which provides all information and documentation pertinent to the Settlement, including the Notice and the Proof of Claim and Release. *Id.*, ¶15.

The Notice advised potential Class Members of, among other things: (1) their right to exclude themselves from the Class; (2) their right to object to any aspect of the Settlement, the Plan of Allocation, or the requested attorneys' fees and expenses; and (3) the method for submitting a Proof of Claim and Release in order to be eligible to receive a payment from the Settlement. Additionally, pursuant to the requirements of the PSLRA, 15 U.S.C. §78u-4(a)(7), the Notice also set forth in plain, easily-understandable language: (1) a cover page summarizing the information in the Notice; (2) a statement of plaintiff recovery and the estimated recovery per damaged share; (3) a statement of potential outcomes of the case; (4) a statement of attorneys' fees or expenses sought; (5) identification of each party's lawyers; and (6) the reasons for settlement.

Case No. 23-24580-CIV-ALTONAGA/REID

Because the Notice program provides all of the necessary information required under Rule 23(c)(2)(B) and the PSLRA and fairly apprises Class Members of their rights with respect to the Settlement, it is the best notice practicable under the circumstances. *In re Checking Account Overdraft Litig.*, 2020 WL 4586398, at *8 (S.D. Fla. Aug. 10, 2020).

## VI.   THE COURT SHOULD CERTIFY THE CLASS

The Court's Preliminary Approval Order preliminarily certified the Class under Rules 23(a) and (b)(3) for purposes of the Settlement. *See* Preliminary Approval Order, at 2-3. Nothing has occurred since then to cast doubt on the propriety of class certification for settlement purposes, and no objections to certification have been received. For all the reasons stated in the Preliminary Approval Order, Lead Plaintiffs' memorandum of law in support of unopposed motion for preliminary approval of class action settlement (ECF 90), and documents filed in support of Lead Plaintiffs' motion for class certification (ECF 87), Lead Plaintiffs respectfully request that the Court grant final certification to the Class under Rules 23(a) and (b)(3).

## VII.   CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully submit that the proposed Settlement and Plan of Allocation readily meet all of the requirements under Rule 23, the PSLRA, and Eleventh Circuit precedent. Accordingly, Lead Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate.[8]

DATED:  April 25, 2025                Respectfully submitted,

                                      ROBBINS GELLER RUDMAN
                                        & DOWD LLP
                                      STEPHEN R. ASTLEY (SBN 0139254)
                                      SABRINA E. TIRABASSI (SBN 25521)
                                      LUKE GOVEAS (admitted *pro hac vice*)
                                      ALEX KAPLAN (SBN 1030761)


                                      _____
                                          *s/ Stephen R. Astley*
                                      STEPHEN R. ASTLEY

---

[8]      Proposed orders granting final approval of the proposed Settlement and Plan of Allocation will be submitted with Lead Plaintiffs' reply brief in further support of this motion, which will be filed on May 16, 2025.

- 18 -

Case No. 23-24580-CIV-ALTONAGA/REID

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sastley@rgrdlaw.com
stirabassi@rgrdlaw.com
lgoveas@rgrdlaw.com
akaplan@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
THEODORE J. PINTAR (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com

*Lead Counsel for Lead Plaintiffs*

VANOVERBEKE, MICHAUD
   & TIMMONY, P.C.
THOMAS C. MICHAUD (admitted *pro hac vice*)
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

*Additional Counsel for Lead Plaintiffs*

4905-9824-8241.v1