UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. 23-24580-CIV-ALTONAGA/REID

| | |
|---|---|
| CITY OF WARREN GENERAL EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| TELEPERFORMANCE SE, et al., | ) ) ) |
| Defendants. | ) ) ) ) |

**LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND INCORPORATED MEMORANDUM OF LAW**

4920-6532-2803.v1

Case No. 23-24580-CIV-ALTONAGA/REID

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ....................................................................................................1

II.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE...................................3

    A.    Lead Counsel Is Entitled to an Award of Attorneys' Fees from the
Common Fund ...............................................................................................3

    B.    The Requested Attorneys' Fees Are Reasonable..........................................4

    C.    The Percentage Fee Approved by Lead Plaintiffs Is Entitled to a
Presumption of Reasonableness....................................................................6

    D.    The Circumstances of the Litigation Justify the Fee Award.................................7

        1.    The Amount Involved and the Results Obtained.........................................8

        2.    The Novelty and Difficulty of the Legal and Factual Issues .......................8

        3.    The Skill, Experience, and Ability of the Attorneys Supports the
Requested Fee .............................................................................................10

        4.    The Time and Labor Expended by Lead Counsel Supports the
Requested Fee .............................................................................................11

        5.    The Contingent Nature of the Fee Weighs in Favor of the
Requested Award .......................................................................................12

        6.    The "Undesirability" of the Case...............................................................14

        7.    The Preclusion of Other Employment .......................................................14

        8.    Public Policy Further Supports the Requested Fee....................................14

III.  THE REQUESTED EXPENSES ARE REASONABLE .................................................15

IV.   CONCLUSION.....................................................................................................16

4920-6532-2803.v1

Case No. 23-24580-CIV-ALTONAGA/REID

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Allapattah Servs., Inc. v. Exxon Corp.*,
 454 F. Supp. 2d 1185 (S.D. Fla. 2006) ..............................................................................11, 14

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp.*,
 77 F.4th 74 (2d Cir. 2023) .....................................................................................................13

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980).................................................................................................................3

*Cabot E. Broward 2 LLC v. Cabot*,
 2018 WL 5905415 (S.D. Fla. Nov. 9, 2018).................................................................. *passim*

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
 946 F.2d 768 (11th Cir. 1991) ....................................................................................... *passim*

*City of Providence v. Aeropostale, Inc.*,
 2014 WL 1883494 (S.D.N.Y. May 9, 2014),
 *aff'd sub nom. Arbuthnot v. Pierson*,
 607 F. App'x 73 (2d Cir. 2015) ..............................................................................................14

*City Pension Fund for Firefighters & Police Officers in City of Miami Beach v.*
 *Aracruz Celulose, S.A.*,
 2013 WL 12489095 (S.D. Fla. July 17, 2013)..........................................................................5

*Columbus Drywall & Installation, Inc. v. Masco Corp.*,
 2012 WL 12540344 (N.D. Ga. Oct. 26, 2012) .......................................................................10

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
 2017 WL 7798110 (S.D. Fla. Dec. 18, 2017)...........................................................................5

*George v. Acad. Mortg. Corp. (UT)*,
 369 F. Supp. 3d 1356 (N.D. Ga. 2019)...................................................................................10

*George v. Duke Energy Ret. Cash Balance Plan*,
 2011 WL 13218031 (D.S.C. May 16, 2011)...........................................................................13

*Glickenhaus & Co. v. Household Int'l, Inc.*,
 787 F.3d 408 (7th Cir. 2015) ..................................................................................................13

*Hanley v. Tampa Bay Sports & Ent. LLC*,
 2020 WL 2517766 (M.D. Fla. Apr. 23, 2020)....................................................................4, 15

- ii -

Case No. 23-24580-CIV-ALTONAGA/REID

**PageCase No. 23-24580-CIV-ALTONAGA/REID**

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)....................................................................................................8

*In re Arby's Rest. Grp., Inc. Data Sec. Litig.*,
2019 WL 2720818 (N.D. Ga. June 6, 2019).............................................................5

*In re BankAtlantic Bancorp, Inc.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011),
*aff'd on other grounds*,
688 F.3d 713 (11th Cir. 2012) .................................................................................13

*In re Checking Acct. Overdraft Litig.*,
2014 WL 12557836 (S.D. Fla. Apr. 1, 2014) ...........................................................4

*In re Checking Acct. Overdraft Litig.*,
2020 WL 4586398 (S.D. Fla. Aug. 10, 2020),
*aff'd*, 2022 WL 472057 (11th Cir. Feb. 16, 2022)........................................... *passim*

*In re Checking Acct. Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) ..............................................................10, 14

*In re Flowers Foods, Inc. Sec. Litig.*,
2019 WL 6771749 (M.D. Ga. Dec. 11, 2019) ......................................................2, 5

*In re Health Ins. Innovations Sec. Litig.*,
2021 WL 1341881 (M.D. Fla. Mar. 23, 2021)
*report and recommendation adopted*,
2021 WL 1186838 (M.D. Fla. Mar. 30, 2021) ................................................ *passim*

*In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prod. Liab. Litig.*,
2023 WL 2284684 (S.D. Fla. Feb. 28, 2023),
*vacated and remanded on other grounds by*
2024 WL 3065907 (11th Cir. June 20, 2024) ......................................................9, 10

*In re NetBank, Inc. Sec. Litig.*,
2011 WL 13353222 (N.D. Ga. Nov. 9, 2011) ..................................................5, 8, 15

