UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. 23-24580-CIV-ALTONAGA/REID

| | |
|---|---|
| CITY OF WARREN GENERAL EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated, | ) ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| TELEPERFORMANCE SE, et al., | ) ) |
| | ) |
| Defendants. | ) ) |
| | ) |

DECLARATION OF STEPHEN R. ASTLEY IN SUPPORT OF: (I) MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF
ALLOCATION; AND (II) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
EXPENSES

4926-9538-9236.v1

Case No. 23-24580-CIV-ALTONAGA/REID

I, Stephen R. Astley, declare as follows:

1.     I am an attorney duly licensed to practice in the Southern District of Florida and a partner of the law firm Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or "Lead Counsel"), the firm approved as Lead Counsel by the Court to represent Lead Plaintiffs City of Warren General Employees' Retirement System ("City of Warren") and City of Westland Police and Fire Retirement System ("City of Westland") (collectively, "Lead Plaintiffs") in this securities class action ("Litigation").[1]  I have been actively involved in the prosecution and resolution of this Litigation, am familiar with its proceedings, and have knowledge of the matters set forth herein based upon my involvement in this Litigation and supervision of or communications with other lawyers and staff assigned to this Litigation.

2.     I respectfully submit this Declaration in support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses.  This Declaration demonstrates why the proposed Settlement and Plan of Allocation are fair, reasonable, adequate, in the best interests of the Class, and should be approved by the Court, and why the application for an award of attorneys' fees and expenses is reasonable and should likewise be approved.  This Declaration also sets forth the background and principal proceedings of the Litigation, the nature of the claims asserted, the legal services provided by Lead Counsel, and the negotiations that led to the proposed Settlement with Defendants.[2]

## I.     PRELIMINARY STATEMENT

3.     The Settlement, providing for the payment of $5,500,000 in cash, and any interest accrued thereon ("Settlement Fund"), for the benefit of the Class, is the culmination of over one-and-a-half years of vigorously contested litigation.  As detailed below, Lead Plaintiffs and Lead Counsel zealously prosecuted their claims at every stage of the Litigation.  They successfully defended against *two* dismissal attempts by Defendants, engaged in protracted, substantive discussions

---

[1]   All capitalized terms that are not otherwise defined herein have the same meanings ascribed to them in the Stipulation of Settlement, entered on January 10, 2025 ("Stipulation").  ECF 90-2.

[2]   "Defendants" refers to Teleperformance SE ("Teleperformance" or the "Company"), Daniel Julien ("Julien"), Akash Pugalia ("Pugalia"), and Olivier Rigaudy ("Rigaudy").

- 1 -

regarding the scope of merits discovery, sought document discovery both from Defendants and third parties, moved for certification of the Class, engaged experts to opine on various issues, including market efficiency and damages, prepared for and defended the deposition of one such expert, produced documents responsive to Defendants' discovery requests, and prepared for Lead Plaintiffs' depositions pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.  This Court preliminarily approved the Settlement in its Order dated January 14, 2025 (ECF 93) ("Preliminary Approval Order").  The Settlement will resolve all claims asserted in the Litigation against Defendants on behalf of a Class consisting of all Persons who purchased or otherwise acquired Teleperformance American Depositary Receipts ("ADRs") between February 20, 2020 and November 9, 2022, inclusive ("Class Period").[3]  ECF 90-2.[4]

4.      Securities class actions are complex, challenging cases where success is difficult and, because of the stakes involved, result in defendants retaining some of the largest, most sophisticated law firms.  Here, Defendants vigorously disputed all aspects of liability, as well as damages.  The legal risks to continued litigation were many and included Defendants' asserted defenses concerning Lead Plaintiffs' ability to prove liability, loss causation, and damages.  For example, Defendants argued that:

- Lead Plaintiffs' claims represented an improper attempt to apply Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") extraterritorially;

---

[3]      As explained further below, for purposes of the prior motion for class certification (ECF 87) – which the Court denied as moot in light of the Settlement (ECF 89) – the Court's rulings as to loss causation on Defendants' motions to dismiss the Amended and Second Amended Complaints (ECF 65, 72), had the effect of shortening the Class Period to end on August 3, 2022.  However, for purposes of the Settlement, Class Members that purchased Teleperformance ADRs after that date also receive a recovery that is discounted to reflect the lower value of their claims in light of the loss causation ruling.

[4]      Excluded from the Class are "Defendants and members of their immediate families, the Officers and directors of the Company at all relevant times, and members of their immediate families, the legal representatives, heirs, successors or assigns of any of the foregoing, and any entity in which Defendants have or had a controlling interest.  Also excluded from the Class is any Person who would otherwise be a Member of the Class but who validly and timely requests exclusion in accordance with the requirements set by the Court."  Stipulation, ¶1.4.

- Lead Plaintiffs could not establish that Defendants' challenged statements were false and misleading when made;

- Certain alleged statements were inactionable as puffery, opinion, or forward-looking;

- Lead Plaintiffs could not establish a strong inference of scienter; and

- Lead Plaintiffs could not establish loss causation or damages.