*In re U.S. Steel Consol. Cases*,
2023 WL 11997192 (W.D. Pa. Mar. 21, 2023) ......................................................16

4920-6532-2803.v1

Case No. 23-24580-CIV-ALTONAGA/REID

**PageCase No. 23-24580-CIV-ALTONAGA/REID**

*In re Veeco Instruments Inc. Sec. Litig.*,
 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)................................................................................6

*In re Vivendi Universal, S.A., Sec. Litig.*,
 842 F. Supp. 2d 522 (S.D.N.Y. 2012)......................................................................................13

*In re Walter Energy, Inc. Sec. Litig.*,
 2016 WL 7230505 (N.D. Ala. May 3, 2016).........................................................................2, 5

*In re Williams Sec. Litig. - WCG Subclass*,
 558 F.3d 1130 (10th Cir. 2009) ...............................................................................................13

*Johnson v. Ga. Highway Express, Inc.*,
 488 F.2d 714 (5th Cir. 1974) ................................................................................................7, 8

*Knurr v. Orbital ATK, Inc.*,
 2019 WL 3317976 (E.D. Va. June 7, 2019) ..............................................................................6

*Loc. 702, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
 2015 WL 5626414 (N.D. Ala. Sept. 14, 2015).........................................................................16

*Loc. 703, I.B. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
 762 F.3d 1248 (11th Cir. 2014) .................................................................................................6

*McWhorter v. Ocwen Loan Servicing LLC*,
 2019 WL 9171207 (N.D. Ala. Aug. 1, 2019) ...........................................................................4

*Pinto v. Princess Cruise Lines, Ltd.*,
 513 F. Supp. 2d 1334 (S.D. Fla. 2007) ...................................................................................12

*Reyes v. AT&T Mobility Servs., LLC*,
 2013 WL 12219252 (S.D. Fla. June 21, 2013) .........................................................................4

*Robbins v. Koger Props., Inc.*,
 116 F.3d 1441 (11th Cir. 1997) ...............................................................................................13

*Sawyer v. Intermex Wire Transfer, LLC*,
 2020 WL 5259094 (S.D. Fla. Sept. 3, 2020) ............................................................................2

- iv -

Case No. 23-24580-CIV-ALTONAGA/REID

**PageCase No. 23-24580-CIV-ALTONAGA/REID**

*SEC v. Davison*,
    2023 WL 2931641 (M.D. Fla. Mar. 8, 2023)
    *report and recommendation adopted*,
    2023 WL 3995481 (M.D. Fla. June 1, 2023)................................................................6

*Smith v. Floor & Decor Outlets of Am., Inc.*,
    2017 WL 11495273 (N.D. Ga. Jan. 10, 2017).........................................................11

*Swift v. BancorpSouth Bank*,
    2016 WL 11529613 (N.D. Fla. July 15, 2016) .......................................................12

*Thorpe v. Walter Inv. Mgmt. Corp.*,
    2016 WL 10518902 (S.D. Fla. Oct. 17, 2016)................................................. *passim*

*Waters v. Cook's Pest Control, Inc.*,
    2012 WL 2923542 (N.D. Ala. July 17, 2012) ....................................................5, 14

*Waters v. Int'l Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir. 1999) ..............................................................................4

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §78j(b).................................................................................................................4, 8

**SECONDARY AUTHORITIES**

*Securities Class Action Settlements, 2024 Review & Analysis*
    (Cornerstone Research 2025).....................................................................................8

4920-6532-2803.v1

Case No. 23-24580-CIV-ALTONAGA/REID

Lead Counsel respectfully submits this motion for an award of attorneys' fees and expenses.

## I.      INTRODUCTION

On a contingency basis and with no guarantee of ever being paid, Court-appointed Lead Counsel Robbins Geller Rudman & Dowd LLP ("Lead Counsel") secured an outstanding cash settlement of $5,500,000 (the "Settlement Amount") on behalf of the Class.[1]  Indeed, as noted in Lead Plaintiffs' accompanying Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and Incorporated Memorandum of Law (the "Final Approval Memorandum"), the proposed Settlement represents over 70% of the potential recoverable damages under Lead Plaintiffs' damages model – far exceeding the 8.2% median recovery in Eleventh Circuit securities settlements from 2015 through 2024.  The Settlement is a highly favorable result and was achieved through the skill, unabated hard work, and effective advocacy of Lead Counsel.  As compensation for its efforts, Lead Counsel respectfully applies for an award of attorneys' fees in the amount of 25% of the Settlement Amount and $224,787.28 in expenses that were reasonably and necessarily incurred to prosecute the Litigation.

Lead Counsel expended over 2,800 hours litigating this action, which included: (i) conducting a thorough and wide-ranging investigation of all potential claims, including an analysis of Teleperformance's regulatory filings, as well as several confidential witness interviews; (ii) filing a highly detailed complaint and two amended complaints; (iii) defeating, in large part, Defendants' motion to dismiss the SAC; (iv) serving comprehensive written discovery on Defendants and meeting and conferring extensively over the same; (v) responding to Defendants' written discovery on Plaintiffs, meeting and conferring over the same, and participating in other class-certification-related discovery; (vi) filing Plaintiffs' motion for class certification, supported by an expert who opined on market efficiency, among other things; and (vii) exchanging detailed mediation statements and successfully mediating a resolution of the Litigation with the assistance of an experienced mediator.  *See generally* Astley Decl.