5.      The case was vigorously litigated by both sides.  After being appointed as Lead Plaintiffs and litigating a motion to transfer, Lead Plaintiffs conducted an extensive investigation, including engaging L.R. Hodges & Associates, Ltd., a private investigative firm, to review and analyze materials and conduct interviews with targeted third-party witnesses.  Based on this investigation, Lead Plaintiffs filed the Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF 62) ("Amended Complaint").  The Amended Complaint added substantive allegations, false and misleading statements and omissions, and facts gathered through Lead Plaintiffs' investigation related to Teleperformance's content moderation business, the Company's alleged focus on Corporate Social Responsibility ("CSR"), its alleged commitment to the wellbeing of its employees, and the alleged training program and steps it took to protect its content moderators' working conditions, given their exposure to child sexual abuse material ("CSAM") and other disturbing content, which caused severe harm to their mental health.  Defendants moved to dismiss the Amended Complaint, challenging falsity (including on the grounds that the statements were inactionable puffery, opinion, or forward-looking), scienter, and loss causation – as well as arguing that Lead Plaintiffs had failed to plead a domestic transaction in Teleperformance ADRs.

6.      The Court granted Defendants' motion to dismiss, in part, but granted Lead Plaintiffs leave to amend to cure the noted deficiencies.  Lead Plaintiffs thereafter filed a Second Amended Class Action Complaint (ECF 71) ("SAC") to comport with the Court's Order.

7.      Defendants again moved to dismiss.  The Court denied Defendants' motion to dismiss the SAC almost entirely, allowing the claims to proceed but finding that the November 2022 *Time* article could not serve as a corrective disclosure.  Lead Plaintiffs thereafter utilized their thorough investigation to issue targeted discovery to Defendants and numerous third parties.  Lead Plaintiffs engaged in several complex meet and confers with both Defendants and third parties regarding the

scope of discovery. Lead Plaintiffs further searched for, collected, and produced to Defendants numerous documents concerning their investments in Teleperformance ADRs.

8.      Lead Plaintiffs also submitted a detailed motion for class certification supported by the expert declaration of Zahn Bozanic, Ph.D., the William Hillison Professor of Accounting at Florida State University, on market efficiency.[5] Defendants' expert, Cristian Zarcu, submitted a rebuttal report, vigorously challenging Dr. Bozanic's findings regarding market efficiency and the liquidity of the Teleperformance ADRs – as well as opining that it would require difficult, detailed analysis of records from multiple sources to determine whether a potential Class Member's purchase of Teleperformance ADRs met the relevant domesticity requirements. The case was settled before oppositions to class certification were filed, and therefore before the Court ruled on class certification. At the time of the Settlement, Defendants had already deposed Dr. Bozanic and were scheduled to depose City of Westland the next day, and to depose City of Warren two days after that.

9.      The Settlement is the result of two arm's-length, in-person negotiations between the Settling Parties. The Settling Parties first met in person on November 7, 2024 without the aid of a mediator, who was unable to attend due to an unforeseen illness. They were unable to resolve the claims. The second mediation, however, was held before a well-respected and experienced mediator, David M. Murphy, of Phillips ADR Enterprises, LLC, on December 2, 2024. Mr. Murphy is a nationally recognized mediator of complex cases, including securities class actions. In advance of the mediation, the Settling Parties exchanged and provided to Mr. Murphy detailed mediation statements. The Settling Parties engaged in a lengthy in-person mediation and demonstrated their thorough understanding of the strengths and weaknesses of the claims and defenses at issue in the Litigation over the course of approximately 11 hours combined. The Settling Parties were unable to resolve the Litigation at the mediations. Lead Counsel and Lead Plaintiffs nonetheless continued to engage in extensive settlement negotiations with Defendants and Mr. Murphy during the week following the second mediation, which resulted in Mr. Murphy issuing a mediator's recommendation to settle the Litigation for $5,500,000 in cash, inclusive of all fees and costs, which the Settling Parties accepted.

---

[5]      Dr. Bozanic was also retained to help analyze the evidence in support of Lead Plaintiffs' claims related to certain complex issues, including damages.

10.     The $5,500,000 all-cash Settlement is a very favorable result considering the immediate and substantial benefit to the Class and the risks posed by continued litigation, including almost certain attacks on the case at class certification, summary judgment, and trial, and the fact that any judgment would be substantially delayed by inevitable appeals.

11.     In spite of these potential obstacles, Lead Plaintiffs obtained a favorable settlement – totaling over 70% of recoverable damages – that will result in an immediate recovery for the Class. This immediate recovery eliminates the risk of continued litigation under circumstances where a favorable outcome was not guaranteed.

12.     Additionally, the Settlement has the support of Lead Plaintiffs, institutional investors with over $318 million in assets under management, combined.  *See* Declaration of Christine Cassani on Behalf of City of Warren General Employees' Retirement System ("Cassani Decl.") and Declaration of Steven J. Smith on Behalf of City of Westland Police and Fire Retirement System ("Smith Decl."), submitted herewith as Exhibits A and B, respectively.

13.     The proposed Plan of Allocation, included in the Notice Packet (defined herein), was developed with the assistance of Lead Counsel's damages expert and provides for the fair and equitable distribution of the Net Settlement Fund to Class Members.  In accordance with the Preliminary Approval Order, the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and the Proof of Claim and Release Form ("Proof of Claim," and together with the Notice, "Notice Packet") was sent by first-class mail to all Class Members who could be identified with reasonable effort.  *See* Declaration of Jason Rabe Regarding: (A) Mailing of Notice of Pendency and Proposed Settlement of Class Action and Proof of Claim and Release Form; (B) Publication of Summary Notice; (C) Establishment of Call Center Services and Website; (D) Claim Received; and (E) Requests for Exclusion Received to Date ("Rabe Decl."), ¶¶3-11, submitted herewith as Exhibit C.  The Notice Packet, Stipulation, and Preliminary Approval Order are also posted on the Settlement website, www.TeleperformanceSecuritiesSettlement.com, and the Summary Notice was published once in the national edition of *The Wall Street Journal* and once more over *PR Newswire*, a national newswire service.  *Id.*, ¶¶12, 15.