Not only did the breadth of this Litigation present challenges, but in this complex case, Lead Plaintiffs' pleading and proof burdens were manifold.  As the Court is aware, Defendants at all times vehemently disputed the pivotal issue of whether Lead Plaintiffs' purchases of Teleperformance

---

[1]      The Settlement Amount, plus all interest earned thereon is the "Settlement Fund."

- 1 -

Case No. 23-24580-CIV-ALTONAGA/REID

ADRs constituted a domestic transaction, along with issues of falsity, scienter, and loss causation, and were prepared to put forth at summary judgment and trial credible evidence in response to Plaintiffs' allegations on each of these elements.  Astley Decl., ¶¶4, 25, 29, 33, 56.  Specifically, Defendants argued that the alleged misstatements were true when they were made, were inactionable puffery or mere opinion statements, and made without scienter.  *Id.*, ¶4.  In addition, Defendants challenged the alleged corrective disclosures and were successful in limiting the scope of the case. While Lead Plaintiffs had strong counterarguments to each of these points, if the Court or a jury lent credence to Defendants' arguments, the Class's recovery would have been further reduced, if not eliminated altogether.  *Id.*, ¶¶72-74.

Furthermore, the result achieved here is particularly impressive given that Lead Counsel independently developed the factual allegations and legal theories underpinning this Litigation, and fact discovery was initiated without the benefit of any governmental charges or convictions.  Lead Counsel faced the substantial risks in the Litigation head-on by pleading and proving a strong case and devoting the resources necessary to successfully litigate this case against prominent defense firms.

It is against this backdrop that Lead Counsel respectfully submits this request for an award of attorneys' fees equal to 25% of the Settlement Amount – an award well in line with, if not below, fee awards in the Eleventh Circuit and around the country in securities and other complex class actions. *See, e.g.*, *Cabot E. Broward 2 LLC v. Cabot*, 2018 WL 5905415, at *4 (S.D. Fla. Nov. 9, 2018) (awarding a fee equal to one-third of the settlement fund, "consistent with what courts routinely award in class actions"); *In re Checking Acct. Overdraft Litig.*, 2020 WL 4586398, at *17 (S.D. Fla. Aug. 10, 2020) (awarding fee equal to 35% of the settlement fund), *aff'd*, 2022 WL 472057 (11th Cir. Feb. 16, 2022); *Sawyer v. Intermex Wire Transfer, LLC*, 2020 WL 5259094, at *1 (S.D. Fla. Sept. 3, 2020) (awarding fee equal to one-third of the settlement fund); *In re Flowers Foods, Inc. Sec. Litig.*, 2019 WL 6771749, at *1 (M.D. Ga. Dec. 11, 2019) (same); *In re Walter Energy, Inc. Sec. Litig.*, 2016 WL 7230505, at *1 (N.D. Ala. May 3, 2016) (awarding fee equal to 33% of the settlement fund).

In addition, Lead Plaintiffs are two sophisticated institutional investors who have actively supervised this Litigation from the outset, and they both have endorsed the fee request as

- 2 -

commensurate with Lead Counsel's efforts in the Litigation.[2]  Furthermore, the reaction of the Class also strongly supports the requested fee, as no objection to the fee request has been filed to date. Thus, the overwhelming endorsement of the Class weighs heavily in support of the requested fee award.

For the reasons set forth in detail below, in the Final Approval Memorandum, and in the Astley Declaration,[3] Lead Plaintiffs and Lead Counsel respectfully request that the Court approve this motion.

## II.      THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

### A.      Lead Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Similarly, the Eleventh Circuit holds that attorneys who create a common fund are entitled to be compensated for their efforts with a "percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *see also Cabot*, 2018 WL 5905415, at *1 ("the calculation of attorneys' fees in such cases should be based upon a reasonable percentage of the common fund, as opposed to the 'lodestar' method").  The common fund "doctrine serves the 'twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all

---

[2]      *See* Declaration of Christine Cassani on behalf of City of Warren General Employees' Retirement System ("Cassani Decl."), ¶¶5-7, and the Declaration of Steven J. Smith on behalf of City of Westland Police and Fire Retirement System ("Smith Decl."), ¶¶4-6, attached as Exhibits A and B, respectively, to the Astley Decl.

[3]      Lead Counsel respectfully refers the Court to the accompanying Declaration of Stephen R. Astley in Support of: (I) Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (II) Motion for an Award of Attorneys' Fees and Expenses ("Astley Decl.") for a detailed description of Lead Plaintiffs' allegations, the procedural history, efforts of counsel, risks of proceeding with the Litigation, and the Settlement.  Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation of Settlement, dated January 10, 2025 (ECF 90-2) ("Stipulation"), and in the Astley Declaration.  All citations and internal quotations are omitted, and all emphasis is added, unless otherwise noted.