14.     Lead Counsel has been advised by Rust Consulting, whose retention as Claims Administrator was authorized by the Preliminary Approval Order, that as of April 24, 2025, a total of

4926-9538-9236.v1

30,166 copies of the Notice Packet have been mailed to potential Class Members and their nominees. *See* Rabe Decl., ¶11.  The Court-ordered deadline for filing objections to the Settlement or requesting to be excluded from the Class is May 5, 2025.  To date, no objections to any aspect of the Settlement have been filed by Class Members.[6]

15.    The Notice advised all recipients of, among other things: (a) the definition of the Class; (b) their right to exclude themselves from the Class; (c) their right to object to any aspect of the Settlement, including the Plan of Allocation and Lead Counsel's request for attorneys' fees and expenses; and (d) the procedures and deadline for submitting a Proof of Claim in order to be eligible for a payment from the proceeds of the Settlement.

16.    The Notice also apprised Class Members of Lead Counsel's request for an award of attorneys' fees of up to one-third of the Settlement Amount plus litigation expenses not to exceed $200,000, with interest on such fees and expenses earned at the same rate earned by the Class on the Settlement Fund, plus an award to each Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) in the amount of up to $10,000 (up to $20,000 total).  Lead Counsel has aggressively litigated this case on a wholly contingent basis and submits that this fee request is fair, reasonable, and adequate, and warrants this Court's approval.  This request is well within the range of fees typically awarded in similar types of cases and is justified in light of the benefits obtained, the substantial risks undertaken, and the quality, nature, and extent of the services rendered.

17.    Accordingly, Lead Plaintiffs respectfully submit that the Settlement and Plan of Allocation should be approved as fair, reasonable, and adequate, and that Lead Counsel should be awarded attorneys' fees of 25% of the Settlement Amount and payment of the requested litigation expenses.

## II.    THE NATURE AND HISTORY OF THE LITIGATION

18.    This is a federal securities class action against Teleperformance and certain of its current and former officers, and control persons brought under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the United

---

[6]    Lead Plaintiffs will address any objection(s) and/or request(s) for exclusion in a supplemental submission to the Court to be filed by May 16, 2025 as provided for in Paragraph 19 of the Preliminary Approval Order.

4926-9538-9236.v1

States Securities and Exchange Commission, 17 C.F.R. §240.10b-5, on behalf of all persons (with certain exceptions) who purchased or otherwise acquired Teleperformance ADRs between February 20, 2020 and November 9, 2022, inclusive.

### A.     Commencement of the Litigation

19.     City of Warren filed the initial complaint on April 19, 2023 in the United States District Court for the District of Idaho alleging violations of Sections 10(b) and 20(a) of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and Rule 10b-5 against Teleperformance and the Individual Defendants (Julien, Pugalia, and Rigaudy) on behalf of all persons who purchased or otherwise acquired Teleperformance ADRs from July 29, 2020 and November 9, 2022, inclusive.  ECF 1.

20.     On June 20, 2023, City of Warren and City of Westland filed an unopposed motion to be appointed lead plaintiff.  ECF 15.

21.     On July 17, 2023, Judge B. Lynn Winmill appointed City of Warren and City of Westland as Lead Plaintiffs, and approved their selection of Robbins Geller as Lead Counsel.  ECF 16.  Following that appointment, the Settling Parties agreed to postpone the filing of an amended complaint and briefing of a motion to dismiss until after litigating a motion to transfer the case.  *See* ECF 17, 26, 29-30.  Judge Winmill granted the motion on December 4, 2023, and the case was transferred to this District.  ECF 32.

### B.     Lead Plaintiffs' Amended Complaint

22.     Following its appointment, Lead Counsel continued its aggressive, wide-ranging investigation into the facts and circumstances surrounding Defendants' alleged fraud.  In addition to engaging a third-party investigator, Lead Counsel consulted with internal and outside experts on valuation, damages, and causation issues.  Lead Counsel's efforts also included reviewing and analyzing the Company's financial and regulatory filings, as well as other publicly available information, including press releases, news articles, interviews, research reports issued by financial analysts concerning Teleperformance, and other public statements issued by or concerning the Defendants.  This review included materials in both English and Spanish.

4926-9538-9236.v1

23.     On December 29, 2023, Lead Plaintiffs filed the Amended Complaint, which alleges violations of Sections 10(b) and 20(a) of the Exchange Act against Teleperformance and the Individual Defendants and expanded on the allegations raised in the initial complaint.  ECF 62.

24.     The Amended Complaint added additional false and misleading statements, factual information and additional allegations learned through Lead Counsel's investigation and interviews with former employees, as well as additional indicia of scienter and details supporting loss causation.

## C.     Defendants' Motion to Dismiss the Amended Complaint

25.     Defendants moved to dismiss the Amended Complaint on January 12, 2024, with a detailed memorandum of law.  ECF 65.  Defendants argued that Lead Plaintiffs failed to allege a domestic transaction, failed to adequately plead any actionable, material misstatements or omissions, failed to create a cogent inference that Defendants acted with scienter, and failed to allege loss causation.  Additionally, the Individual Defendants directly challenged their status as "control persons" subject to liability under Section 20(a).