4920-6532-2803.v1

Case No. 23-24580-CIV-ALTONAGA/REID

who gained from the named plaintiff's efforts.'" *Checking Acct.*, 2020 WL 4586398, at *16.  This is especially true where class counsel prosecuted the case on a contingent basis.  *See In re Checking Acct. Overdraft Litig.*, 2014 WL 12557836, at *13 (S.D. Fla. Apr. 1, 2014) ("when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of nonpayment").[4]

### B.      The Requested Attorneys' Fees Are Reasonable

Courts within the Eleventh Circuit have noted that a fee request in complex class actions of "one-third of the settlement fund is . . . consistent with the trend in this Circuit."  *Reyes v. AT&T Mobility Servs., LLC*, 2013 WL 12219252, at *3 (S.D. Fla. June 21, 2013) (collecting cases approving a one-third fee request); *see also, e.g.*, *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1300 (11th Cir. 1999) (affirming fee award of 33-1/3% of the $40 million settlement fund); *Cabot*, 2018 WL 5905415, at *4 (finding an award of one-third of settlement fund to be "consistent with what courts routinely award in class actions"); *Hanley v. Tampa Bay Sports & Ent. LLC*, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) ("district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund"); *McWhorter v. Ocwen Loan Servicing LLC*, 2019 WL 9171207, at *14 (N.D. Ala. Aug. 1, 2019) (awarding 33% fee, and noting "The Court of Appeals and numerous district courts in this circuit have held that one-third of the fund represents a reasonable attorneys' fee, especially in contingency fee cases, such as this one.").

This is particularly true in the context of securities class action settlements, as numerous courts within this Circuit have found that "'[a]wards of 30% or more of a settlement fund are not uncommon in §10(b) common fund cases.'"  *In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *10 (M.D. Fla. Mar. 23, 2021) (awarding one-third fee) (alteration in original), *report and recommendation adopted*, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021); *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *8 (S.D. Fla. Oct. 17, 2016) (awarding fee equal to one-third of $24 million securities class action settlement, and noting that "[i]n recent orders awarding fees in securities class action settlements, courts have awarded attorneys' fees of 30% or 33% of the

---

[4]      Courts in this Circuit have emphasized that the percentage approach is "'consistent with, and is intended to mirror, the private marketplace where attorneys negotiate percentage fee arrangements with their clients.'"  *See, e.g.*, *Cabot*, 2018 WL 5905415, at *4.

4920-6532-2803.v1

settlement fund. . . .   This factor therefore supports an upward adjustment to the benchmark percentage to the 30-33% range."); *see also, e.g.*, *Cabot*, 2018 WL 5905415, at *2 (awarding fee equal to one-third of settlement fund); *Flowers Foods*, 2019 WL 6771749, at *1 (same); *City Pension Fund for Firefighters & Police Officers in City of Miami Beach v. Aracruz Celulose, S.A.*, 2013 WL 12489095, at *3-*4 (S.D. Fla. July 17, 2013) (same); *Walter Energy*, 2016 WL 7230505, at *1 (awarding 33% fee); *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017) (awarding 35% fee); *In re NetBank, Inc. Sec. Litig.*, 2011 WL 13353222, at *2 (N.D. Ga. Nov. 9, 2011) (awarding 34% of settlement).

While the Notice states that Lead Counsel may seek up to a one-third fee, Lead Counsel is only requesting 25% of the Settlement Amount.  This fee request is particularly modest in light of the exceptional result achieved, the risks and challenges of the Litigation, and Lead Counsel's substantial investment of time and resources without any compensation.  *See, e.g.*, *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, 2019 WL 2720818, at *4 (N.D. Ga. June 6, 2019) ("Awards of up to 33% of the common fund are not uncommon in the Eleventh Circuit, and especially in cases where Class Counsel assumed substantial risk by taking complex cases on a contingency basis."); *Waters v. Cook's Pest Control, Inc.*, 2012 WL 2923542, at *17 (N.D. Ala. July 17, 2012) (awarding 35% where "Class Counsel accepted this matter on a contingent basis" and "have incurred significant expenses in prosecuting this action over the course of [three] years and received no compensation" with "a real possibility that Class Counsel would not recover anything for the Class").

Notably, to date, no Class Member has filed an objection to the fee request.  Pursuant to the Preliminary Approval Order, the Claims Administrator emailed or mailed a total of 30,166 Notices to potential Class Members and nominees.  *See* Declaration of Jason Rabe Regarding: (A) Mailing of Notice of Pendency and Proposed Settlement of Class Action and Proof of Claim and Release Form; (B) Publication of Summary Notice; (C) Establishment of Call Center Services and Website; (D) Claim Received; and (E) Requests for Exclusion Received to Date, ¶11 ("Rabe Decl."), attached as Exhibit C to the Astley Decl.  The lack of *any* objection is further evidence that the requested fee is fair.  *See Health Ins. Innovations*, 2021 WL 1341881, at *12 ("absence of objections supports Counsel's [one-third] fee and expenses requests"); *NetBank*, 2011 WL 13353222, at *2 (noting that

4920-6532-2803.v1

the lack of objections is """"strong evidence of the propriety and acceptability" of the fee request"").[5] The requested fee is also reasonable in light of: (i) Lead Plaintiffs' approval, discussed below in §II.C.; and (ii) the additional *Camden I* factors, discussed below in §II.D.

### C.      The Percentage Fee Approved by Lead Plaintiffs Is Entitled to a Presumption of Reasonableness

"[T]he Eleventh Circuit has recognized that 'awards of up to 25% of the common fund are presumptively reasonable in this circuit.'" *SEC v. Davison*, 2023 WL 2931641, at *2 (M.D. Fla. Mar. 8, 2023), *report and recommendation adopted*, 2023 WL 3995481 (M.D. Fla. June 1, 2023). "Accordingly, the Court may award these fees without further consideration." *Id.* at *3. Moreover, in enacting the PSLRA, Congress intended to encourage investors with substantial financial stakes in the litigation to serve as lead plaintiffs and play an active role in supervising and directing the litigation, including selecting and monitoring class counsel. *See Loc. 703, I.B. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1260 (11th Cir. 2014). Accordingly, fees negotiated between a properly selected PSLRA lead plaintiff and its counsel should be accorded a presumption of reasonableness. *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *8 (S.D.N.Y. Nov. 7, 2007) ("[A] fee request which has been approved and endorsed by a properly-appointed lead plaintiff is 'presumptively reasonable,' especially where the lead plaintiff is a sophisticated institutional investor."); *Knurr v. Orbital ATK, Inc.*, 2019 WL 3317976, at *2 (E.D. Va. June 7, 2019) ("[T]he requested attorneys' fees and litigation expenses have been reviewed and approved by [plaintiffs], sophisticated institutional investors who were involved with and oversaw the Action.").