26.     Lead Plaintiffs submitted a comprehensive memorandum of law in opposition to Defendants' motion to dismiss on January 26, 2024.  ECF 66.  Among other things, Lead Plaintiffs argued that, contrary to Defendants' contentions, the Amended Complaint properly alleged a domestic transaction, sufficiently alleged that Defendants made false or misleading statements regarding the various categories of statements, and that Defendants' misstatements and omissions were material, and were not inactionable puffery, opinion, or forward-looking.  *Id*. at 5-14.  Lead Plaintiffs also argued that a compelling inference of scienter was supported by factors including: (a) the importance of content moderation to Defendants' business, both as a driver of growth and in contributing to Teleperformance's corporate reputation; (b) the fact that Defendants repeated their misstatements at every opportunity during the Class Period; (c) the fact that Defendants made public statements regarding the safeguards in place for content moderators to demonstrate their knowledge of the harm that exposure to egregious content would have on moderators; (d) the way Defendants handled the backlash and responses to legitimate questions from analysts and the public; and (e) the Colombian government's investigation into Teleperformance's labor practices.  *Id*. at 15-18. Defendants submitted their reply memorandum in further support of their motion to dismiss on February 2, 2024.  ECF 67.

4926-9538-9236.v1

**D.      Defendants' Motion to Dismiss Is Granted in Part with Leave to Amend**

27.      On May 22, 2024, the Court issued an Order partially granting Defendants' motion to dismiss the Amended Complaint without prejudice on curable procedural grounds. ECF 68.  The Order, however, also provided the Court's substantive analysis of falsity and scienter, which rejected the majority of the arguments made in Defendants' motion.  For example, the Court has found that "the statements about Teleperformance's training and support services are actionable" (*id.* at 25), rejecting Defendants' arguments that the statements were merely about corporate mismanagement or limited to "'isolated, anecdotal incidents' that the Court should not extrapolate from" (*id.* at 24), and further rejected Defendants' arguments regarding the falsity of the statements concerning the results of the internal audit, finding such statements to also be actionable.  The Court, based on a number of factors, also found scienter as to those statements that survived its analysis.

**E.      Lead Plaintiffs File a Second Amended Class Action Complaint**

28.      In response, on June 3, 2024, Lead Plaintiffs filed the operative SAC, curing the narrow procedural defects identified by the Court and limiting the alleged misstatements and omissions to those categories that the Court had already found actionable.  Specifically, that Teleperformance had taken particular steps to protect its content moderators, including "hiring procedure[s] involving a series of psychometric tests designed to identify resilient candidates"; "resilience training"; "continuous access to counseling, including by certified therapists"; and "a 24/7 support program during and after the work cycle."  SAC, ¶44.  The SAC also included additional allegations relevant to showing that the November 9, 2022 *Time* article constituted a corrective disclosure, such as allegations that Defendants took steps to resolve the investigation discussed in the *Time* article indirectly, making concessions to labor groups that stood in as surrogates for the Colombian labor authorities.  *Id.*, ¶¶47-52, 70-73.

**F.      Defendants Move to Dismiss the Second Amended Complaint**

29.      Defendants filed a second motion to dismiss, primarily repeating many of the same arguments they raised in their motion to dismiss the Amended Complaint, but also challenging the new and additional information added in the SAC.  For example, Defendants challenged whether certain statements adequately allege falsity, whether the August 4, 2022 *Forbes* article is a corrective disclosure for purposes of loss causation, and whether the November 9, 2022 *Time* article qualifies

4926-9538-9236.v1

as a corrective disclosure when evaluated with the additional allegations in the SAC regarding Teleperformance's subsequent attempts to defuse the investigation.

**G.      The Court Denies Defendants' Motion to Dismiss Almost Entirely**

30.      The Court denied the motion, finding that the alleged statements were false, that Defendants acted with scienter, and that the *Forbes* article was a corrective disclosure as to all the alleged statements that pre-dated the article.  ECF 75 at 9-20, 22-23.  The Court also ruled, however, that because the Colombian labor investigation disclosed by the *Time* article did not result in formal findings of wrongdoing, the *Time* article could not serve as a corrective disclosure.  *See id.* at 24. This had the resultant effect of shortening the Class Period to end on August 3, 2022 for purposes of the litigation ("Litigation Class Period").

**H.      Events After Defendants' Motion to Dismiss**

31.      Because this Litigation is subject to the PSLRA, discovery and other proceedings were stayed pending resolution of Defendants' motion to dismiss.  Accordingly, during that time the Settling Parties neither served discovery requests nor took any depositions.

32.      On September 6, 2024, the Settling Parties filed a Joint Scheduling Report pursuant to the Court's Order and Local Rule 16.1(a)(2)(C).  ECF 76.  Among other things, the Joint Scheduling Report proposed a case schedule through trial.  *Id.*  That proposal was rejected and the Court entered its own scheduling Order, significantly shortening the case schedule, and setting a date by which the parties were required to select a mediator, schedule a date, time, and place for mediation, and jointly file a proposed order scheduling mediation.  ECF 77.

33.      On September 11, 2024, Defendants filed their Answer and Affirmative Defenses to the SAC.  ECF 78.  Defendants denied that they made any false or misleading statements, that the price of Teleperformance ADRs was artificially inflated, and that they acted with scienter.  In addition, Defendants asserted 39 affirmative defenses, reiterating their arguments that their statements were protected by the PSLRA's safe harbor provision and that Lead Plaintiffs' claims were barred for lack of loss causation.