Here, the two institutional investor Lead Plaintiffs – the type of investors Congress wanted to direct class actions like this one – approve and endorse the requested fee as fair and reasonable in light of, among other things, the substantial work Lead Counsel has performed, the risks of continuing the Litigation through trial, and the exceptional result obtained for the Class. *See* Cassani Decl., ¶7; Smith Decl., ¶6. Accordingly, the requested fee is entitled to a presumption of reasonableness.

---

[5]      Should any timely objections to the fee and expense request be filed, Lead Counsel will address them in Lead Plaintiffs' reply, which will be filed no later than May 16, 2025.

4920-6532-2803.v1

Case No. 23-24580-CIV-ALTONAGA/REID

**D.       The Circumstances of the Litigation Justify the Fee Award**

Although "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case," the Eleventh Circuit recommends that district courts consider several factors to determine what constitutes a reasonable percentage award. *See Camden I*, 946 F.2d at 772-75 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).  These factors include: (i) the time and labor required; (ii) the novelty and the difficulty of the questions involved; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of other employment by the attorney due to the acceptance of the case; (v) the customary fee; (vi) whether the fee is fixed or contingent; (vii) time limitations imposed by the client or the circumstances;[6] (viii) the amount involved and the results obtained; (ix) the experience, reputation, and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client;[7] and (xii) awards in similar cases.  *Camden I*, 946 F.2d at 772 n.3.  "These twelve factors are guidelines; they are not exclusive."  *Checking Acct.*, 2020 WL 4586398, at *17.

In awarding a percentage fee award, a court may also properly consider "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel . . . and the economics involved in prosecuting a class action."  *Camden I*, 946 F.2d at 775.  Additionally, "[i]n most instances, there will also be additional factors unique to a particular case which will be relevant to the district court's consideration."  *Id*.

While each of the above factors (and any consideration unique to a particular case) may be an appropriate consideration, "[t]he factors which will impact upon the appropriate percentage to be awarded as a fee in any particular case will undoubtedly vary."  *Id.*  As shown herein, an analysis of the relevant factors confirms that the 25% fee requested by Lead Counsel is reasonable and should be awarded.

---

[6]      This factor is not applicable to the circumstances of this case.

[7]      This factor is not applicable to the circumstances of this case.

4920-6532-2803.v1

Case No. 23-24580-CIV-ALTONAGA/REID

### 1.     The Amount Involved and the Results Obtained

While listed as the eighth *Camden I* or *Johnson* factor, Lead Counsel discusses this factor first because, in determining an appropriate fee award, "'[the] monetary results achieved [in a particular case] ***predominate*** over all other criteria,'" making "the amount involved and results obtained . . . the 'most important factor' in determining an award of attorneys' fees." *Cabot*, 2018 WL 5905415, at *5 (alterations and emphasis original); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("[T]he most critical factor is the degree of success obtained."); *Thorpe*, 2016 WL 10518902, at *10 ("'It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained.'"); *NetBank*, 2011 WL 13353222, at *2 (awarding 34% fee, and noting same).

The Settlement is outstanding as it represents a significant recovery for Class Members – over 70% of potential recoverable damages, assuming that Plaintiffs had prevailed on all elements of their claims at summary judgment and trial.  ¶¶11, 58.  This recovery far exceeds the median recovery in securities class actions of 8.2% in the Eleventh Circuit from 2015 through 2024.[8] *Thorpe*, 2016 WL 10518902, at *3 (settlement worth 5.5% of maximum damages was "an excellent recovery" warranting one-third fee).

The Settlement represents an exceptional result in the face of significant risks.  Thus, "the 'most important factor' in determining an award of attorneys' fees" provides compelling support for Lead Counsel's requested fee award.  *Cabot*, 2018 WL 5905415, at *5.

### 2.     The Novelty and Difficulty of the Legal and Factual Issues

Courts have recognized that the novelty and difficulty of the claims in a case are significant factors to be considered in awarding a fee, particularly in the context of securities class actions.  *See Health Ins. Innovations*, 2021 WL 1341881, at *11 ("§10(b) litigation typically involves, as here, multi-faceted, complex legal questions, including proving falsity, scienter, materiality, causation, and damages"); *NetBank*, 2011 WL 13353222, at *3 (noting "the complexity of securities class action litigation is 'notably difficult and notoriously uncertain'").  As discussed in the Astley

---

[8]     *See Securities Class Action Settlements, 2024 Review & Analysis* at 20 (Cornerstone Research 2025) ("Cornerstone Report"), available at https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-Settlements-2024-Review-and-Analysis.pdf.

4920-6532-2803.v1

Declaration and the Final Approval Memorandum, the substantial risks and uncertainties inherent in PSLRA litigation, and in this case in particular, made it far from certain that any recovery – let alone $5,500,000 – would ultimately be obtained.