34.      That same day, Lead Plaintiffs served Defendants with their first set of requests for production of documents, which included 53 separate document requests.  Defendants served their responses and objections on October 11, 2024, and corrected those responses and objections on

October 13, 2024.  Defendants served their first requests for production of documents on Lead Plaintiffs on September 27, 2024.  Lead Plaintiffs served their responses and objections on October 28, 2024, and ultimately made their initial productions of 1,116 pages of documents on November 26, 2024.  Lead Plaintiffs also issued subpoenas for documents on numerous third parties, including various United States depository banks that issued the ADRs at issue.

35.     On September 20, 2024, Lead Plaintiffs served their Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1).  Defendants served their Initial Disclosures on September 27, 2024.  Lead Plaintiffs later amended their Initial Disclosures to include the name of their investment manager, on November 26, 2024.

36.     Discovery between the Settling Parties, as well as between Lead Plaintiffs and third parties, resulted in numerous telephonic meet and confers and extensive written correspondence documenting issues of scope and breadth of Lead Plaintiffs' document requests and subpoenas, the scope of the case in light of the Court's rulings on the motion to dismiss, as well as the application of various foreign blocking statutes, including the French blocking statute and/or General Data Protection Regulation.

37.     On October 25, 2024, Defendants served Lead Plaintiffs with notices of Rule 30(b)(6) depositions, to cover 21 separate topics for each Lead Plaintiff.  The depositions were later scheduled for December 10, 2024 (City of Westland) and December 12, 2024 (City of Warren).

**I.      Class Certification**

38.     On December 5, 2024, Lead Plaintiffs filed their motion for class certification.  The motion was supported by a thorough memorandum of law that argued how the proposed Class satisfied the requirements for class certification under Rule 23(a) and(b)(3), and included a detailed analysis demonstrating that Teleperformance ADRs traded in an efficient market during the Litigation Class Period.  ECF 87.  In connection with their motion, Lead Plaintiffs retained and worked closely with Dr. Bozanic.  Dr. Bozanic prepared and submitted a report in support of Lead Plaintiffs' motion, in which he opined the market for Teleperformance ADRs was efficient during the Litigation Class Period, and that damages could be computed for all Class Members using a common methodology that was consistent with Lead Plaintiffs' allegations.  ECF 87-1, Ex. A.  Lead Plaintiffs' motion was further supported by declarations from Lead Plaintiffs detailing how they

- 11 -

were committed to vigorously prosecuting this Litigation and that, if appointed Class Representatives, they would continue to provide fair and adequate representation of the Class. ECF 87-1, Exs. B-C.

39.     As part of mounting their defense against class certification, Defendants took the deposition of Dr. Bozanic and were scheduled to depose each Lead Plaintiff.

40.     The Settlement was reached on December 9, 2024 before Defendants filed their opposition to class certification, and before the Court ruled on class certification.

## III.     THE SETTLEMENT

### A.     Negotiation of the Settlement

41.     The Settlement is the product of intense and hard-fought negotiations, which were conducted at arm's length between experienced counsel and also supervised by the mediator David M. Murphy.

42.     As discussed above, the Court's September 9, 2024 Order Setting Trial and Pre-Trial Schedule, Requiring Mediation, and Referring Certain Matters to Magistrate Judge ordered the parties to "select a mediator in accordance with Local Rule 16.2; schedule a time, date, and place for mediation; and jointly file a proposed order scheduling mediation in the form specified on the Court's website[.]" ECF 77.  Pursuant to that Order, on September 30, 2024, the Settling Parties jointly filed their [Proposed] Order Scheduling Mediation, setting a mediation conference with mediator David M. Murphy on November 7, 2024 in New York, New York. ECF 79.  The Court entered the Order on October 1, 2024.  ECF 81.

43.     In connection with the mediation, the Settling Parties exchanged detailed mediation submissions.  Negotiations were held over two days, first on November 7, 2024 (held without Mr. Murphy present due to an unforeseen illness) and then on December 2, 2024 (with Mr. Murphy present).  During each of these negotiations, Lead Counsel made it clear that it would continue to litigate rather than settle the case for less than fair value.

44.     The Settling Parties mediated in person for a combined total of approximately 11 hours, but were unable to reach an agreement.  Nevertheless, the Settling Parties continued negotiations under Mr. Murphy's supervision and, on December 7, 2024, Mr. Murphy issued a mediator's proposal to settle the Litigation for $5,500,000 in cash, inclusive of all fees and costs.

The Settling Parties accepted the mediator's proposal on December 9, 2024.  The same day, the Settling Parties informed the Court that the Settling Parties had reached an agreement-in-principle to settle the Litigation, subject to final documentation of the Settlement's terms.

**B.**     **Preliminary Approval of the Settlement and Notice to Class Members in Compliance with the Court's Preliminary Approval Order**

45.     On January 10, 2025, Lead Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement.  ECF 90.  In connection therewith, Lead Plaintiffs requested that the Court approve the proposed forms of notice, which, among other things, described the terms of the Settlement, advised Class Members of their rights in connection with the Settlement, set forth the Plan of Allocation, informed Class Members of the amount of attorneys' fees and expenses that Lead Counsel would request, and explained the procedure for filing a Proof of Claim to be eligible to receive a payment from the Net Settlement Fund.  Lead Plaintiffs also requested that the Court certify the Class.