Nuanced legal and factual issues existed concerning whether Lead Plaintiffs could establish that their ADR purchases occurred in the United States and whether the alleged misstatements and omissions were material, false or misleading, not inactionable puffery or statements of opinion, and made with the requisite intent.  Astley Decl., ¶4.  Specifically, Defendants argued that statements concerning the Company's commitment to its employees and "positive working environment" were non-actionable puffery and statements of opinion, and that none of the alleged statements was false or misleading.  ECF 72 at 6-11.  In addition, Defendants challenged Lead Plaintiffs' scienter allegations with evidence purportedly demonstrating that "Teleperformance was transparent with investors and the broader public about its practices . . ." and did not act with an intent to deceive or with severe recklessness.  *Id.* at 17.

Assuming Plaintiffs established the domesticity of their ADR purchases, along with falsity and scienter over Defendants' many fact-based arguments, they would also have to prove loss causation and damages – *i.e.*, that the revelation of the alleged fraud through a series of corrective disclosures proximately caused the substantial decline in Teleperformance's ADR price following those disclosures.  *Id.* at 17.  Defendants have steadfastly maintained that any losses suffered by the Class were not attributable to any alleged disclosures because those disclosures did not correct any alleged misstatements.  *Id.*  Defendants were ultimately successful with respect to a November 9, 2022 *Time* article in which the Court ruled it did not qualify as a corrective disclosure, significantly reducing potential damages.  ECF 75 at 23-26.

Accordingly, Plaintiffs faced all the "'multi-faceted and complex legal questions endemic'" to cases based on alleged violations of the federal securities law.  *Thorpe*, 2016 WL 10518902, at *9.  Although Plaintiffs believe they could rebut all of Defendants' arguments on liability and damages, obtain class certification, survive summary judgment, and prevail at trial, the issues between the parties required, and would continue to require, a tremendous amount of legal and factual expertise and would be resolved through a battle between experts, the outcome of which is notoriously uncertain.  *See, e.g.*, *In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prod. Liab.*

*Litig.*, 2023 WL 2284684, at *10 (S.D. Fla. Feb. 28, 2023), *vacated and remanded on other grounds by* 2024 WL 3065907 (11th Cir. June 20, 2024) ("[I]f litigation had continued there would have been a 'battle of experts' with an uncertain outcome."); *Thorpe*, 2016 WL 10518902, at *9 (noting risk of "successfully maintain[ing] class certification through trial, and prov[ing] damages, requiring additional complicated expert testimony").

Despite these significant risks and challenges, Lead Counsel "was able to achieve substantial results in the most efficient manner possible without requiring protracted and extended litigation," thus providing further support for Lead Counsel's 25% fee request. *See George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1383 (N.D. Ga. 2019) (noting the "'swift and successful conclusion supports an upward deviation from the benchmark'") and awarding a 33% fee.

### 3.     The Skill, Experience, and Ability of the Attorneys Supports the Requested Fee

In evaluating an attorney fee request, courts in this Circuit consider "'the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one,'" *Thorpe*, 2016 WL 10518902, at *9, and "the experience, reputation, and ability of the attorneys" involved. *Camden I*, 946 F.2d at 772 n.3; *see also Columbus Drywall & Installation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *4 (N.D. Ga. Oct. 26, 2012) (awarding a fee of $25 million, or one-third of the recovery, and finding "[t]he appropriate fee should also reflect the degree of experience, competence, and effort required by the litigation").

Here, the skills and resources required to prosecute this complex securities fraud class action were significant. Lead Counsel is one of the preeminent class action securities litigation firms in the country, with decades of experience in prosecuting and trying complex class actions. *See* www.rgrdlaw.com; *see also Thorpe*, 2016 WL 10518902, at *9 ("The quality of the representation by Class Counsel and the standing of Class Counsel are important factors that support the reasonableness of the requested fee."). That experience and skill was demonstrated by the efficient and successful prosecution of this Litigation, culminating in the outstanding Settlement. *See Cabot*, 2018 WL 5905415, at *3 ("Class Counsel also has a well-deserved reputation for successfully trying complex cases to conclusion and defending those outcomes on appeal, a factor which likely played into the Defendants' decision to avoid a trial in this case."); *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1359 (S.D. Fla. 2011) ("Class Counsel took on a great deal of risk in bringing

- 10 -

this case, and turned a potentially empty well into a significant judgment.  That kind of initiative and skill must be adequately compensated to insure that counsel of this caliber is available to undertake these kinds of risky but important cases in the future.").

The quality of opposing counsel is also important in evaluating the quality of services rendered by Lead Counsel.  *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1209 (S.D. Fla. 2006) ("'[I]n assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced.'") (alteration in original).  This Litigation was defended by Latham & Watkins LLP, a law firm with a well-deserved reputation for vigorous advocacy in the defense of complex actions.  Nevertheless, Lead Counsel presented a strong case and demonstrated its willingness and ability to prosecute the Litigation through trial and the inevitable appeals, resulting in a highly favorable settlement for the Class.  *See Checking Acct.*, 2020 WL 4586398, at *19 ("'Given the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results.'").