46.     The Court entered its Preliminary Approval Order on January 14, 2025.  ECF 93. Among other things, it appointed Rust Consulting as the Claims Administrator and directed Rust Consulting to cause the mailing of the Notice Packet by first-class mail to all Class Members identifiable with reasonable efforts, no later than February 4, 2025.  *Id.*, ¶9(b).  Pursuant to the Preliminary Approval Order, and under Robbins Geller's supervision, Rust Consulting commenced mailing the Notice Packet to potential Class Members and nominees on February 4, 2025.  *See* Rabe Decl., ¶5.

47.     The Preliminary Approval Order also directed Rust Consulting to cause the Summary Notice to be published once in *The Wall Street Journal*, and once over a national newswire service no later than February 11, 2025.  ECF 93, ¶9(c).  Pursuant to the Preliminary Approval Order, Rust Consulting caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over *PR Newswire* on February 11, 2025.  *See* Rabe Decl., ¶12.

48.     Rust Consulting also maintains and posts information regarding the Settlement on a dedicated website established for the Litigation, www.TeleperformanceSecuritiesSettlement.com, to provide Class Members with information concerning the Settlement, as well as downloadable copies of the Notice Packet, the Stipulation, and the Preliminary Approval Order.  These varying efforts resulted in 30,166 Notices being mailed to potential Class Members.  *See id.*, ¶11.

- 13 -

## IV. FACTORS IN SUPPORT OF THE SETTLEMENT

### A. The Settlement Was Fairly, Honestly, and Aggressively Negotiated by Counsel Who Endorse the Settlement

49. The Settlement was reached only after arm's-length, adversarial good faith negotiations over two mediation sessions, with the substantial assistance of an experienced mediator, David M. Murphy. The Settling Parties prepared comprehensive mediation statements and thoroughly presented arguments supporting their claims and defenses. Lead Counsel is actively engaged in complex federal civil litigation, particularly the litigation of securities class actions, and believes that its reputation and experience gave it a strong position in engaging in settlement negotiations with Defendants. In addition, Defendants' Counsel are experienced lawyers from Latham & Watkins LLP, a well-respected firm with a reputation for vigorous advocacy in the defense of complex securities class actions.

50. The volume and substance of Lead Counsel's knowledge of the strengths and potential weaknesses of Lead Plaintiffs' claims are unquestionably adequate to support the Settlement. In short, by the time they entered into the Settlement, Lead Plaintiffs and Lead Counsel had developed a comprehensive understanding of the facts underlying the claims in the Litigation. Lead Counsel conducted an extensive factual investigation, including reviewing Defendants' public statements, regulatory filings and reports, securities analysts' reports about Teleperformance, media reports about Teleperformance, and engaging outside investigators, to conduct interviews with numerous investigative sources with information concerning Teleperformance. Lead Counsel thoroughly researched the applicable law with respect to the claims asserted in the Litigation and the potential defenses thereto, and drafted *three* robust complaints, and successfully opposed Defendants' motion to dismiss. Lead Counsel also retained an economic expert to opine on the issues of market efficiency and damages.

51. As set forth above, the Settling Parties also embarked on document and written discovery. By the time the Settling Parties agreed to settle the Litigation, they had met and conferred many times on numerous discovery-related topics, and were negotiating search terms and custodians from which relevant and responsive documents could be obtained. Lead Plaintiffs had filed a motion for class certification, and Lead Counsel had defended the deposition of its market efficiency expert, Dr. Bozanic, and prepared Lead Plaintiffs for their depositions.

Case No. 23-24580-CIV-ALTONAGA/REID

52.     Lead Counsel prepared a mediation submission that included detailed legal analysis of the claims and defenses in the Litigation.  Lead Counsel also reviewed and analyzed Defendants' mediation statement, and the Settling Parties vigorously addressed each other's arguments during the mediation.

53.     All of these efforts enabled Lead Plaintiffs and Lead Counsel to endorse the Settlement as fair, adequate, and reasonable.  Indeed, as a result of Lead Counsel's extensive legal and factual research and analysis, together with its economic expert and in-house consultants, Lead Plaintiffs and Lead Counsel had a thorough understanding of the strengths and weaknesses of the claims and defenses at the time the agreement to settle the Litigation was reached.[7]

**B.      The Settlement Eliminates the Risks and Any Potential Delay of Recovery for Lead Plaintiffs and the Class**

54.     Securities class actions are notoriously complex, and Lead Plaintiffs and Lead Counsel faced hurdles to establish a compensable claim.  Accordingly, absent the Settlement, there was a real possibility that the Class would be unable to obtain a meaningful recovery.

55.     In deciding to enter into the Settlement, Lead Plaintiffs and Lead Counsel considered, among other things, the substantial immediate cash benefit to Class Members under the terms of the Stipulation and the risks of further litigation, including the potential success of Defendants' arguments regarding domesticity at the class certification stage.

56.     In particular, absent the Settlement, there was a risk of the Court accepting Defendants' argument that the purchase of Teleperformance ADRs did not constitute a domestic transaction and thus were not susceptible to challenges under the Exchange Act.  While Lead Plaintiffs believe they could overcome this argument, they recognize the possibility that the Court could have accepted this argument at either class certification or summary judgment, which would have prevented class certification and/or significantly reduced recoverable damages for the Class.

57.     While Lead Counsel believes that all of the claims asserted against Defendants have merit, as discussed above, there were serious risks as to whether Lead Plaintiffs would ultimately

---

[7]     As of the date of this Declaration, no objections to the Settlement or the Plan of Allocation have been submitted by a Class Member.  Should any objections be timely filed between the date of this Declaration and the final approval hearing, Lead Counsel will address them in a supplemental submission to be filed with the Court on or before May 16, 2025.