### 4. The Time and Labor Expended by Lead Counsel Supports the Requested Fee

For over one-and-a-half years, Lead Counsel dedicated an enormous amount of time and money to successfully litigate this case.  *See generally* Astley Decl., and *see* Declaration of Stephen R. Astley Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Decl."), attached as Exhibit D to the Astley Decl.  Indeed, Lead Counsel expended over 2,800 hours in this Litigation.  *Thorpe*, 2016 WL 10518902, at *8 (the "significant time and labor that Class Counsel expended on behalf of the Class with no assurance of ultimately being paid" supported the one-third fee request); *see also Smith v. Floor & Decor Outlets of Am., Inc.*, 2017 WL 11495273, at *4 (N.D. Ga. Jan. 10, 2017) (more than 3,000 hours of counsel's "time and labor" supported one-third fee award).  These efforts culminated in the $5.5 million recovery.

Moreover, Lead Counsel's work will not end upon final approval.  Indeed, a significant amount of time will be spent shepherding the claims process and working with Class Members and the Claims Administrator to ensure that as many Class Members as possible share in the distribution of the Net Settlement Fund.  No additional compensation will be sought for those efforts.  Courts

4920-6532-2803.v1

regularly find this "additional undertaking" an "important factor in determining an award of attorneys' fees." *Cabot*, 2018 WL 5905415, at *2.

### 5.    The Contingent Nature of the Fee Weighs in Favor of the Requested Award

"The 'customary fee' in a class action lawsuit of this nature is a contingency fee because virtually no individual possesses a sufficiently large stake in the litigation to justify paying his attorneys on an hourly basis." *Thorpe*, 2016 WL 10518902, at *10; *see also Health Ins. Innovations*, 2021 WL 1341881, at *11 ("'Most often, this method of representation is the only means a defrauded securities investor can seek assistance from an attorney.'"). A determination of a fair fee must include an appreciation of the contingent nature of the fee and the significant risks of non-recovery. *Checking Acct.*, 2020 WL 4586398, at *20 (acknowledging that "Class Counsel assumed a significant risk of nonpayment or underpayment . . . [t]hat risk warrants an appropriate fee"). Courts have consistently recognized that the substantial risk to class counsel of receiving little or no recovery is a major factor in determining a fee award:

> "Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. . . . A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing."

*Swift v. BancorpSouth Bank*, 2016 WL 11529613, at *18 (N.D. Fla. July 15, 2016); *see also Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) ("attorneys' risk is '"perhaps the foremost" factor' in determining an appropriate fee award").

Lead Counsel prosecuted this Litigation for over one-and-a-half years on a wholly contingent basis and bore all the risks of litigating the case through trial and possible appeals. Lead Counsel understood from the outset that they were embarking on a complex, expensive, and potentially lengthy litigation, which could (and did) require the significant investment of expenses and attorney time, with no guarantee of ever being compensated for such investment. Lead Counsel also understood that Defendants were well-financed and would (and, in fact, did) retain highly experienced defense firms. In undertaking this risk, Lead Counsel ensured that sufficient resources were dedicated to the prosecution of this Litigation.

The risks of contingent litigation are highlighted by cases that have been lost after thousands of hours have been invested in successfully opposing motions to dismiss and pursuing discovery. *See, e.g.*, *George v. Duke Energy Ret. Cash Balance Plan*, 2011 WL 13218031, at \*6 (D.S.C. May 16, 2011) ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs, yet have lost the case despite their advocacy."). For example, a change in law that occurs during the pendency of a class action can result – and has – in the dismissal of a case after the investment of significant time and resources. As a result of these and other developments, many cases are lost after thousands of hours have been invested in successfully opposing motions to dismiss and pursuing discovery. *See, e.g.*, *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp.*, 77 F.4th 74 (2d Cir. 2023) (class decertified following more than 12 years of litigation and appellate and Supreme Court review, after plaintiffs' counsel incurred nearly $7 million in expenses, and dedicated over 115,000 hours); *In re Vivendi Universal, S.A., Sec. Litig.*, 842 F. Supp. 2d 522 (S.D.N.Y. 2012) (granting judgment on the pleadings following change of law related to jurisdiction); *In re Williams Sec. Litig. - WCG Subclass*, 558 F.3d 1130, 1143 (10th Cir. 2009) (affirming grant of summary judgment for energy company following change of law related to loss causation).

Even plaintiffs who survive summary judgment and succeed at trial may find their judgment overturned on appeal or on a post-trial motion. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction in light of subsequent change in law); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' judgment as a matter of law on the basis of loss causation, overturning jury verdict and award in plaintiff's favor), *aff'd on other grounds*, 688 F.3d 713 (11th Cir. 2012); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed on appeal after almost seven years of litigation on loss causation grounds and judgment entered for defendant). Thus, there existed a very real risk here that Lead Counsel would invest substantial resources and receive nothing.

At bottom, the fee in this matter was entirely contingent and fraught with risk; there would be no fee without a successful result. Nevertheless, Lead Counsel committed significant resources to

the vigorous and successful prosecution of this Litigation for the benefit of the Class and were fully prepared to litigate through trial, if necessary, to recover the damages suffered by Plaintiffs and the Class.  As such, this factor further supports Lead Counsel's fee request.

### 6. The "Undesirability" of the Case

Courts consider also the "undesirability" of a case in awarding attorney fees, recognizing that, given the "positive societal benefits to be gained from lawyers' willingness to undertake difficult and risky, yet important" cases, "such decisions must be properly incentivized." *Checking Acct.*, 830 F. Supp. 2d at 1364; *see also Waters*, 2012 WL 2923542, at *18 ("The expense and time involved in prosecuting such litigation on a contingent basis, with no guarantee or high likelihood of recovery, would make this case highly undesirable for many attorneys.").  The "undesirability" of this complex class action, and the risk of no recovery, was particularly apparent from its inception, as evidenced by the fact that, while numerous firms often move in securities class actions, no other firm moved to be appointed lead counsel. *See* ECFs 13, 15-16; *Thorpe*, 2016 WL 10518902, at *11 (when there was no other movant, "this factor supports an upward adjustment"); *Checking Acct.*, 830 F. Supp. 2d at 1364 (noting this was "'a case from which other law firms shrunk'").  This demonstrates that many experienced firms deemed the case sufficiently risky that they did not believe that this Litigation was worth pursuing on a contingent basis.  Accordingly, this factor supports the requested fee award.