4926-9538-9236.v1

prevail on the merits. And, even if completely successful, there were equally serious risks as to the amount of time it would take to collect on any judgment. Lead Plaintiffs further determined that, in the absence of the Settlement, there was a real risk that the Class could have received an amount significantly less than the Settlement Amount or nothing at all. Lead Plaintiffs and Lead Counsel considered and analyzed these significant risks to continued litigation in determining whether to settle the case. In light of such risks, both Lead Plaintiffs and Lead Counsel believe the $5.5 million Settlement to be in the best interests of the Class.

### C.       The Settlement Amount in the Context of Total Damages

58.       Lead Plaintiffs' damages expert determined that total recoverable damages were approximately $7.845 million for the Class Period. This figure reflects a 95% discount to damages incurred during the portion of the Class Period that the Court dismissed. Accordingly, the Settlement represents approximately 70% of estimated recoverable damages.

59.       In Lead Counsel's view, the Settlement is an exceptional result because it is a substantial, immediate recovery for the Class. If the Litigation had continued, loss causation and damages issues would have been costly and hotly contested. The process of ultimately proving damages requires retaining an expert to perform an economic analysis, exchanging expert reports and rebuttal reports, taking expert depositions, briefing *Daubert* motions and/or holding *Daubert* hearings, briefing summary judgment, and prevailing at trial. Continuing to litigate would not guarantee a larger recovery for the Class. It would only guarantee further delay in any recovery and the continued risk of a smaller or no recovery. For these reasons, securing such a substantial percentage of estimated damages at this stage of the proceedings (significantly more than is obtained in these types of cases) is a meaningful achievement for the Class.

60.       Based on its experience in securities class action litigation and in this case, and after weighing the substantial benefits of the Settlement against the numerous obstacles to recovery after continued litigation, Lead Counsel has determined that the Settlement is fair, reasonable, and in the best interest of the Class.

## V.       THE PROPOSED PLAN OF ALLOCATION

61.       The Net Settlement Fund will be distributed to Class Members who, in accordance with the terms of the Stipulation, are entitled to a distribution and who submit a valid and timely

Proof of Claim. The Plan of Allocation attempts to equitably distribute the Net Settlement Fund on a *pro rata* basis, and provides that a Class Member will be eligible to participate in the distribution of the Net Settlement Fund only if the Class Member has an overall net loss on his, her, or its transactions in Teleperformance ADRs during the Class Period.

62.     In determining the amount an Authorized Claimant may recover under the Plan of Allocation, Lead Counsel consulted with its damages expert Dr. Bozanic and his staff, as well as Lead Counsel's in-house damages consultants. Based on this analysis of causation and damages, Lead Counsel oversaw the development of the Plan of Allocation premised on the out-of-pocket measure of damages, *i.e.*, the difference between the price Class Members paid for their Teleperformance ADRs during the Class Period and the price that their Teleperformance ADRs common stock would have been had the allegedly misrepresented and omitted information been disclosed.

63.     To date, there have been no objections to the Plan of Allocation. Lead Counsel respectfully submits the Plan of Allocation is a fair and reasonable method to equitably distribute the Net Settlement Fund among Authorized Claimants, and should be approved.

## VI.     LEAD COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES IS REASONABLE AND SHOULD BE APPROVED

64.     Lead Counsel respectfully requests that the Court award attorneys' fees of 25% of the $5,500,000.00 Settlement Amount. Lead Counsel has prosecuted the Litigation on a wholly contingent basis and believes such a fee is reasonable and appropriate in light of the efficiency with which it litigated this matter, the resources Lead Counsel expended in prosecuting the case, the inherent risk of nonpayment from representing the Class on a contingent-fee basis, and the aggregate monetary benefit conferred on the Class in a challenging case. Lead Counsel further requests an award of $224,787.28 in litigation expenses. The legal authorities supporting the requested fees and expenses are set forth in the accompanying memorandum of law. *See* Lead Counsel's Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Expenses ("Fee Motion"), §§II-III, filed herewith.

### A.     Time, Labor, and Fee Percentage Requested

65.     Lead Counsel has devoted a significant amount of time and resources into research, investigation, and prosecution of this Litigation. Lead Counsel has substantial experience

- 17 -

representing investors in securities fraud cases, including in this District. The identification and background of Robbins Geller and its partners is attached as Exhibit E to the accompanying Declaration of Stephen R. Astley Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Declaration"), submitted herewith as Exhibit D.

66. Lead Counsel's representation of the Class required considerable efforts, as detailed above. *See* §§II-III.A. The substantial recovery for the Class is directly attributable to the diligence, determination, hard work, and reputation of Lead Counsel. Lead Plaintiffs' claims could have been dismissed on May 22, 2024 or August 28, 2024, when the Court issued its Orders on Defendants' motions to dismiss. Instead, Lead Plaintiffs' claims survived, as a result of Lead Counsel's vigorous and unwavering efforts. Lead Counsel continued to vigorously represent the Class' interests through discovery and settlement negotiations.