### 7. The Preclusion of Other Employment

The considerable amount of time spent prosecuting this case – over 2,800 hours – was time that Lead Counsel could not devote to other matters.  Moreover, Lead Counsel expended this time and effort without any assurance that it would ever be compensated for its hard work.  Accordingly, this factor also supports the requested fee. *See, e.g.*, *Health Ins. Innovations*, 2021 WL 1341881, at *11 ("'It is uncontroverted that the time spent on the [a]ction was time that could not be spent on other matters.  This factor too supports the requested fee.'"); *Allapattah*, 454 F. Supp. 2d at 1209 ("[t]aking on this resource-sapping, risk-based venture" "necessarily had some adverse impact on the attorney's ability to accept other work").

### 8. Public Policy Further Supports the Requested Fee

Public policy strongly favors rewarding firms for bringing successful securities actions like this one. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *17 (S.D.N.Y. May 9,

- 14 -

4920-6532-2803.v1

2014) ("'In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered.'"), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *Checking Acct.*, 2020 WL 4586398, at \*20 ("Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee.").

In sum, for the reasons set forth above, the requested 25% fee is reasonable under the circumstances, and should be approved by the Court.

## III.    THE REQUESTED EXPENSES ARE REASONABLE

Lead Counsel's application includes a request for expenses and charges totaling $224,787.28 that were reasonably incurred in furtherance of the claims on behalf of the Class.  These expenses are itemized in the Robbins Geller Decl., attached as Exhibit D to the Astley Decl.  These expenses and charges are properly recovered by counsel.  *See, e.g.*, *Hanley*, 2020 WL 2517766, at \*6 ("'all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case'" may be recovered); *NetBank*, 2011 WL 13353222, at \*4 ("It has long been held that 'plaintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action.'").

The categories of expenses for which Lead Counsel seeks payment here are the type that are necessarily incurred in litigation and routinely charged to hourly clients, and, therefore, should be paid out of the common fund.[9]  There has been no objection to these expenses.

For instance, Lead Counsel was required to travel in connection with the Litigation and thus incurred the related costs of meals, lodging, and transportation.  As detailed in the Robbins Geller Decl., in connection with the prosecution of this case over one-and-a-half years, the firm paid for travel expenses to, among other things, participate in depositions and attend in-person mediations.

Lead Counsel also incurred the costs of computerized research.  *See* Robbins Geller Decl., ¶6(e).  It is standard practice for attorneys to use these services to assist them in researching legal and factual issues.  These charges are for electronic research and data retrieval charges provided

---

[9]    The largest component of these expenses was devoted to Plaintiffs' experts, consultants, and investigators; the Robbins Geller Declaration explains how each expert, consultant, and investigator contributed to Lead Counsel's prosecution of the Litigation.  Robbins Geller Decl., ¶6(d).

4920-6532-2803.v1

Case No. 23-24580-CIV-ALTONAGA/REID

through vendors such as Courtlink, LexisNexis Products, PACER, Thomson Financial, and Westlaw. Other expenses that were necessarily incurred in the prosecution of this Litigation include mediation fees, photocopying, and filing and transcript expenses. Because these were all necessary expenses incurred by Lead Counsel, they should be paid from the Settlement Fund. *See, e.g.*, *Loc. 702, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 2015 WL 5626414, at *1 (N.D. Ala. Sept. 14, 2015) (approving nearly $1.7 million in expenses); *In re U.S. Steel Consol. Cases*, 2023 WL 11997192, at *1 (W.D. Pa. Mar. 21, 2023) (approving award of $2.7 million in expenses at similar stage of litigation).

## IV.     CONCLUSION

The $5,500,000 Settlement of this Litigation is the culmination of over one-and-a-half years' worth of diligent work and skillful litigation by Lead Counsel. For its efforts, Lead Counsel respectfully requests that the Court approve the fee and expense application and enter an order awarding fees of 25% of the Settlement Amount and payment of expenses of $224,787.28, plus interest earned on both amounts at the same rate as earned by the Settlement Fund.

DATED:  April 25, 2025                       Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
STEPHEN R. ASTLEY (SBN 0139254)
SABRINA E. TIRABASSI (SBN 25521)
LUKE GOVEAS (admitted *pro hac vice*)
ALEX KAPLAN (SBN 1030761)


                                    *s/ Stephen R. Astley*
                                    STEPHEN R. ASTLEY

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sastley@rgrdlaw.com
stirabassi@rgrdlaw.com
lgoveas@rgrdlaw.com
akaplan@rgrdlaw.com

- 16 -

4920-6532-2803.v1

Case No. 23-24580-CIV-ALTONAGA/REID

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com

*Lead Counsel for Lead Plaintiffs*

VANOVERBEKE, MICHAUD
  & TIMMONY, P.C.
THOMAS C. MICHAUD (admitted *pro hac vice*)
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

*Additional Counsel for Lead Plaintiffs*

- 17 -

4920-6532-2803.v1