67. Lead Counsel zealously prosecuted this case on a contingency basis. As a result, despite working on this matter for over a year-and-a-half before Settlement, Lead Counsel has not received any payment for its services in prosecuting the Litigation, nor has it been paid its litigation expenses reasonably incurred. When Lead Counsel undertook to represent Lead Plaintiffs and the Class, it was with the expectation that it would have to devote a significant amount of time and effort in its prosecution of the case, and advance large sums on investigation, research, consultants, and mediation. It was also with the knowledge that Lead Counsel would spend many hours of hard work against capable defense lawyers with no assurance of ever obtaining any compensation for its efforts. In undertaking this responsibility, Lead Counsel made sure that sufficient attorney resources were dedicated to advancing Lead Plaintiffs' claims, and that sufficient funds were available to advance the expenses required to zealously pursue such complex litigation. Lead Counsel assumed a substantial risk that the case would yield no recovery and leave it uncompensated.

68. The fee request is based on a percentage of the recovery after discussion with and approval by Lead Plaintiffs. *See* Cassani Decl., ¶7; Smith Decl., ¶6. The fee request is similar to other requests approved by courts in this District, as set forth in Lead Counsel's accompanying memorandum of law. *See* Fee Motion, §II.A.

69.     Plaintiffs' Counsel expended more than 2,800 hours in the investigation, prosecution, and resolution of the Litigation.

70.     Further, courts have repeatedly held that it is in the public interest to have experienced and able counsel enforce the securities laws.  Vigorous private enforcement of the federal securities laws can only occur if private plaintiffs, particularly institutional investors like Lead Plaintiffs, can obtain some equivalence to the representation available to large corporate defendants.  Awarding fees that will adequately compensate private plaintiffs' counsel, taking into account the enormous risks inherent in prosecuting securities class actions on a contingent-fee basis, will ensure that this important public policy is carried out.

71.     In light of the uncertain nature and extent of the Litigation, the complexity of the factual and legal issues presented, and the substantial risks Lead Counsel overcame, Lead Counsel respectfully submits that its request for attorneys' fees of 25% of the Settlement Amount warrants the Court's approval.

**B.     The Risk, Magnitude, and Complexity of the Litigation**

72.     As detailed above, the Litigation asserts violations of Sections 10(b) and 20(a) of the Exchange Act, involving challenging issues of law and fact that presented considerable risks. Indeed, there are numerous decisions ruling in favor of Defendants at each stage of the Litigation.

73.     Defendants' motions to dismiss were similarly complex and raised challenging arguments requiring experience and considerable effort to prepare a thorough opposition.  Document discovery involved numerous meet and confers with counsel for Defendants and third parties, who sought to constrain the scope of discovery sought by Lead Plaintiffs.  Likewise, Lead Plaintiffs' motion for class certification required nuanced research and analysis and the retention of a qualified and experienced expert who submitted a declaration on market efficiency.  Lead Counsel also undertook significant effort to prepare for and defend the deposition of its expert and prepare each Lead Plaintiff for its deposition.

74.     As a result of these challenges, when Lead Counsel undertook this representation, there was no assurance that the Litigation would survive a motion to dismiss or prevail on other disputed issues.  Therefore, there was no assurance that Lead Counsel would recover any payment for its services.  In addition, the time spent by Lead Counsel on this case was at the expense of the

time that it could have devoted to other matters. Moreover, if the case had not settled, Lead Counsel was fully prepared to litigate this case through class certification, fact discovery, additional expert discovery, summary judgment, trial, and appeal.

### C.    Quality of the Representation

75.    Lead Counsel is among the most experienced and skilled securities practitioners in the country, as illustrated by its firm biography attached as Exhibit E to the Robbins Geller Declaration. The recovery obtained for the Class is the direct result of the significant efforts of highly skilled attorneys with substantial experience in prosecuting complex securities class actions.

76.    The quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work. Defendants were represented by experienced lawyers from Latham & Watkins LLP. Defense counsel has a reputation for vigorous advocacy in defending complex securities cases such as this one. The ability of Lead Counsel to obtain a favorable settlement for the Class in the face of such opposition further supports the quality of Lead Counsel's representation.

## VII.    THE REQUESTED EXPENSES ARE APPROPRIATE

77.    Lead Counsel seeks an award of $224,787.28 in expenses in connection with the prosecution of the Litigation. These expenses are reflected in the books and records maintained by Robbins Geller. The expenses and charges are summarized by category in Exhibit B to the Robbins Geller Declaration.

78.    Lead Counsel submits that Plaintiffs' Counsel's expenses are reasonable and were necessary for the successful prosecution of the Litigation. Plaintiffs' Counsel's expenses reflect routine and typical expenditures incurred in the course of the litigation, such as the costs of investigation, legal research, document duplication, consultant fees, mediation fees, and expedited mail delivery. Plaintiffs' Counsel were aware that they might not recover any of these expenses unless and until the Litigation was successfully resolved. Accordingly, Plaintiffs' Counsel took steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of Lead Plaintiffs' claims.

## VIII.    CONCLUSION

79.    Given the significant cash recovery for the Class and the uncertainty that Lead Plaintiffs would have ultimately prevailed, Lead Counsel respectfully submits that the Settlement and Plan of Allocation should be approved as fair, reasonable, and adequate. In addition, as a result

4926-9538-9236.v1

- 21 -

Case No. 23-24580-CIV-ALTONAGA/REID

of the significant recovery, Lead Counsel respectfully submits that the Court should award attorneys' fees in the amount of 25% of the Settlement Amount, plus $224,787.28 in expenses, plus the interest earned thereon at the same rate and for the same period as that earned on the Settlement Fund until paid.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Boca Raton, Florida, this 25th day of April, 2025.


_s/ Stephen R. Astley_
STEPHEN R. ASTLEY

4926-9538-9236.v1