# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 23-24580-CIV-ALTONAGA/REID

| | |
|---|---|
| CITY OF WARREN GENERAL EMPLOYEES' RETIREMENT SYSTEM, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> TELEPERFORMANCE SE, et al., <br><br> Defendants. <br>_____ | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**DECLARATION OF JASON RABE REGARDING: (A) MAILING OF NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION AND PROOF OF CLAIM AND RELEASE FORM; (B) PUBLICATION OF SUMMARY NOTICE; (C) ESTABLISHMENT OF CALL CENTER SERVICES AND WEBSITE; (D) CLAIMS RECEIVED; AND (E) REQUESTS FOR EXCLUSION RECEIVED TO DATE**

I, JASON RABE, declare as follows:

1. I am a Program Manager with Rust Consulting, Inc. ("Rust"). Pursuant to the Court's January 14, 2025 Order (ECF 93) (the "Preliminary Approval Order"), Rust was appointed as the Claims Administrator to supervise and administer the notice procedures as well as the processing of claims in connection with the Settlement in the above-captioned action.[1]

2. I am over 21 years of age and am not a party to this action. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

**MAILING OF THE NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF**
**CLASS ACTION AND PROOF OF CLAIM AND RELEASE FORM**

3. The Court's Preliminary Approval Order required Rust to, among other things, mail the Notice and Proof of Claim (together, the "Notice Packet") to potential Class Members who can be identified with reasonable effort.

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Stipulation of Settlement, dated January 10, 2025 (ECF 90-2).

1

4.     Rust maintains a proprietary database (the "Broker Database") with names and addresses of the largest and most common banks, brokers, and other nominees. The Broker Database contains 1,617 names and addresses.

5.     Rust entered the data referenced above into a segregated database (the "Rust Mailing Database") to be used for mailing the Notice Packet to potential Class Members. On February 4, 2025, pursuant to the Preliminary Approval Order, Rust caused the Notice Packet to be mailed to the 1,617 brokers and other nominees referenced to in ¶4 above. A copy of the Notice Packet is attached hereto as **Exhibit A**.

6.     The Notice requested that those who purchased or acquired Teleperformance ADRs during the Class Period for the beneficial interest of an individual or organization, other than themselves, shall within ten (10) calendar days after receipt of the Notice Packet either: (a) provide Rust with the names and last known addresses of each person or organization for whom or which purchased or acquired such securities during such time period; or (b) request additional copies of the Notice Packet, which will be provided free of charge, and within ten (10) days mail the Notice Packet directly to the beneficial owners of the securities.

7.     As of the date of this Declaration, Rust has received an additional 17,668 names and addresses of potential Class Members from individuals or brokerage firms, banks, institutions, and other nominees. Rust has also received requests from brokers and other nominee holders for 12,755 Notice Packets, which the brokers and nominees are required to send to their customers. Rust has sent 28,383 Notice Packets as a result and 2,040 are in the process of being sent.

8.     Rust leases and maintains a Post Office Box (P.O. Box 2599, Faribault, MN 55021-9599) for the receipt of all undeliverable mail and written communications necessary to implement the Settlement.

9.     As of the date of this Declaration, 1,035 Notice Packets were returned by the United States Postal Service ("USPS") to Rust as undeliverable as addressed. Of these, Rust was able to locate 78 new addresses, through an information supplier to which Rust subscribes. Notice Packets were promptly re-mailed to these potential Class Members at the updated addresses.

10.     As of the date of this Declaration, the USPS returned 91 Notice Packets with forwarding addresses. Notice Packets were re-mailed to 88 of these potential Class Members at the updated addresses.  Rust is in the process of mailing Notice Packets to the remaining 3 potential Class Members with updated addresses.

2

11. As of the date of this Declaration, a total of 30,166 Notice Packets have been mailed to potential Class Members and their nominees.

## PUBLICATION OF THE SUMMARY NOTICE

12. Pursuant to the Preliminary Approval Order, Rust caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over *PR Newswire* on February 11, 2025. Copies of proof of the publication/transmission of the Summary Notice are attached hereto as **Exhibit B**.

## ESTABLISHMENT OF CALL CENTER SERVICES

13. On or about February 4, 2025, Rust established a case-specific toll-free telephone number, 1-888-516-0722, for Class Members to call and obtain information about the Settlement.  The toll-free telephone number provides callers with an Interactive Voice Response system and live operators. An automated attendant answers all calls initially and presents callers with a series of choices to respond to basic questions. If callers need further help, they have the option to be transferred to a live operator during business hours.

14. From February 4, 2025 through the date of this Declaration, Rust has received 36 telephone calls.

## ESTABLISHMENT OF SETTLEMENT WEBSITE

15. On or about February 4, 2025, Rust established a dedicated website for the Settlement, www.TeleperformanceSecuritiesSettlement.com ("Settlement Website"). The Settlement Website includes general information regarding the action and the proposed Settlement, including the exclusion, objection, and claim filing deadlines, and details about the Court's Settlement Hearing. Copies of the Notice, Claim Form, Stipulation of Settlement, and Preliminary Approval Order are posted on the Settlement Website and are available for downloading. In addition, the Settlement Website provides Class Members with the ability to submit their Claim Forms online. The website is accessible 24 hours a day, 7 days a week.

16. Rust also established a case-dedicated e-mail address, info@TeleperformanceSecuritiesSettlement.com, to allow persons to email the Claims Administrator with questions or inquiries. The e-mail address was activated on February 4, 2025.

3

**CLAIM FORMS RECEIVED**

17.     Pursuant to the Preliminary Approval Order, the Notice informed potential Class Members that all Claim Forms must be postmarked or submitted online no later than May 11, 2025. As of the date of this Declaration, Rust has received 1,128 Claim Forms.

**REQUESTS FOR EXCLUSION AND OBJECTIONS**

18.     The Notice informed potential Class Members that requests for exclusion from the Class are to be sent to Rust, such that they are postmarked or received no later than May 5, 2025. The Notice also sets forth the information that must be included in each request for exclusion. As of the date of this Declaration, Rust has received zero requests for exclusion.

19.     Pursuant to the Court-approved Notice, all objections to the proposed Settlement must be sent to the Court, Lead Counsel, and Defendants' Counsel such that they are received no later than May 5, 2025. While Rust was not listed to be the recipient of objections, as of the date of this Declaration, Rust has not received any objections.

I declare under penalty of perjury that the foregoing facts are true and correct to the best of my knowledge.

Executed this 24th day of Day of April, 2025, at Minneapolis, Minnesota.

_____
Jason Rabe

4

# EXHIBIT A

TELEPERFORMANCE SECURITIES SETTLEMENT
CLAIMS ADMINISTRATOR
RUST CONSULTING, INC. - 8868
P.O. BOX 2599
FARIBAULT, MN 55021-9599

## IMPORTANT LEGAL MATERIALS

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖  - UAA - <<SequenceNo>>
\* B A R C O D E 3 9 \*

**Claimant ID #:** <<barcode39>>

<<Name1>>
<<Name2>>
<<Name3>>
<<Name4>>
<<Address1>>
<<Address2>>
<<Address3>>
<<City>> <<State>> <<Zip10>>
<<CountryName>>

# PROOF OF CLAIM AND RELEASE FORM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 23-24580-CIV-ALTONAGA/REID

CITY OF WARREN GENERAL EMPLOYEES' RETIREMENT SYSTEM,
on Behalf of Itself and All Others Similarly Situated,

Plaintiff,

vs.

TELEPERFORMANCE SE, et al.,

Defendants.

PROOF OF CLAIM AND RELEASE

**I.     GENERAL INSTRUCTIONS**

1.     To recover as a Member of the Class[1] based on your claims in the action entitled C*ity of Warren General Employees' Retirement System v. Teleperformance SE, et al*., No. 23-24580-CIV-ALTONAGA/REID (the "Litigation"), you must complete and, on page 4 hereof, sign this Proof of Claim and Release form ("Proof of Claim"). If you fail to submit a timely and properly addressed (as set forth in paragraph 3 below) Proof of Claim, your claim may be rejected and you may not receive any recovery from the Net Settlement Fund created in connection with the proposed Settlement.

2.     Submission of this Proof of Claim, however, does not assure that you will share in the proceeds of the Settlement of the Litigation.

3.     **YOU MUST MAIL OR SUBMIT ONLINE YOUR COMPLETED AND SIGNED PROOF OF CLAIM, ACCOMPANIED BY COPIES OF THE DOCUMENTS REQUESTED HEREIN, NO LATER THAN MAY 11, 2025, ADDRESSED AS FOLLOWS:**

*Teleperformance Securities Settlement*
Claims Administrator
c/o Rust Consulting, Inc. - 8868
P.O. Box 2599
Faribault, MN 55021-9599

Online Submissions:  www.TeleperformanceSecuritiesSettlement.com

4.     If you are NOT a Member of the Class, as defined in the Notice of Pendency and Proposed Settlement of Class Action ("Notice"), DO NOT submit a Proof of Claim.

5.     If you do not timely request exclusion and are a Class Member, you will be bound by the terms of any judgment entered in the Litigation, including the releases provided therein, WHETHER OR NOT YOU SUBMIT A PROOF OF CLAIM.

---

[1]     All capitalized terms that are not otherwise defined herein shall have the meanings provided in the Stipulation of Settlement dated January 10, 2025 (the "Stipulation"), which is available on the website www.TeleperformanceSecuritiesSettlement.com.

*BARCODE39* - <<SequenceNo>>

## II.        CLAIMANT IDENTIFICATION

If you purchased or acquired Teleperformance SE ("Teleperformance") American Depositary Receipts ("ADRs") and held the certificate(s) in your name, you are the beneficial purchaser or acquirer as well as the record purchaser or acquirer. If, however, you purchased or acquired Teleperformance ADRs and the certificate(s) were registered in the name of a third party, such as a nominee or brokerage firm, you are the beneficial purchaser or acquirer and the third party is the record purchaser or acquirer.

Use Part I of this form entitled "Claimant Identification" to identify each purchaser or acquirer of record ("nominee"), if different from the beneficial purchaser or acquirer of the Teleperformance ADRs that forms the basis of this claim. THIS CLAIM MUST BE FILED BY THE ACTUAL BENEFICIAL PURCHASER(S) OR ACQUIRER(S) OR THE LEGAL REPRESENTATIVE OF SUCH PURCHASER(S) OR ACQUIRER(S) OF THE TELEPERFORMANCE ADRS UPON WHICH THIS CLAIM IS BASED.

All joint purchasers or acquirers must sign this claim.  Executors, administrators, guardians, conservators, and trustees or others acting in a representative capacity on behalf of a Class Member must complete and sign this claim on behalf of persons represented by them, and submit evidence of their current authority to act on behalf of that Class Member, including that your titles or capacities must be stated. The last four digits of the Social Security (or taxpayer identification) number and telephone number of the beneficial owner may be used in verifying the claim. Failure to provide the foregoing information could delay verification of your claim or result in rejection of the claim.

## III.        CLAIM FORM

Use Part II of this form entitled "Schedule of Transactions in Teleperformance ADRs" to supply all required details of your transaction(s) in Teleperformance ADRs. If you need more space or additional schedules, attach separate sheets giving all of the required information in substantially the same form. Sign and print or type your name on each additional sheet.

On the schedules, provide all of the requested information with respect to *all* of your purchases or acquisitions and *all* of your sales of Teleperformance ADRs that took place during the period between February 20, 2020 and February 7, 2023, inclusive, whether such transactions resulted in a profit or a loss. You must also provide **all** of the requested information with respect to *all* of the Teleperformance ADRs you held at the close of trading on February 19, 2020, November 9, 2022, and February 7, 2023.  Failure to report all such transactions may result in the rejection of your claim.

List each transaction separately and in chronological order, by trade date, beginning with the earliest. You must accurately provide the month, day, and year of each transaction you list.

The date of covering a "short sale" is deemed to be the date of purchase of Teleperformance ADRs. The date of a "short sale" is deemed to be the date of sale of Teleperformance ADRs.

For each transaction, copies of broker confirmations or other documentation of your transactions in Teleperformance ADRs should be attached to your claim.  Failure to provide this documentation could delay verification of your claim or result in rejection of your claim.

NOTICE REGARDING ELECTRONIC FILES: Certain claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files. This is different from the online submission process that is available at www.TeleperformanceSecuritiesSettlement.com. All claimants *must* submit a manually signed paper Proof of Claim whether or not they also submit electronic copies. If you have a large number of transactions and wish to file your claim electronically, you must contact the Claims Administrator at info@TeleperformanceSecuritiesSettlement.com to obtain the required file layout.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

City of Warren General Employees' Retirement System v. Teleperformance SE, et al., No. 23-24580-CIV-ALTONAGA/REID

PROOF OF CLAIM AND RELEASE

**Must Be Postmarked or Received No Later Than:**

**May 11, 2025**

- <<SequenceNo>>

| FOR OFFICIAL USE ONLY |
|---|
| 01 |

Page 1 of 4

Please Type or Print

**PART I:   CLAIMANT IDENTIFICATION**

Beneficial Owner's Name (First, Middle, Last): _____

Street Address: _____

City: _____   State or Province: _____   Zip: ___ ___ - ___ ___ ___ ___

Country: _____

Social Security Number (Last 4 digits) ___ ___ ___ ___

or Taxpayer Identification Number: _____   Individual ☐   Corporation/Other ☐

Telephone Number (Work): ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___   Telephone Number (Home): ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___

Email Address: _____

Record Owner's Name (if different from beneficial owner listed above): _____





* B A R C O D E 3 9 *   - <<SequenceNo>>

**PART II:  SCHEDULE OF TRANSACTIONS IN TELEPERFORMANCE ADRs**

A.　　Number of Teleperformance ADRs held at the close of trading on February 19, 2020: _____

B.　　Purchases or acquisitions of Teleperformance ADRs (February 20, 2020 – February 7, 2023, inclusive):

| Trade Date Month Day Year | Number of ADRs Purchased or Acquired | Purchase Price | Total Purchase or Acquisition Price | If any purchase listed covered a "short sale," please mark Yes |
|---|---|---|---|---|
| 1._____ | 1._____ | 1._____ | 1._____ | 1._____ |
| 2._____ | 2._____ | 2._____ | 2._____ | 2._____ |
| 3._____ | 3._____ | 3._____ | 3._____ | 3._____ |
| 4._____ | 4._____ | 4._____ | 4._____ | 4._____ |
| 5._____ | 5._____ | 5._____ | 5._____ | 5._____ |

C.　　Sales of Teleperformance ADRs (February 20, 2020 – February 7, 2023, inclusive):

| Trade Date Month Day Year | Number of ADRs Sold | Sale Price | Total Sales Price | If any sale listed is a "short sale" please mark Yes |
|---|---|---|---|---|
| 1._____ | 1._____ | 1._____ | 1._____ | 1._____ |
| 2._____ | 2._____ | 2._____ | 2._____ | 2._____ |
| 3._____ | 3._____ | 3._____ | 3._____ | 3._____ |
| 4._____ | 4._____ | 4._____ | 4._____ | 4._____ |
| 5._____ | 5._____ | 5._____ | 5._____ | 5._____ |

D.　　Number of Teleperformance ADRs held at the close of trading on November 9, 2022: _____

E.　　Number of Teleperformance ADRs held at the close of trading on February 7, 2023: _____

If you require additional space, attach extra schedules in the same format as above.  Sign and print your name on each additional page.

**YOU MUST READ AND SIGN THE RELEASE ON PAGE 4. FAILURE TO SIGN THE RELEASE MAY RESULT IN A DELAY IN PROCESSING OR THE REJECTION OF YOUR CLAIM.**

Page 2 of 4

**IV.      SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS**

On behalf of myself (ourselves) and each of my (our) heirs, agents, executors, trustees, administrators, predecessors, successors and assigns, I (we) submit this Proof of Claim under the terms of the Stipulation of Settlement described in the Notice. I (We) also submit to the jurisdiction of the United States District Court for the Southern District of Florida with respect to my (our) claim as a Class Member and for purposes of enforcing the release set forth herein. I (We) further acknowledge that I am (we are) bound by and subject to the terms of any judgment that may be entered in the Litigation.  I (We) agree to furnish additional information to the Claims Administrator to support this claim (including transactions in other Teleperformance securities) if requested to do so. I (We) have not submitted any other claim covering the same purchases, acquisitions, or sales of Teleperformance ADRs during the Class Period and know of no other person having done so on my (our) behalf.

**V.       RELEASE**

1.       Upon the Effective Date of the Settlement, I (we) acknowledge that I (we) have, fully, finally, and forever waived, released, relinquished, discharged, and dismissed each and every one of the Released Claims (defined in paragraph 2 below) against each and every one of the Released Defendant Parties (defined below) and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any and all of the Released Claims against any and all of the Released Defendant Parties. "Released Defendant Party" or "Released Defendant Parties" or "Released Persons" mean Defendants, Defendants' Counsel, and their Related Parties. "Related Parties" means each Defendant's respective former, present or future parents, subsidiaries, divisions, controlling persons, associates, related entities and affiliates and each and all of their respective present and former employees, members, partners, principals, officers, directors, controlling shareholders, agents, attorneys, advisors (including financial or investment advisors), accountants, auditors, consultants, underwriters, investment bankers, commercial bankers, entities providing fairness opinions, general or limited partners or partnerships, limited liability companies, members, joint ventures, and insurers and reinsurers of each of them; and the predecessors, successors, estates, immediate family members, spouses, heirs, executors, trusts, trustees, administrators, agents, legal or personal representatives, assigns, and assignees of each of them, in their capacity as such.

2.       "Released Claims" means any and all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common, or foreign law, that relate to the purchase or other acquisition of Teleperformance ADRs during the Class Period, and that the Plaintiffs or any Member of the Class: (i) asserted in the Second Amended Complaint; or (ii) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations, or omissions involved, set forth, or referred to in the Second Amended Complaint. "Released Claims" does not include claims to enforce the Settlement, any derivative or ERISA claims, or the claims of any person or entity that submits a request for exclusion that is accepted by the Court.  "Released Claims" includes "Unknown Claims" as defined below.

3.       "Releasing Plaintiff Party" or "Releasing Plaintiff Parties" mean each and every Class Member, Plaintiffs, Lead Counsel, Plaintiffs' Counsel, and each and all of their respective past or present trustees, executors, administrators, officers, directors, partners, members, employees, contractors, auditors, principals, agents, attorneys, predecessors, successors, assigns, representatives, affiliates, joint venturers, shareholders, underwriters, insurers, personal or legal representatives, estates, financial advisors or consultants, banks or investment bankers, parents, subsidiaries, general or limited partners or partnerships, and limited liability companies; and the spouses, members of the immediate families, representatives, and heirs of any Releasing Plaintiff Party (who is an individual), as well as any trust of which any Releasing Plaintiff Party is the settlor or which is for the benefit of any of their immediate family members. Releasing Plaintiff Parties do not include any Person who would otherwise be a Member of the Class but who validly and timely requests exclusion from the Class.

4.       "Unknown Claims" means (a) any and all Released Claims that any of the Releasing Plaintiff Parties do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Parties, which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Defendant Parties, or might have affected his, her, or its decision(s) with respect to the Settlement, including, but not limited to, whether or not to object to this Settlement or seek exclusion from the Class; and (b) any and all Released Defendants' Claims that any of the Released Defendant Parties do not know or suspect to exist in his, her, or its favor at the time of the release of Plaintiffs, the Class, and Plaintiffs' Counsel, which, if known by him, her, or it, might have affected his, her, or its settlement and release of Plaintiffs, the Class, and Plaintiffs' Counsel. With respect to (a) any and all Released Claims against the Released Defendant Parties; and (b) any and all Released Defendants' Claims against Plaintiffs, the Class, and Plaintiffs' Counsel, the Settling Parties stipulate and agree that, upon the Effective Date, the Settling Parties shall expressly waive, and each Releasing Plaintiff Party and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have expressly waived, the provisions, rights, and benefits of California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

 
The Settling Parties shall expressly waive, and each Releasing Plaintiff Party and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542. The Settling Parties acknowledge that they may hereafter discover facts, legal theories, or authorities in addition to or different from those which they now know or believe to be true with respect to the Released Claims, but the Settling Parties shall be deemed to have, and by operation and order of final judgment shall have, fully, finally, and forever settled and released all Released Claims, as the case may be known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, upon any theory of law or equity now existing or coming into existence in the future, without regard to the subsequent discovery or existence of different or additional facts, legal theories, or authorities. The Settling Parties acknowledge, and the Releasing Plaintiff Parties and Released Defendant Parties shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is an essential element of the Settlement of which this release is a part.

5.  I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

6.  I (We) hereby warrant and represent that I (we) have included the information requested about all of my (our) transactions in Teleperformance ADRs that are the subject of this claim, which occurred during the Class Period, as well as the opening and closing positions in such ADRs held by me (us) on the dates requested in this Proof of Claim.

I declare under penalty of perjury under the laws of the United States of America that all of the foregoing information supplied on this Proof of Claim by the undersigned is true and correct.

Executed this _____ day of _____ , in _____ , _____ .
                                            (Month/Year)                    (City)              (State/Country)

_____          _____
(Sign your name here)                       (Joint Owner - Sign your name here)

_____          _____
(Type or print your name here)              (Joint Owner - Type or print your name here)

_____
(Capacity of person(s) signing,
e.g., Beneficial Purchaser or Acquirer, Executor
or Administrator)

**ACCURATE CLAIMS PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME.**
**THANK YOU FOR YOUR PATIENCE.**

Reminder Checklist:

1.  Please sign the above release and acknowledgment.
2.  If this claim is being made on behalf of Joint Claimants, then both must sign.
3.  Remember to attach copies of supporting documentation, if available.
4.  **Do not send** originals of certificates.
5.  Keep a copy of your claim form and all supporting documentation for your records.
6.  If you desire an acknowledgment of receipt of your claim form, please send it Certified Mail, Return Receipt Requested.
7.  If you move, please send your new address to the address below.
8.  **Do not use red pen or highlighter** on the Proof of Claim or supporting documentation.

**THIS PROOF OF CLAIM MUST BE SUBMITTED ONLINE OR MAILED NO LATER THAN MAY 11, 2025 ADDRESSED AS FOLLOWS:**

*Teleperformance Securities Settlement*
Claims Administrator
c/o Rust Consulting, Inc. - 8868
P.O. Box 2599
Faribault, MN 55021-9599
www.TeleperformanceSecuritiesSettlement.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 23-24580-CIV-ALTONAGA/REID

CITY OF WARREN GENERAL EMPLOYEES'
RETIREMENT SYSTEM, on Behalf of Itself and All
Others Similarly Situated,

Plaintiff,

vs.

TELEPERFORMANCE SE, et al.,

Defendants.

## NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION

**TO:    ALL PERSONS WHO PURCHASED OR OTHERWISE ACQUIRED TELEPERFORMANCE SE ("TELEPERFORMANCE" OR THE "COMPANY") AMERICAN DEPOSITARY RECEIPTS ("ADRs") BETWEEN FEBRUARY 20, 2020 AND NOVEMBER 9, 2022, INCLUSIVE**

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS MAY BE AFFECTED BY PROCEEDINGS IN THIS LITIGATION.  PLEASE NOTE THAT IF YOU ARE A CLASS MEMBER, YOU MAY BE ENTITLED TO SHARE IN THE PROCEEDS OF THE SETTLEMENT DESCRIBED IN THIS NOTICE.  TO CLAIM YOUR SHARE OF THE SETTLEMENT PROCEEDS, YOU MUST SUBMIT A VALID PROOF OF CLAIM AND RELEASE FORM ("PROOF OF CLAIM") **POSTMARKED OR SUBMITTED ONLINE ON OR BEFORE MAY 11, 2025**.

This Notice of Pendency and Proposed Settlement of Class Action ("Notice")[1] has been sent to you pursuant to Rule 23 of the Federal Rules of Civil Procedure and an order of the United States District Court for the Southern District of Florida (the "Court"). The purpose of this Notice is to inform you of the pendency of this class action (the "Litigation") between City of Warren General Employees' Retirement System and City of Westland Police and Fire Retirement System ("Plaintiffs") and Teleperformance, Daniel Julien, Akash Pugalia, and Olivier Rigaudy ("Defendants") and the proposed $5,500,000 settlement reached therein (the "Settlement") and of the hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement as well as Plaintiffs' Counsel's application for fees and expenses. This Notice describes what steps you may take in relation to the Settlement and this class action.

This Notice is not intended to be, and should not be construed as, an expression of any opinion by the Court with respect to the truth of the allegations in the Litigation as to any of the Defendants or the merits of the claims or defenses asserted by or against the Defendants. This Notice is solely to advise you of the proposed Settlement of the Litigation and your rights in connection therewith.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A PROOF OF CLAIM** | The only way to be eligible to receive a payment from the Settlement. **Proofs of Claim must be postmarked or submitted online on or before May 11, 2025.** |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that *potentially* allows you to ever be part of any other lawsuit against the Defendants or any other Released Persons about the legal claims being resolved by this Settlement. Should you elect to exclude yourself from the Class you should understand that Defendants and the other Released Defendant Parties will have the right to assert any and all defenses they may have to any claims that you may seek to assert, including, without limitation, the defense that any such claims are untimely under applicable statutes of limitations and statutes of repose. **Requests for exclusions must be postmarked or received on or before May 5, 2025.** |
| **OBJECT** | Write to the Court about why you do not like the Settlement, the Plan of Allocation, and/or the request for attorneys' fees and expenses. You will still be a Member of the Class. **Objections must be *received* by the Court and counsel on or before May 5, 2025.  If you submit a written objection, you may (but do not have to) attend the hearing.** |

---

[1]  All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings provided in the Stipulation of Settlement dated January 10, 2025 (the "Stipulation"), which is available on the website www.TeleperformanceSecuritiesSettlement.com.

| GO TO THE HEARING ON MAY 27, 2025 | Ask to speak in Court about the fairness of the Settlement. **Requests to speak must be *received* by the Court and counsel on or before May 5, 2025.** |
|---|---|
| DO NOTHING | Receive no payment. You will, however, still be a Member of the Class, which means that you give up your right to ever be part of any other lawsuit against the Defendants or any other Released Defendant Parties about the legal claims being resolved by this Settlement and you will be bound by any judgments or orders entered by the Court in the Litigation. |

## SUMMARY OF THIS NOTICE

**Statement of Class Recovery**

Pursuant to the Settlement described herein, a $5.5 million settlement has been established. Based on Plaintiffs' estimate of the number of Teleperformance ADRs eligible to recover under the Settlement, the average distribution per Teleperformance ADR under the Plan of Allocation is approximately $4.04 before deduction of any taxes on the income earned on the Settlement Amount thereof, notice and administration costs, and the attorneys' fees and expenses as determined by the Court. **Class Members should note, however, that these are only estimates.** A Class Member's actual recovery will be a proportion of the Net Settlement Fund determined by that claimant's claims as compared to the total claims of all Class Members who submit acceptable Proofs of Claim. An individual Class Member may receive more or less than this estimated average amount. *See* Plan of Allocation set forth and discussed at pages 8-11 below for more information on the calculation of your claim.

**Statement of Potential Outcome of Case**

The Settling Parties disagree on both liability and damages and do not agree on the amount of damages that would be recoverable if the Class prevailed on each claim alleged. Defendants deny that they are liable to the Class and deny that the Class has suffered any damages. The issues on which the parties disagree are many, but include: (1) whether Defendants engaged in conduct that would give rise to any liability to the Class under the federal securities laws; (2) whether Defendants have valid defenses to any such claims of liability; (3) the appropriate economic model for determining the amount by which the price of Teleperformance ADRs was allegedly artificially inflated (if at all) during the Class Period; (4) the amount, if any, by which the price of Teleperformance ADRs was allegedly artificially inflated (if at all) during the Class Period; (5) the effect of various market forces on the price of Teleperformance ADRs at various times during the Class Period; (6) the extent to which external factors influenced the price of Teleperformance ADRs at various times during the Class Period; (7) the extent to which the various matters that Plaintiffs alleged were materially false or misleading influenced (if at all) the price of Teleperformance ADRs at various times during the Class Period; and (8) the extent to which the various allegedly adverse material facts that Plaintiffs alleged were omitted influenced (if at all) the price of Teleperformance ADRs at various times during the Class Period.

**Statement of Attorneys' Fees and Expenses Sought**

Since the Litigation's inception, Lead Counsel has expended considerable time and effort in the prosecution of this Litigation on a wholly contingent basis and has advanced the expenses of the Litigation in the expectation that if it was successful in obtaining a recovery for the Class, it would be paid from such recovery. Lead Counsel will apply to the Court for an award of attorneys' fees not to exceed one-third of the Settlement Amount, plus expenses in an amount not to exceed $200,000, plus interest earned on both amounts at the same rate as earned by the Settlement Fund. If the amounts requested are approved by the Court, the average cost per Teleperformance ADR will be approximately $1.49. In addition, Plaintiffs may seek awards from the Settlement Fund pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class, in an amount not to exceed $10,000 each.

**Further Information**

For further information regarding the Litigation, this Notice, or to review the Stipulation of Settlement, please contact the Claims Administrator toll-free at 1-888-516-0722, or visit the website www.TeleperformanceSecuritiesSettlement.com.

You may also contact a representative of counsel for the Class: Greg Wood, Shareholder Relations, Robbins Geller Rudman & Dowd LLP, 655 West Broadway, Suite 1900, San Diego, CA 92101, 1-800-449-4900, settlementinfo@rgrdlaw.com.

**Please Do Not Call the Court or Defendants with Questions About the Settlement.**

**Reasons for the Settlement**

Plaintiffs' principal reason for entering into the Settlement is the benefit to the Class now, without further risk or the delays inherent in continued litigation. The cash benefit under the Settlement must be considered against the significant risk that a smaller recovery – or, indeed, no recovery at all – might be achieved after contested motions, trial, and likely appeals, a process

that could last several years into the future. For the Defendants, who have denied and continue to deny all allegations of liability, fault, or wrongdoing whatsoever, the principal reason for entering into the Settlement is to eliminate the uncertainty, risk, costs, and burdens inherent in any litigation, especially in complex cases such as this Litigation. Defendants have concluded that further conduct of this Litigation could be protracted and distracting.

## BASIC INFORMATION

| 1. | Why did I get this Notice package? |
|---|---|

This Notice was sent to you pursuant to an Order of a U.S. District Court because you or someone in your family or an investment account for which you serve as custodian may have purchased or otherwise acquired Teleperformance ADRs during the period between February 20, 2020 and November 9, 2022, inclusive (the "Class Period").

This Notice explains the class action lawsuit, the Settlement, Class Members' legal rights in connection with the Settlement, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the Litigation is the United States District Court for the Southern District of Florida, and the case is known as *City of Warren General Employees' Retirement System v. Teleperformance SE, et al.*, No. 23-24580-CIV-ALTONAGA/REID. The case has been assigned to the Honorable Cecilia M. Altonaga. The entities representing the Class are the "Plaintiffs," and the Company and individuals the Plaintiffs sued and who have now settled are called the Defendants.

| 2. | What is this lawsuit about? |
|---|---|

The initial complaint was filed on April 19, 2023 in the United States District Court for the District of Idaho for the period between July 29, 2020 and November 9, 2022, inclusive. On July 17, 2023, Judge B. Lynn Winmill appointed City of Warren General Employees' Retirement System and City of Westland Police and Fire Retirement System as Lead Plaintiffs, and approved their selection of Robbins Geller Rudman & Dowd LLP as Lead Counsel. Defendants moved to transfer to the United States District Court for the Southern District of Florida on August 15, 2023, and Judge Winmill granted that motion on December 4, 2023. On December 29, 2023, Plaintiffs filed an Amended Class Action Complaint for Violations of the Federal Securities Laws; Defendants moved to dismiss on January 12, 2024. The Court granted that motion in part on May 22, 2024, but gave leave to amend.

On June 3, 2024, Plaintiffs filed the operative Second Amended Class Action Complaint for Violations of the Federal Securities Laws ("Second Amended Complaint") for the period between February 20, 2020 and November 9, 2022, inclusive (the "Class Period"), alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") based on allegations that Defendants made materially false and misleading statements and omissions regarding the working conditions of Teleperformance content moderators. The Second Amended Complaint alleged that the truth regarding the working conditions of Teleperformance content moderators was revealed through reports published in *Forbes* and *Time*, causing losses to investors following the publication of those articles on August 4, 2022 and November 9, 2022. On June 17, 2024, Defendants moved to dismiss the Second Amended Complaint. The Court denied Defendants' motion but found that loss causation was not sufficiently alleged as to one of the two alleged corrective disclosures.

Thereafter, the Court entered a case schedule setting all deadlines through the trial, which was set to begin on September 8, 2025. The parties began pursuing discovery, including by exchanging Requests for Production, negotiating a Stipulated Protocol Governing Discovery of Hard Copy and Electronically Stored Information and an Agreed Confidentiality and Rule 502(d) Order (which the Court entered on November 27, 2024), and exchanging expert reports relevant to class certification. Plaintiffs also produced documents and Defendants deposed Plaintiffs' market efficiency expert, Dr. Zahn Bozanic. Plaintiffs then moved for class certification on December 5, 2024, and that motion is currently pending.[2]

In September 2024, the Settling Parties engaged the services of David M. Murphy of Phillips ADR, who has extensive experience mediating complex class action litigations such as this Litigation. The Settling Parties scheduled mediation to occur on November 7, 2024, and exchanged mediation briefs setting forth their respective arguments concerning liability and damages. Early on the morning of the scheduled mediation, Mr. Murphy informed counsel for the Settling Parties that he was ill and would be unable to attend. Counsel for the Settling Parties met in person without Mr. Murphy present and attempted to resolve the claims, but were unable to do so. The Settling Parties and Mr. Murphy then rescheduled the mediation for December 2, 2024. The rescheduled mediation took place as scheduled, but did not result in a settlement.

In the week following the mediation, the Settling Parties continued to communicate with Mr. Murphy regarding a potential resolution. On Saturday, December 7, 2024, Mr. Murphy issued a mediator's recommendation, which the Settling Parties accepted on Monday, December 9, 2024, agreeing to settle this Litigation in the amount of Five Million Five Hundred Thousand dollars ($5,500,000), subject to approval by the Court.

---

2   Because the Court's May 22, 2024 ruling on the motion to dismiss found loss causation insufficiently alleged as to the November 9, 2022 *Time* article, the Class Period was narrowed, for purposes of that motion, to the period February 20, 2020 to August 3, 2022.

| 3. | Why is there a settlement? |
|---|---|

The Court has not decided in favor of Defendants or of the Plaintiffs. Instead, both sides agreed to the Settlement to avoid the distraction, costs, and risks of further litigation, and Plaintiffs agreed to the Settlement in order to ensure that Class Members will receive compensation.

## WHO IS IN THE SETTLEMENT

| 4. | How do I know if I am a Member of the Class? |
|---|---|

The Court directed that everyone who fits this description is a Class Member: all Persons who purchased or otherwise acquired Teleperformance ADRs during the Class Period.

Excluded from the Class are: Defendants and members of their immediate families, the Officers and directors of the Company at all relevant times, and members of their immediate families, the legal representatives, heirs, successors or assigns of any of the foregoing, and any entity in which Defendants have or had a controlling interest. Also excluded from the Class is any Person who would otherwise be a Member of the Class but who validly and timely requests exclusion in accordance with the requirements set by the Court.

**Please Note:** Receipt of this Notice does not mean that you are a Class Member or that you will be entitled to receive a payment from the Settlement. If you are a Class Member and you wish to be eligible to participate in the distribution of the proceeds from the Settlement, you are required to submit the Proof of Claim that is being distributed with this Notice and the required supporting documentation as set forth therein postmarked or submitted online on or before May 11, 2025.

| 5. | What if I am still not sure if I am included in the Class? |
|---|---|

If you are still not sure whether you are included in the Class, you can ask for free help. You can contact the Claims Administrator toll-free at 1-888-516-0722, or you can fill out and return the Proof of Claim enclosed with this Notice package to see if you qualify.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

| 6. | What does the Settlement provide? |
|---|---|

The Settlement provides that, in exchange for the release of the Released Claims (defined below) and dismissal of the Litigation, Defendants will cause to be paid $5.5 million in cash to be distributed after taxes, tax expenses, notice and claims administration expenses, and approved fees and expenses, *pro rata*, to Class Members who send in a valid Proof of Claim pursuant to the Court-approved Plan of Allocation. The Plan of Allocation is described in more detail at the end of this Notice.

| 7. | How much will my payment be? |
|---|---|

Your share of the Net Settlement Fund will depend on several things, including the total dollar amount of claims represented by the valid Proofs of Claim that Class Members send in, compared to the dollar amount of your claim, all as calculated under the Plan of Allocation discussed below.

## HOW YOU GET A PAYMENT – SUBMITTING A PROOF OF CLAIM

| 8. | How can I get a payment? |
|---|---|

To be eligible to receive a payment from the Settlement, you must submit a Proof of Claim. A Proof of Claim is enclosed with this Notice or it may be downloaded at www.TeleperformanceSecuritiesSettlement.com. Read the instructions contained in the Proof of Claim carefully, fill out the Proof of Claim, include all the documents the form asks for, sign it, and **mail it to the Claims Administrator at the address provided in the Proof of Claim or submit it online at www.TeleperformanceSecuritiesSettlement.com so that it is postmarked or received no later than May 11, 2025**.

| 9. | When would I get my payment? |
|---|---|

**The Court will hold a Settlement Hearing on May 27, 2025, at 8:30 a.m.,** to decide whether to approve the Settlement. If the Court approves the Settlement, there might be appeals. It is always uncertain whether appeals can be resolved, and if so, how long it would take to resolve them. It also takes time for all the Proofs of Claim to be processed. Please be patient.

| 10. | What am I giving up to get a payment or to stay in the Class? |
|---|---|

Unless you timely and validly exclude yourself, you are staying in the Class, and that means you cannot sue, continue to sue, or be part of any other lawsuit against Defendants or their Related Parties (as defined below) about the Released Claims (as defined below).[3] It also means that the Court's orders and the Judgment will apply to you and legally bind you. If you remain a Class Member, and if the Settlement is approved, you will give up all "Released Claims" (as defined below), including

3    The Stipulation also provides for certain releases of the Plaintiffs, the Class, and Plaintiffs' Counsel. The full terms of the releases can be found in the Stipulation, which can be viewed at www.TeleperformanceSecuritiesSettlement.com.

"Unknown Claims" (as defined below), against the "Released Persons" (as defined below):

- "Released Claims" means any and all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common, or foreign law, that relate to the purchase or other acquisition of Teleperformance ADRs during the Class Period, and that the Plaintiffs or any Member of the Class: (i) asserted in the Second Amended Complaint; or (ii) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations, or omissions involved, set forth, or referred to in the Second Amended Complaint.  "Released Claims" does not include claims to enforce the Settlement, any derivative or ERISA claims, or the claims of any person or entity that submits a request for exclusion that is accepted by the Court.  "Released Claims" includes "Unknown Claims" as defined below.

- "Released Defendants' Claims" means any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, against Plaintiffs, Plaintiffs' Counsel, or any Class Member that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Defendants in the Litigation, except for claims relating to the enforcement of the Settlement.

- "Released Defendant Party" or "Released Defendant Parties" or "Released Persons" mean Defendants, Defendants' Counsel, and their Related Parties.

- "Releasing Plaintiff Party" or "Releasing Plaintiff Parties" mean each and every Class Member, Plaintiffs, Lead Counsel, Plaintiffs' Counsel, and each and all of their respective past or present trustees, executors, administrators, officers, directors, partners, members, employees, contractors, auditors, principals, agents, attorneys, predecessors, successors, assigns, representatives, affiliates, joint venturers, shareholders, underwriters, insurers, personal or legal representatives, estates, financial advisors or consultants, banks or investment bankers, parents, subsidiaries, general or limited partners or partnerships, and limited liability companies; and the spouses, members of the immediate families, representatives, and heirs of any Releasing Plaintiff Party (who is an individual), as well as any trust of which any Releasing Plaintiff Party is the settlor or which is for the benefit of any of their immediate family members.  Releasing Plaintiff Parties do not include any Person who would otherwise be a Member of the Class but who validly and timely requests exclusion from the Class.

- "Related Parties" means each Defendant's respective former, present or future parents, subsidiaries, divisions, controlling persons, associates, related entities and affiliates and each and all of their respective present and former employees, members, partners, principals, officers, directors, controlling shareholders, agents, attorneys, advisors (including financial or investment advisors), accountants, auditors, consultants, underwriters, investment bankers, commercial bankers, entities providing fairness opinions, general or limited partners or partnerships, limited liability companies, members, joint ventures, and insurers and reinsurers of each of them; and the predecessors, successors, estates, immediate family members, spouses, heirs, executors, trusts, trustees, administrators, agents, legal or personal representatives, assigns, and assignees of each of them, in their capacity as such.

- "Unknown Claims" means (a) any and all Released Claims that any of the Releasing Plaintiff Parties do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Parties, which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Defendant Parties, or might have affected his, her, or its decision(s) with respect to the Settlement, including, but not limited to, whether or not to object to this Settlement or seek exclusion from the Class; and (b) any and all Released Defendants' Claims that any of the Released Defendant Parties do not know or suspect to exist in his, her, or its favor at the time of the release of Plaintiffs, the Class, and Plaintiffs' Counsel, which, if known by him, her, or it, might have affected his, her, or its settlement and release of Plaintiffs, the Class, and Plaintiffs' Counsel.  With respect to (a) any and all Released Claims against the Released Defendant Parties; and (b) any and all Released Defendants' Claims against Plaintiffs, the Class, and Plaintiffs' Counsel, the Settling Parties stipulate and agree that, upon the Effective Date, the Settling Parties shall expressly waive, and each Releasing Plaintiff Party and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have expressly waived, the provisions, rights, and benefits of California Civil Code §1542, which provides:

  **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

  The Settling Parties shall expressly waive, and each Releasing Plaintiff Party and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542. The Settling Parties acknowledge that they may hereafter discover facts, legal theories, or authorities in addition to or different from those which they now know or believe to

be true with respect to the Released Claims, but the Settling Parties shall be deemed to have, and by operation and order of final judgment shall have, fully, finally, and forever settled and released all Released Claims, as the case may be known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, upon any theory of law or equity now existing or coming into existence in the future, without regard to the subsequent discovery or existence of different or additional facts, legal theories, or authorities. The Settling Parties acknowledge, and the Releasing Plaintiff Parties and Released Defendant Parties shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is an essential element of the Settlement of which this release is a part.

## EXCLUDING YOURSELF FROM THE CLASS

If you do not want to participate in this Settlement, and you want to keep the right to potentially sue the Defendants and the other Released Persons on your own regarding the claims being released by the Settlement, then you must take steps to remove yourself from the Settlement. This is called excluding yourself – or is sometimes referred to as "opting out." If you are requesting exclusion because you want to bring your own lawsuit based on the matters alleged in this Litigation, you may want to consult an attorney and discuss whether any individual claim that you may wish to pursue would be time-barred by the applicable statutes of limitation or repose.

| **11.** | **How do I get out of the Class and the proposed Settlement?** |
|---|---|

To exclude yourself from the Class and the Settlement, you must send a letter by First-Class Mail stating that you "request exclusion from the Class in the *Teleperformance Securities Settlement*." Your letter must include your purchases or acquisitions of Teleperformance ADRs during the Class Period, including the dates, the number of ADRs purchased or acquired, and the price paid for each such purchase or acquisition.  In addition, you must include your name, address, telephone number, and your signature.  You must submit your exclusion request so that it is **postmarked or received no later than May 5, 2025** to:

*Teleperformance Securities Settlement*
Claims Administrator
c/o Rust Consulting, Inc. - 8868
EXCLUSIONS
P.O. Box 2599
Faribault, MN 55021-9599

If you ask to be excluded, you will not get any payment from the Settlement, and you cannot object to the Settlement.  You will not be legally bound by anything that happens in this lawsuit, and you may be able to sue the Defendants and the other Released Persons about the Released Claims in the future.

| **12.** | **If I do not exclude myself, can I sue the Defendants and the other Released Persons for the same thing later?** |
|---|---|

No. Unless you exclude yourself, you give up any rights you may potentially have to sue the Defendants and the other Released Persons for any and all Released Claims. If you have a pending lawsuit against the Released Persons, speak to your lawyer in that case immediately. You may need to exclude yourself from the Class in this Litigation to continue your own lawsuit.  Remember, the exclusion deadline is May 5, 2025.

| **13.** | **If I exclude myself, can I get money from the proposed Settlement?** |
|---|---|

No. If you exclude yourself from the Class, you should not send in a Proof of Claim to ask for any money. But you may have the right to potentially sue or be part of a different lawsuit against the Defendants and the other Released Persons.

## THE LAWYERS REPRESENTING YOU

| **14.** | **Do I have a lawyer in this case?** |
|---|---|

The Court ordered that the law firm of Robbins Geller Rudman & Dowd LLP represents the Class Members, including you. These lawyers are called Lead Counsel. If you want to be represented by your own lawyer, you may hire one at your own expense.

| **15.** | **How will the lawyers be paid?** |
|---|---|

Lead Counsel will apply to the Court for an award of attorneys' fees not to exceed one-third of the Settlement Amount and for expenses and charges in an amount not to exceed $200,000 in connection with the Litigation, plus interest on such fees and expenses at the same rate as earned by the Settlement Fund. In addition, Plaintiffs may seek up to $10,000 each in connection with their representation of the Class.  Such sums as may be approved by the Court will be paid from the Settlement Fund.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement or any part of it.

| 16. | How do I tell the Court that I object to the proposed Settlement? |
|---|---|

If you are a Class Member, you can comment on or object to the proposed Settlement, the proposed Plan of Allocation, and/or Plaintiffs' Counsel's fee and expense application. You can write to the Court setting out your comment or objection. The Court will consider your views. Any objections, filings, and other submissions by an objecting Class Member must:  (i) state the name, address, and telephone number of the Person objecting and must be signed by the objector; (ii) contain a statement of the Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Class Member wishes to bring to the Court's attention and whether the objection applies only to the objector, a specific subset of the Class, or to the entire Class; (iii) identify all class actions in which the objector and his, her, or its counsel has previously objected; and (iv) include documents sufficient to prove membership in the Class, including the objecting Class Member's purchases, acquisitions, and sales of Teleperformance ADRs during the Class Period, including the dates, the number of ADRs purchased, acquired or sold, and price paid or received for each such purchase, acquisition, or sale. Your comments or objection must be filed with the Court and mailed or delivered to each of the following addresses such that it is *received* **no later than May 5, 2025**:

| COURT | LEAD COUNSEL | DEFENDANTS' COUNSEL |
|---|---|---|
| CLERK OF THE COURT UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA 400 North Miami Avenue Miami, FL 33128 | ROBBINS GELLER  RUDMAN & DOWD LLP THEODORE J. PINTAR 655 West Broadway Suite 1900 San Diego, CA 92101 | LATHAM & WATKINS LLP CHRISTOPHER TURNER DONALD LEE THOMPSON 555 Eleventh Street, NW Suite 1000 Washington, D.C. 20004 |

| 17. | What is the difference between objecting and excluding? |
|---|---|

Objecting is simply telling the Court that you do not like something about the Settlement. You can object **only** if you stay in the Class.

Excluding yourself is telling the Court that you do not want to be paid and do not want to release any claims you think you may have against Defendants and their Related Parties. If you exclude yourself, you cannot object to the Settlement because it does not affect you.

## THE COURT'S SETTLEMENT HEARING

The Court will hold a hearing to decide whether to approve the proposed Settlement. You may attend and you may ask to speak, but you do not have to.

| 18. | When and where will the Court decide whether to approve the proposed Settlement? |
|---|---|

The Court will hold a Settlement Hearing at **8:30 a.m., on May 27, 2025**, in the Courtroom of the Honorable Cecilia M. Altonaga, at the United States District Court for the Southern District of Florida, 400 North Miami Avenue, Miami, FL 33128. At the hearing, the Court will consider whether the Settlement and the Plan of Allocation are fair, reasonable, and adequate. If there are objections, the Court will consider them, even if you do not ask to speak at the hearing. The Court will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay to Lead Counsel and Plaintiffs. After the Settlement Hearing, the Court will decide whether to approve the Settlement and the Plan of Allocation. We do not know how long these decisions will take. You should be aware that the Court may change the date and time of the Settlement Hearing without another notice being sent to Class Members.

**In order to determine whether the date and time of the Settlement Hearing have changed, it is important that you monitor the Court's docket or the Settlement website, www.TeleperformanceSecuritiesSettlement.com, before making any plans to attend the Settlement Hearing. Any updates regarding the Settlement Hearing, including any changes to the date and time of the hearing will be posted to the Settlement website, www.TeleperformanceSecuritiesSettlement.com.** If you want to attend the hearing, you should check with Lead Counsel or the Settlement website, www.TeleperformanceSecuritiesSettlement. com, beforehand to be sure that the date and/or time has not changed.

| 19. | Do I have to come to the hearing? |
|---|---|

No. Lead Counsel will answer any questions the Court may have. But, you are welcome to come at your own expense.  If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend, but it is not necessary. Class Members do not need

to appear at the hearing or take any other action to indicate their approval.

| 20. | May I speak at the hearing? |
|-----|------------------------------|

If you object to the Settlement, the Plan of Allocation, and/or the fee and expense application, you may ask the Court for permission to speak at the Settlement Hearing. To do so, you must include with your objection (*see* question 16 above) a statement saying that it is your "Notice of Intention to Appear in the *Teleperformance Securities Settlement*." Persons who intend to object to the Settlement, the Plan of Allocation, and/or any attorneys' fees and expenses to be awarded to Lead Counsel or Plaintiffs and desire to present evidence at the Settlement Hearing must include in their written objections the identity of any witnesses they may call to testify and any exhibits they intend to introduce into evidence at the Settlement Hearing. Your notice of intention to appear must be ***received*** **no later than May 5, 2025**, and addressed to the Clerk of Court, Lead Counsel, and Defendants' Counsel, at the addresses listed above in question 16.

You cannot speak at the Settlement Hearing if you exclude yourself from the Class.

## IF YOU DO NOTHING

| 21. | What happens if I do nothing? |
|-----|-------------------------------|

If you do nothing, you will not receive any money from this Settlement. In addition, unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendants and/or their Related Parties about the Released Claims in this case.

## GETTING MORE INFORMATION

| 22. | How do I get more information? |
|-----|--------------------------------|

For even more detailed information concerning the matters involved in this Litigation, you can obtain answers to common questions regarding the proposed Settlement by contacting the Claims Administrator toll-free at 1-888-516-0722. Reference is also made to the Stipulation, to the pleadings in support of the Settlement, to the Orders entered by the Court, and to the other settlement related papers filed in the Litigation, which are posted on the Settlement website at www.TeleperformanceSecuritiesSettlement.com, and which may be inspected at the Office of the Clerk of the United States District Court for the Southern District of Florida, during regular business hours.  For a fee, all papers filed in this Litigation are available at www.pacer.gov.

## THE PROPOSED PLAN OF ALLOCATION OF NET SETTLEMENT FUND AMONG CLASS MEMBERS

| 23. | How will my claim be calculated? |
|-----|-----------------------------------|

As discussed above, the Settlement provides $5,500,000.00 in cash for the benefit of the Class. The Settlement Amount and any interest it earns constitute the "Settlement Fund." The Settlement Fund, after deduction of Court-approved attorneys' fees and expenses, Notice and Administration Expenses, Taxes, and any other fees or expenses approved by the Court, is the "Net Settlement Fund." If the Settlement is approved by the Court, the Net Settlement Fund will be distributed to eligible Authorized Claimants – *i.e.*, Members of the Class who timely submit valid Proofs of Claim – in accordance with this proposed Plan of Allocation ("Plan of Allocation" or "Plan") or such other plan of allocation as the Court may approve. Class Members who do not timely submit valid Proofs of Claim will not share in the Net Settlement Fund but will otherwise be bound by the Settlement.  The Court may approve this proposed Plan of Allocation, or modify it, without additional notice to the Class. Any order modifying the Plan of Allocation will be posted on the Settlement website, www.TeleperformanceSecuritiesSettlement.com.

The objective of the Plan of Allocation is to distribute the Settlement proceeds equitably among those Class Members who suffered economic losses as a proximate result of the alleged wrongdoing. The Plan of Allocation is not a formal damages analysis, and the calculations made in accordance with the Plan of Allocation are not intended to be estimates of, or indicative of, the amounts that Class Members might have been able to recover after a trial. Nor are the calculations in accordance with the Plan of Allocation intended to be estimates of the amounts that will be paid to Authorized Claimants under the Settlement. The computations under the Plan of Allocation are only a method to weigh, in a fair and equitable manner, the claims of Authorized Claimants against one another for the purpose of making *pro rata* allocations of the Net Settlement Fund.

The Plan of Allocation is intended to compensate Class Members who purchased or acquired Teleperformance ADRs during the period between February 20, 2020 and November 9, 2022, inclusive ("Class Period").[4]

For purposes of determining the amount a claimant may recover under the Plan, Lead Counsel conferred with its damages expert and the Plan reflects an assessment of the daily per share artificial inflation amounts which allegedly were proximately caused by Defendants' alleged false and misleading statements and material omissions. In calculating the estimated artificial

---

4    Any transactions in Teleperformance ADRs executed outside of regular trading hours for the U.S. financial markets shall be deemed to have occurred during the next regular trading session.

inflation allegedly caused by Defendants' alleged misrepresentations and omissions, Plaintiffs' damages expert considered price changes in Teleperformance ADRs in reaction to public disclosures that allegedly corrected the respective alleged misrepresentations and omissions, adjusting the price changes for factors that were attributable to market or industry forces, and for non-fraud related Company-specific information.

In order to have recoverable damages in connection with purchases and/or acquisitions of Teleperformance ADRs during the Class Period, disclosure(s) of the allegedly misrepresented or omitted information must be the proximate cause of the decline in the price of Teleperformance ADRs. In this case, Plaintiffs allege that Defendants made false statements and omitted material facts during the Class Period, which had the effect of artificially inflating the price of Teleperformance ADRs. As the result of the alleged corrective disclosures, Plaintiffs allege that artificial inflation was removed from the price of Teleperformance ADRs on: August 5, 2022 and November 10, 2022.

To the extent there are sufficient funds in the Net Settlement Fund, each claimant will receive an amount equal to the claimant's "Recognized Loss Amount," as described below. If, however, as expected, the amount in the Net Settlement Fund is not sufficient to permit payment of the total Recognized Loss Amount of each claimant, then each claimant shall be paid the percentage of the Net Settlement Fund that each claimant's Recognized Loss Amount bears to the total of the Recognized Loss Amounts of all claimants – *i.e.*, the claimant's *pro rata* share of the Net Settlement Fund.

For each Class Period purchase of Teleperformance ADRs that is properly documented, a "Recognized Loss Amount" will be calculated according to the formulas described below. If a Recognized Loss Amount calculates to a negative number or zero under the formulas below, that Recognized Loss Amount will be zero.

Estimated damages and the Plan were developed based on an event study analysis, which determines how much artificial inflation was in the stock price on each day during the Class Period by measuring how much the stock price was inflated as a result of alleged misrepresentations and omissions and declined as a result of disclosures that corrected the alleged misrepresentations and omissions. Because the alleged corrective disclosures reduced the artificial inflation in stages over the course of the Class Period, the damages suffered by any particular claimant depends on when that claimant purchased and sold their stock, or retained their stock beyond the end of the Class Period.[5]

A claim will be computed as follows:

1.   For each share of exchange traded Teleperformance ADRs purchased from February 20, 2020 through and including November 9, 2022, and:

   (a)  Sold before August 5, 2022, the Recognized Loss Amount will be $0.00.

   (b)  Sold from August 5, 2022 through and including the close of trading on November 9, 2022, the Recognized Loss Amount will be *the lesser of*: (i) the amount of artificial inflation per share on the date of purchase as stated in Table A below *minus* the amount of artificial inflation per share on the date of sale as stated in Table A below; or (ii) the purchase price *minus* the sale price.

   (c)  Sold from November 10, 2022 through and including the close of trading on February 7, 2023, the Recognized Loss Amount will be *the least of*: (i) the amount of artificial inflation per share on the date of purchase as stated in Table A below *minus* the amount of artificial inflation per share on the date of sale as stated in Table A below; or (ii) the purchase price *minus* the sale price; or (iii) the purchase price *minus* the average closing price between November 10, 2022 and the date of sale as stated in Table B below.

Held as of the close of trading on February 7, 2023, the Recognized Loss Amount will be *the lesser of*: (i) the amount of artificial inflation per share on the date of purchase as stated in Table A below; or (ii) the purchase price *minus* $123.03.[6]

If a claimant had a market gain with respect to his, her, or its overall transactions in Teleperformance ADRs during the Class Period, the value of the claimant's Recognized Loss Amount will be zero. If a claimant suffered an overall market loss with respect to his, her, or its overall transactions in Teleperformance ADRs during the Class Period but that market loss was less than the claimant's total Recognized Loss Amount calculated above, then the claimant's Recognized Loss Amount will be limited to the amount of the actual market loss. For purposes of determining whether a claimant had a market gain with

---

5   Based on analyses by Plaintiffs' damages expert, $7.49 per share of artificial inflation was dissipated on August 5, 2022 following the first alleged corrective disclosure, and $29.79 per share of artificial inflation was dissipated on November 10, 2022 following the second alleged corrective disclosure. Plaintiffs' damages expert discounted the second corrective disclosure and related artificial inflation estimate by 95% to account for the significant litigation risk and low probability of recovering damages under the second corrective disclosure in light of the Court's dismissal of this event in its August 28, 2024 Order on Defendants' Motion to Dismiss. As a result, Table A below reflects $1.49 of artificial inflation dissipated upon the second corrective disclosure.

6   Pursuant to Section 21D(e)(1) of the Exchange Act, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." Consistent with the requirements of the Exchange Act, Recognized Loss Amount is reduced to an appropriate extent by taking into account the closing prices of Teleperformance ADRs during the "90-day look-back period," November 10, 2022 through and including February 7, 2023. The mean (average) closing price for Teleperformance ADRs during this 90-day look back period was $123.03.

respect to his, her, or its overall transactions in Teleperformance ADRs during the Class Period or suffered a market loss, the Claims Administrator will determine the difference between (i) the Total Purchase Amount[7] and (ii) the sum of the Total Sales Proceeds[8] and Holding Value.[9] This difference will be deemed a claimant's market gain or loss with respect to his, her, or its overall transactions in Teleperformance ADRs during the Class Period.

If a Class Member held Teleperformance ADRs at the beginning of the Class Period or made multiple purchases, acquisitions, or sales of Teleperformance ADRs during or after the Class Period, the starting point for calculating a claimant's Recognized Loss Amount is to match the claimant's holdings, purchases, and acquisitions to their sales using the FIFO (*i.e.*, first-in-first-out) method. Under the FIFO method, Teleperformance ADRs sold during the Class Period will be matched, in chronological order, first against any Teleperformance ADRs held at the beginning of the Class Period. The remaining sales of Teleperformance ADRs purchased or acquired during the Class Period will then be matched, in chronological order, against the purchased or acquired Teleperformance ADRs during the Class Period.

A Class Member will be eligible to receive a distribution from the Net Settlement Fund only if a Class Member had a net overall loss, after all profits from transactions in all Teleperformance ADRs during the Class Period are subtracted from all losses. However, the proceeds from sales of shares that have been matched against the Teleperformance ADRs held at the beginning of the Class Period will not be used in the calculation of such net loss.

Purchases or acquisitions and sales of Teleperformance ADRs shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. The receipt or grant by gift, inheritance, or operation of law of Teleperformance ADRs during the Class Period shall not be deemed a purchase, acquisition, or sale of Teleperformance ADRs for the calculation of Recognized Loss Amount unless (i) the donor or decedent purchased or otherwise acquired such Teleperformance ADRs during the Class Period; (ii) no Proof of Claim was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such Teleperformance ADRs; and (iii) it is specifically so provided in the instrument of gift or assignment.

An Authorized Claimant's Recognized Loss Amount shall be the amount used to calculate the Authorized Claimant's *pro rata* share of the Net Settlement Fund. If the sum total of Recognized Loss Amounts of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund. The *pro rata* share shall be the Authorized Claimant's Recognized Loss Amount divided by the total of the Recognized Loss Amounts of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Given the costs of distribution, the Net Settlement Fund will be allocated among all Authorized Claimants whose distribution calculates to $10.00 or greater.

Distributions will be made to Authorized Claimants after all claims have been processed, after the Court has finally approved the Settlement, and after any appeals are resolved. If there is any balance remaining in the Net Settlement Fund after a reasonable amount of time from the initial date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), the Claims Administrator shall, if feasible, reallocate such balance among Authorized Claimants in an equitable and economic fashion. These redistributions shall be repeated until the balance remaining in the Net Settlement Fund is no longer economically feasible to distribute to Class Members. Thereafter, any balance that still remains in the Net Settlement Fund shall be donated to any appropriate non-sectarian, non-profit charitable organization(s) serving the public interest.

Please contact the Claims Administrator or Lead Counsel if you disagree with any determinations made by the Claims Administrator regarding your Proof of Claim. If you are dissatisfied with the determinations, you may ask the Court, which retains jurisdiction over all Class Members and the claims administration process, to decide the issue by submitting a written request for review.

The Court has reserved jurisdiction to allow, disallow, or adjust the claim of any Class Member on equitable grounds.

Payment pursuant to the Plan of Allocation set forth above shall be conclusive against all Authorized Claimants. Defendants, their respective counsel, and all other Released Persons will have no responsibility or liability whatsoever for the investment of the Settlement Fund, the distribution of the Net Settlement Fund, the Plan of Allocation, or the payment of any claim. No Person shall have any claim against Plaintiffs, Lead Counsel, the Claims Administrator, or other Person designated by Lead Counsel, Defendants, or Defendants' Counsel based on distributions made substantially in accordance with the Stipulation and the Settlement contained therein, the Plan of Allocation, or further orders of the Court.

---

7   The "Total Purchase Amount" is the total amount the claimant paid (excluding commissions and other charges) for Teleperformance ADRs purchased or acquired during the Class Period.

8   The Claims Administrator will match any sales of Teleperformance ADRs during the Class Docket first against the claimant's opening position (the proceeds of those sales will not be considered for purposes of calculating market gains or losses). The total amount received (excluding commissions and other charges) for the remaining sales of Teleperformance ADRs sold during the Class Period will be the "Total Sales Proceeds."

9   The Claims Administrator will ascribe a value of $107.77 per ADR for Teleperformance ADRs purchased or acquired during the Class Period and still held as of the close of trading on November 10, 2022 (the "Holding Value").

### TABLE A

**Estimated Inflation in Teleperformance ADRs**
**February 20, 2020 through November 9, 2022**

| Date Range | Inflation Per Share of Teleperformance ADRs |
|---|---|
| February 20, 2020 – August 4, 2022 | $10.47 |
| August 5, 2022 – November 9, 2022 | $1.49 |

### TABLE B

**90-Day Look-back Table for Teleperformance ADRs**
**Closing Price and Average Closing Price**
**November 10, 2022 through February 7, 2023**

| Date | Closing Price | Average Closing Price Between November 10, 2022 and Date Shown | Date | Closing Price | Average Closing Price Between November 10, 2022 and Date Shown |
|---|---|---|---|---|---|
| 11/10/2022 | $107.77 | $107.77 | 12/23/2022 | $117.85 | $113.88 |
| 11/11/2022 | $99.07 | $103.42 | 12/27/2022 | $118.19 | $114.02 |
| 11/14/2022 | $104.04 | $103.63 | 12/28/2022 | $117.27 | $114.12 |
| 11/15/2022 | $114.23 | $106.28 | 12/29/2022 | $119.76 | $114.28 |
| 11/16/2022 | $113.59 | $107.74 | 12/30/2022 | $119.16 | $114.42 |
| 11/17/2022 | $112.79 | $108.58 | 1/3/2023 | $121.49 | $114.62 |
| 11/18/2022 | $115.83 | $109.62 | 1/4/2023 | $125.28 | $114.91 |
| 11/21/2022 | $113.65 | $110.12 | 1/5/2023 | $122.65 | $115.11 |
| 11/22/2022 | $110.83 | $110.20 | 1/6/2023 | $125.39 | $115.37 |
| 11/23/2022 | $108.89 | $110.07 | 1/9/2023 | $127.81 | $115.69 |
| 11/25/2022 | $110.41 | $110.10 | 1/10/2023 | $127.20 | $115.97 |
| 11/28/2022 | $111.26 | $110.20 | 1/11/2023 | $125.76 | $116.20 |
| 11/29/2022 | $111.27 | $110.28 | 1/12/2023 | $131.78 | $116.56 |
| 11/30/2022 | $113.23 | $110.49 | 1/13/2023 | $133.79 | $116.95 |
| 12/1/2022 | $115.98 | $110.86 | 1/17/2023 | $135.93 | $117.37 |
| 12/2/2022 | $120.23 | $111.44 | 1/18/2023 | $137.62 | $117.82 |
| 12/5/2022 | $116.48 | $111.74 | 1/19/2023 | $136.00 | $118.20 |
| 12/6/2022 | $112.86 | $111.80 | 1/20/2023 | $137.05 | $118.59 |
| 12/7/2022 | $118.80 | $112.17 | 1/23/2023 | $136.31 | $118.96 |
| 12/8/2022 | $116.85 | $112.40 | 1/24/2023 | $137.12 | $119.32 |
| 12/9/2022 | $117.88 | $112.66 | 1/25/2023 | $136.39 | $119.65 |
| 12/12/2022 | $118.02 | $112.91 | 1/26/2023 | $137.75 | $120.00 |
| 12/13/2022 | $118.85 | $113.17 | 1/27/2023 | $137.92 | $120.34 |
| 12/14/2022 | $119.89 | $113.45 | 1/30/2023 | $137.35 | $120.65 |
| 12/15/2022 | $115.86 | $113.54 | 1/31/2023 | $138.96 | $120.99 |
| 12/16/2022 | $113.40 | $113.54 | 2/1/2023 | $143.90 | $121.40 |
| 12/19/2022 | $113.89 | $113.55 | 2/2/2023 | $149.17 | $121.88 |
| 12/20/2022 | $113.55 | $113.55 | 2/3/2023 | $144.96 | $122.28 |
| 12/21/2022 | $116.38 | $113.65 | 2/6/2023 | $144.18 | $122.65 |
| 12/22/2022 | $116.80 | $113.75 | 2/7/2023 | $145.37 | $123.03 |

**SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES**

If you purchased or acquired Teleperformance ADRs during the Class Period for the beneficial interest of an individual or organization other than yourself, the Court has directed that, WITHIN TEN (10) DAYS OF YOUR RECEIPT OF THIS NOTICE, you either (a) provide to the Claims Administrator the name and last known address of each person or organization for whom or which you purchased or acquired such securities during such time period, or (b) request additional copies of this Notice and the Proof of Claim, which will be provided to you free of charge, and within ten (10) days mail the Notice and Proof of Claim directly to the beneficial owners of the securities referred to herein.  If you choose to follow alternative procedure (b), upon such mailing, you must send a statement to the Claims Administrator confirming that the mailing was made as directed and retain the names and addresses for any future mailings to Class Members. You are entitled to reimbursement from the Settlement Fund of your reasonable expenses actually incurred in connection with the foregoing. Reasonable out-of-pocket expenses include up to $0.03 for providing names and addresses to the Claims Administrator per record; up to a maximum of $0.03 per Notice mailed by you, plus postage at the rate used by the Claims Administrator. Such expenses incurred by nominees will be paid upon request and submission of appropriate supporting documentation. All communications concerning the foregoing should be addressed to the Claims Administrator:

*Teleperformance Securities Settlement*
Claims Administrator
c/o Rust Consulting, Inc. - 8868
P.O. Box 2599
Faribault, MN 55021-9599
www.TeleperformanceSecuritiesSettlement.com

DATED:  January 14, 2025

BY ORDER OF THE COURT
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

# EXHIBIT B

# TECHNOLOGY & MEDIA

# Trump-CBS Feud Hits '60 Minutes' Head

**Owens has defended his editing decision on show's interview of candidate Harris**

BY JOE FLINT

Early last October, "60 Minutes" Executive Producer Bill Owens sat in a screening room at the show's New York headquarters, watching an edit of a highly anticipated Kamala Harris interview.

Executive Editor Tanya Simon told Owens that Harris's remark about Israeli Prime Minister Benjamin Netanyahu to be used in the Monday, Oct. 7, show was different from an edited clip the Sunday morning show "Face the Nation" was using Oct. 6.

Owens asked was it a "legal edit," meaning the answer the then-presidential candidate had given in the "Face the Nation" clip was part of the response to the same question he wanted for "60 Minutes." Simon said it was. Owens responded: "That's fine."

That seemingly innocuous decision set off a legal battle between "60 Minutes" and then-candidate Donald Trump, who sued CBS News for $10 billion, accusing the network of deceitfully editing the interview to make Harris sound better. The Federal Communications Commission has opened a probe over possible news distortion, and demanded that CBS release the full interview transcript and video last week. The FCC and CBS both made the material public on Wednesday.

CBS said last Wednesday the broadcast was "not doctored or deceitful."

On Thursday, Trump said on his Truth Social platform that CBS "defrauded the public" with its edit, calling for the network to lose its broadcast license.

Past "60 Minutes" producers Don Hewitt and Jeff Fager embraced the spotlight. Owens, who has been with CBS News since 1988, tries to avoid it.

Now he finds himself defending the editing call and his initial refusal to release the full transcript of the Harris interview—all while CBS's parent company, **Paramount Global**, seeks regulatory approval for its proposed merger with Skydance Media.



**Bill Owens began overseeing the news magazine in 2019.**

Paramount's controlling shareholder, Shari Redstone, has encouraged settlement talks with Trump in the hopes of avoiding a potentially lengthy, costly and distracting legal battle.

Executives in the company say Owens's position is secure.

Dozens of correspondents, producers and staff from around the country gathered on Feb. 3 in New York in the large room where "60 Minutes" films its most important interviews, eager to hear Owens provide an update on the situation—and to voice their own concerns.

Owens said he made it clear to the company that he wouldn't apologize for anything the show did because it did nothing wrong, according to one of the people in attendance.

Several staff members discussed starting a petition or staging a walkout to protest a potential legal settlement with Trump. Longtime correspondent Scott Pelley counseled against such a move, saying it may embolden Trump.

"This is an hour-by-hour situation," Owens said about the status of efforts to resolve the suit. He urged staff to try to block out the noise.

In an interview after the gathering, correspondent Lesley Stahl described the meeting as "blind people trying to feel their way along, thinking out loud about the situation."

During the Oct. 5 interview, "60 Minutes" correspondent Bill Whitaker asked Harris if the U.S. has any "sway" with Netanyahu because he often disregarded requests from the Biden administration regarding the conflict with Hamas.

In the roughly 20-second clip given to "Face the Nation," broadcast on Oct. 6, the edited response was, "The work that we have done has resulted in a number of movements in that region by Israel that were very much prompted by, or a result of many things, including our advocacy for what needs to happen in the region."

The answer used in the next day's "60 Minutes" episode was further edited to seven seconds. Harris said, "We are not going to stop pursuing what is necessary for the United States, to be clear about where we stand on the need for this war to end."

After Trump accused CBS of deceitful editing, CBS issued a statement on the edit. "Same question. Same answer. But a different portion of the response," the network said. "The portion of her answer on 60 Minutes was more succinct, which allows time for other subjects in a wide ranging 21-minute-long segment."

Owens, 58 years old, began overseeing "60 Minutes" in 2019. Last August, he also gained responsibility for "CBS Evening News." Some current "60 Minutes" staffers have expressed concern that adding the nightly newscast has stretched him too thin.

The Long Island native, who rose to prominence in CBS's Washington bureau, is revered by many colleagues as one of the last links to the glory days of the network's news division and its independence from a powerful corporate parent.

"He has kept the flame alive. The ethos and the value of the place remains. That hasn't been true in many organizations," said Stahl.

**ADVERTISEMENT**

## The Marketplace

To advertise: 800-366-3975 or WSJ.com/classifieds

### CLASS ACTION

**Legal Notice**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CITY OF WARREN GENERAL EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated,
Plaintiff,
vs.
TELEPERFORMANCE SE, et al.,
Defendants.

Case No. 23-24580-CIV-ALTONAGA/REID

**SUMMARY NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION**

**TO: ALL PERSONS WHO PURCHASED OR OTHERWISE ACQUIRED TELEPERFORMANCE SE ("TELEPERFORMANCE" OR THE "COMPANY") AMERICAN DEPOSITARY RECEIPTS ("ADRs") BETWEEN FEBRUARY 20, 2020 AND NOVEMBER 9, 2022, INCLUSIVE ("CLASS OR CLASS MEMBERS")**

**THIS NOTICE WAS AUTHORIZED BY THE COURT. IT IS NOT A LAWYER SOLICITATION. PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS WILL BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.**

YOU ARE HEREBY NOTIFIED that a hearing will be held on May 27, 2025, at 8:30 a.m., before the Honorable Cecilia M. Altonaga at the United States District Court for the Southern District of Florida, 400 North Miami Avenue, Miami, FL 33128, to determine whether: (1) the proposed settlement (the "Settlement") of the above-captioned Litigation[1] as set forth in the Stipulation of Settlement ("Stipulation")[2] for $5,500,000 in cash should be approved by the Court as fair, reasonable, and adequate; (2) the Judgment as provided under the Stipulation should be entered dismissing the Litigation *with prejudice*; (3) to award Plaintiffs' Counsel attorneys' fees and expenses out of the Settlement Fund (as defined in the Notice of Pendency and Proposed Settlement of Class Action ("Notice"), which is discussed below) and, if so, in what amounts; (4) to grant Plaintiffs awards for their representation of the Class out of the Settlement Fund and, if so, in what amount; and (5) the Plan of Allocation should be approved by the Court as fair, reasonable, and adequate.

In order to determine whether the date and time of the Settlement Hearing have changed, it is important that you monitor the Court's docket and the Settlement website, www.TeleperformanceSecuritiesSettlement.com, before making any plans to attend the Settlement Hearing. Any updates regarding the Settlement Hearing, including any changes to the date or time of the hearing or updates regarding in-person or telephonic appearances at the hearing, will also be posted to the Settlement website, www.TeleperformanceSecuritiesSettlement.com. Also, if the Court requires or allows Class Members to participate in the Settlement Hearing by telephone, the telephone number for accessing the telephonic conference will be posted to the Settlement website.

[1] All capitalized terms used in this Summary Notice that are not otherwise defined herein shall have the meanings provided in the Stipulation.
[2] The Stipulation can be viewed and/or obtained at www.TeleperformanceSecuritiesSettlement.com.

IF YOU PURCHASED OR OTHERWISE ACQUIRED TELEPERFORMANCE ADRs BETWEEN FEBRUARY 20, 2020 AND NOVEMBER 9, 2022, INCLUSIVE, YOUR RIGHTS ARE AFFECTED BY THE SETTLEMENT OF THIS LITIGATION.

To share in the distribution of the Net Settlement Fund, you must establish your rights by submitting a Proof of Claim and Release form ("Proof of Claim") by mail **(postmarked no later than May 11, 2025)** or electronically via the website **(no later than 11:59 p.m. ET on May 11, 2025)**. Your failure to submit your Proof of Claim by May 11, 2025, will subject your claim to rejection and preclude you from receiving any of the recovery in connection with the Settlement of this Litigation. If you purchased or acquired Teleperformance ADRs between February 20, 2020 and November 9, 2022, inclusive, and do not request exclusion from the Class, you will be bound by the Settlement and any judgment and release entered in the Litigation, including, but not limited to, the Judgment, whether or not you submit a Proof of Claim.

If you have not received a copy of the Notice, which more completely describes the Settlement and your rights thereunder (including your right to object to the Settlement), and a Proof of Claim, you may obtain these documents, as well as a copy of the Stipulation (which, among other things, contains definitions for the defined terms used in this Summary Notice) and other settlement documents, online at www.TeleperformanceSecuritiesSettlement.com, or by writing to:

Teleperformance Securities Settlement
Claims Administrator - 8868
c/o Rust Consulting, Inc.
P.O. Box 2599
Faribault, MN 55021-9599

Inquiries should NOT be directed to Defendants, the Court, or the Clerk of the Court.

Inquiries, other than requests for the Notice or for a Proof of Claim, may be made to Lead Counsel:

ROBBINS GELLER RUDMAN & DOWD LLP
Theodore J. Pintar
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 800/449-4900
settlementinfo@rgrdlaw.com

IF YOU DESIRE TO BE EXCLUDED FROM THE CLASS, YOU MUST SUBMIT A REQUEST FOR EXCLUSION SUCH THAT IT IS **POSTMARKED OR RECEIVED BY MAY 5, 2025**, IN THE MANNER AND FORM EXPLAINED IN THE NOTICE. ALL CLASS MEMBERS WILL BE BOUND BY THE SETTLEMENT EVEN IF THEY DO NOT SUBMIT A TIMELY PROOF OF CLAIM.

IF YOU ARE A CLASS MEMBER, YOU HAVE THE RIGHT TO OBJECT TO THE SETTLEMENT, THE PLAN OF ALLOCATION, THE REQUEST BY PLAINTIFFS' COUNSEL FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND/OR ANY AWARDS TO PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4) IN CONNECTION WITH THEIR REPRESENTATION OF THE CLASS. ANY OBJECTIONS MUST BE FILED WITH THE COURT AND SENT TO LEAD COUNSEL AND DEFENDANTS' COUNSEL **BY MAY 5, 2025**, IN THE MANNER AND FORM EXPLAINED IN THE NOTICE

DATED: JANUARY 14, 2025,
BY ORDER OF THE COURT,
UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF FLORIDA

## Activist Targets Phillips 66

Continued from page B1
recently built a stake in struggling British oil major BP.

Shares of Phillips 66 had run up through the spring of last year, trading above $170 apiece, but have since fallen back down. The oil refiner, which also operates a chain of gas stations, has a market value of about $50 billion. Its stock closed Monday at $123.71. In 2023, Elliott argued Phillips 66 was underperforming peers including Valero Energy, and that the company could follow a similar path to Marathon Petroleum, which sold its Speedway gas-station chain in 2019. Elliott also wanted the company to focus more on its main refining business and cut operating costs.

Phillips 66 was born in a spinoff from ConocoPhillips in 2012.

The company runs refineries in California, Louisiana, Texas and has chemical plants elsewhere. It also has a fast-growing pipeline and terminals business.

In the shale boom of the past decade, Phillips 66 and others spent billions of dollars to build and acquire thousands of miles of pipelines, ferrying oil, natural gas and fuel across the country.

A number of Wall Street analysts have noted that Phillips 66 trades at a discount relative to the sum of its parts and have questioned whether the business can get credit for its higher-value midstream business.

Phillips 66 in late January reported a sharp drop in fourth-quarter profit. It said its earnings were hit by weaker refining margins and accelerated depreciation of its Los Angeles refinery, which it plans to close.



**BYD has said it plans to invest about $14 billion in AI and automotive intelligence technology.**

## BYD Gains On Tesla in AI Driving

Continued from page B1
most of BYD's mass-market vehicles. Tesla's website in China shows FSD priced at the equivalent of $8,800, although for the moment drivers can only get less-advanced services. Tesla didn't respond to requests for comment.

As EVs become the norm in China—roughly half the passenger cars sold today in China are either full EVs or plug-in hybrids—driving-assistance software has emerged as a key factor for consumers.

The latest technology, including BYD's, uses AI models to respond to new roads and scenarios and is designed to be able to drive the car without human intervention from the starting point to the destination under certain circumstances.

However, given Chinese road rules, drivers are told to stay alert at all times and remain ready to take over. People in the industry say safety challenges remain, especially in uncommon driving situations that aren't necessarily reflected in the AI models' training.

BYD has said it plans to invest about $14 billion in AI and automotive intelligence technology. The company has more than 5,000 engineers working on the technology. BYD also said it has started using AI models developed by Chinese startup DeepSeek.

BYD's "Eyes of God" system is named after a deity in Chinese mythology with three eyes. It collects data with three cameras in the front windshield. It has already been offering versions of the system for higher-end vehicles.

Besides cameras, BYD's service also relies on radar and a laser system known as lidar to identify vehicles and pedestrians on the road, which it said helps enhance safety and performance when poor lighting hinders the cameras' view. BYD doesn't use lidar for a version that it plans to install for lower-priced vehicles.

Tesla relies more on cameras. Musk has said the approach is more advanced and cost-effective, but it has triggered safety concerns among some regulators and drivers.

Tesla has said it expects Beijing to approve its advanced software this year. There have been few signs of progress so far.

On an earnings call Jan. 29, Musk acknowledged challenges rolling out FSD in China. He said the company was in a quandary because Chinese authorities didn't allow Tesla to transfer video outside of the country to train its models, while U.S. authorities didn't let the carmaker train the FSD system in China. He didn't give details of the restrictions. Tesla has been relying on videos of Chinese streets on the internet to train its system, he said.

Chinese officials are reviewing how Tesla plans to store and process data collected through its FSD service, people familiar with the matter said. China's technocrats are also focused on determining Tesla's safety, the people said, after U.S. auto-safety regulators said in October they were investigating crashes involving Tesla's driver-assistance software. Those crashes occurred in reduced-visibility conditions such as fog or dust.

For Musk, rolling out FSD in China is essential to elevate Tesla to an AI company from a manufacturer of electric vehicles. Tesla has yet to obtain the official signoff from the ministry in charge of the auto industry, people familiar with the matter said. The company would also need to get approval in individual regions such as Shanghai, where Tesla hopes to offer the software to a limited number of drivers.

Even if Beijing were persuaded of the suitability of Tesla's FSD, it would consider the approval a chess piece in the geopolitical game emerging in the second Trump administration, given Musk's proximity to President Trump, analysts said. "Doing Elon Musk a favor without getting one back is a bad negotiating tactic. One thing you can say about the Chinese is that they are damn good negotiators," said Bill Russo, Shanghai-based chief executive of Automobility, an advisory firm.

### BANKRUPTCIES

Reference is made to (i) that certain Senior Convertible Notes Exchange Agreement (as amended, restated, supplemented or modified from time to time, the "Senior Notes Exchange Agreement"), dated as of November 13, 2023, by and among Nuburu, Inc., a Delaware corporation (the "Company"), and the Holders (as defined therein) from time to time party thereto (such parties, collectively, the "Senior Notes Investors", and each, a "Senior Note Investor"); (ii) those certain Senior Secured Convertible Promissory Notes (as amended, restated, supplemented or modified from time to time, collectively, the "Senior Notes"), dated as of November 13, 2023, issued by the Company to the Senior Notes Investors; and (iii) that certain Security Agreement (as amended, restated, supplemented or modified from time to time, the "Security Agreement," and together with the Senior Notes Exchange Agreement and the Senior Notes, the "Note Documents"), dated as of November 13, 2023, by and among the Company, Wilmington Savings Fund Society, FSB (the "Collateral Agent"), and the Senior Notes Investors. Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Senior Notes Exchange Agreement or the Security Agreement, as applicable.

Please take notice that the Collateral Agent, pursuant to the terms of the Note Documents and 6 DEL. C. § 9-610, will sell, at a PUBLIC SALE, all of the property of the Company that is subject to the Collateral Agent's lien under applicable law (collectively, the "Collateral"), including, but not limited to, the Collateral set forth on Annex A hereto, to the highest qualified bidder in public auction (the "Auction") as follows:
Date:      February 19, 2025.
Time:      10:00 a.m. Eastern Time.
Place:     K&L Gates LLP, 599 Lexington Avenue, New York, NY 10022.
The following information is provided regarding the public disposition:
1.   The Collateral will be sold in a single lot, or in the Collateral Agent's sole and complete discretion, as may be announced at the time of the Auction, in separate lots.
2.   Prospective bidders may request information regarding the Collateral and the Auction by e-mail to counsel to the Collateral Agent, John R. Gardner, at John.Gardner@klgates.com, and Heather E. Rees, at Heather.Rees@klgates.com.
3.   The Auction will be conducted in person at the location specified above. The Collateral Agent reserves the right to adjourn, delay, or terminate the Auction, or change the venue thereof, or manner in which the Auction is conducted, in its sole and complete discretion. Bidders wishing to participate in the Auction must submit a bid, substantially in the form required by Collateral Agent, in writing by e-mail to counsel to the Collateral Agent, John R. Gardner (John.Gardner@klgates.com) and Heather E. Rees (Heather.Rees@klgates.com) at K&L Gates LLP, no later than **5:00 p.m. Eastern Time on February 14, 2025.** Bidders will receive additional details regarding the required format of a bid upon request made to the Collateral Agent's counsel. Bidders will receive additional details regarding the Auction following the submission of a written bid. Bidding at the Auction will be in person and any bidder wishing to make or pursue any bid & at the Auction are required to have a representative at the Auction with the authority to act on the bidder's behalf.
4.   The Collateral may be purchased only in whole, or in the Collateral Agent's sole and complete discretion, in part, for cash or cash equivalent (including wire transfers), or by other means of value delivered to the Collateral Agent at the time and place of sale. Any Senior Note Investor, or Collateral Agent, on behalf of any Senior Note Investor, may, as a secured party, bid for and purchase all or a portion of the Collateral by credit bid up to the amount of its claim against the Company, including, without limitation, fees, costs expenses incurred in connection with the public sale, principal, accrued interest, and other fees, costs and expenses incurred pursuant to the Note Documents. Unless otherwise expressly proclaimed at the Auction, any bid by a Senior Note Investor (or by Collateral Agent on behalf of any Senior Note Investor) for all or any portion of the Collateral will be deemed to be a credit bid. Any portion of the consideration that is not a credit bid for the Collateral, whether by a Senior Note Investor or any other person, shall be due and payable, and delivered to the Collateral Agent at the conclusion of the Auction (but prior to the consummation of the sale), with any cash payable in immediately available funds, or on other terms determined by the Collateral Agent in its sole and complete discretion.
5.   The Collateral Agent reserves the right to adjourn, delay, or terminate the Auction, or change the venue thereof, by announcement at the time and place of Auction in its sole and complete discretion, and such Auction may, without further notice, be made at the time and place to which it was so adjourned or delayed.
6.   For further information on the terms and conditions of the sale, prospective bidders may contact counsel to the Collateral Agent, John R. Gardner, at john.gardner@klgates.com, and Heather E. Rees, at Heather.Rees@klgates.com.
**THE PUBLIC SALE SHALL BE "AS IS" AND "WHERE IS," WITHOUT EXPRESSED OR IMPLIED REPRESENTATIONS AND WARRANTIES OF ANY KIND OR NATURE WHATSOEVER, AND ALL WARRANTIES OF TITLE, POSSESSION, QUIET ENJOYMENT, MERCHANTABILITY, QUALITY, FITNESS FOR A PARTICULAR PURPOSE, OR THE LIKE ARE EXPRESSLY DISCLAIMED.** The sale of the Collateral is subject to such further conditions as may be announced by the Collateral Agent at the start of the Auction. The sale of the Collateral shall not affect the rights of the Collateral Agent and the Senior Notes Investors to pursue any other rights or remedies they may have against the Company or any other party. The Company is entitled to an accounting of the unpaid indebtedness secured by the property that the Collateral Agent intends to sell. The Company may request an accounting by contacting the Collateral Agent, John R. Gardner, at john.gardner@klgates.com, and Heather E. Rees, at Heather.Rees@klgates.com.
The Company will be liable for any deficiency remaining after the sale of the Collateral, and the sale of the Collateral shall not limit the Collateral Agent's or the Senior Notes Investors' rights with respect to other Collateral or against any secondary or co-obligors in respect of the remaining obligations secured thereby.

K&L GATES LLP

Heather E. Rees                          John R. Gardner
1717 Main Street, Suite 2800             301 Hillsborough Street, Suite 1200
Dallas, Texas 75201                      Raleigh, North Carolina 27603
E-mail: Heather.Rees@klgates.com         E-mail: John.Gardner@klgates.com
                Counsel to Wilmington Savings Fund Society, FSB

### COMMERCIAL REAL ESTATE

☀ N. MIAMI ☀
**Sports Bar**
7500 sqft. with Patio Seating.
**$3.25 Million**
Pat Burnside Realty
**Call Julie Negovan: 305-595-9522**

### DEA

**LEGAL NOTICE**
The U.S. Dept. of Justice, Drug Enforcement Administration (DEA) New York gives notice that the property listed below has been abandoned to the custody of the United States and has remained unclaimed. The property shall be held for 30 days from the date of initial publication of notice. Upon expiration of this 30 day period title to the property will vest in the United States. Any person desiring to claim this property must file with the DEA within 30 days. Claims may be filed at the following address: DEA New York Division, 99 Tenth Ave., NY, NY 10011. Attn: SA Nicholas DeAmorin.
**Last date to file: 3/13/2025.** Group: Z-53, Case: BZ-19-0016, Asset I.D.: 19-DEA-668292, Property: $64,518.00 USC. Place Seized: Bank of America, Owner: Unknown, Date of Custody: September 4, 2020.

## THE WALL STREET JOURNAL

## THE MARKETPLACE

ADVERTISE TODAY
**(800) 366-3975**
For more information visit:
**wsj.com/classifieds**

© 2025 Dow Jones & Company, Inc.
All Rights Reserved.

# Notice of Pendency and Proposed Settlement of Class Action Involving All Persons Who Purchased or Otherwise Acquired Teleperformance SE American Depositary Receipts from February 20, 2020 through November 9, 2022, Inclusive

NEWS PROVIDED BY
**Robbins Geller Rudman & Dowd LLP** ➜
Feb 11, 2025, 08:00 ET

MIAMI, Feb. 11, 2025 /PRNewswire/ -- The following statement is being issued by Robbins Geller Rudman & Dowd LLP regarding the Teleperformance Securities Settlement:

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-24580-CIV-ALTONAGA/REID

CITY OF WARREN GENERAL
EMPLOYEES' RETIREMENT SYSTEM, on

Behalf of Itself and All Others Similarly

Situated,

                                        Plaintiff,

          vs.

TELEPERFORMANCE SE, et al.,

                                        Defendants.

**SUMMARY NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION**

**TO:    ALL PERSONS WHO PURCHASED OR OTHERWISE ACQUIRED TELEPERFORMANCE SE ("TELEPERFORMANCE") AMERICAN DEPOSITARY RECEIPTS ("ADRs") BETWEEN FEBRUARY 20, 2020 AND NOVEMBER 9, 2022, INCLUSIVE ("CLASS" OR "CLASS MEMBERS")**

**THIS NOTICE WAS AUTHORIZED BY THE COURT.  IT IS NOT A LAWYER SOLICITATION.  PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.  YOUR RIGHTS WILL BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.**

YOU ARE HEREBY NOTIFIED that a hearing will be held on May 27, 2025, at 8:30 a.m., before the Honorable Cecilia M. Altonaga at the United States District Court for the Southern District of Florida, 400 North Miami Avenue, Miami, FL 33128, to determine whether: (1) the proposed settlement (the "Settlement") of the above-captioned Litigation[1] as set forth in the Stipulation of Settlement ("Stipulation")[2] for $5,500,000 in cash should be approved by the Court as fair, reasonable, and adequate; (2) the Judgment as provided under the Stipulation should be entered dismissing the Litigation *with prejudice*; (3) to award Plaintiffs' Counsel attorneys' fees and expenses out of the Settlement Fund (as defined in the Notice of Pendency and Proposed Settlement of Class Action ("Notice"), which is discussed below) and, if so, in what amounts; (4) to grant Plaintiffs awards for their representation of the Class out of the Settlement Fund and, if so, in what amount; and (5) the Plan of Allocation should be approved by the Court as fair, reasonable, and adequate.

In order to determine whether the date and time of the Settlement Hearing have changed, it is important that you monitor the Court's docket and the Settlement website, **www.Teleperformance**SecuritiesSettlement.com, before making any plans to attend the Settlement

Hearing.  Any updates regarding the Settlement Hearing, including any changes to the date or time of the hearing or updates regarding in-person or telephonic appearances at the hearing, will also be posted to the Settlement website, **www.Teleperformance**SecuritiesSettlement.com.  Also, if the Court requires or allows Class Members to participate in the Settlement Hearing by telephone, the telephone number for accessing the telephonic conference will be posted to the Settlement website.

IF YOU PURCHASED OR OTHERWISE ACQUIRED TELEPERFORMANCE ADRs BETWEEN FEBRUARY 20, 2020 AND NOVEMBER 9, 2022, INCLUSIVE, YOUR RIGHTS ARE AFFECTED BY THE SETTLEMENT OF THIS LITIGATION.

To share in the distribution of the Net Settlement Fund, you must establish your rights by submitting a Proof of Claim and Release form ("Proof of Claim") by mail **(postmarked no later than May 11, 2025)** or electronically via the website **(no later than 11:59 p.m. ET on May 11, 2025)**.  Your failure to submit your Proof of Claim by May 11, 2025, will subject your claim to rejection and preclude you from receiving any of the recovery in connection with the Settlement of this Litigation.  If you purchased or acquired Teleperformance ADRs between February 20, 2020 and November 9, 2022, inclusive, and do not request exclusion from the Class, you will be bound by the Settlement and any judgment and release entered in the Litigation, including, but not limited to, the Judgment, whether or not you submit a Proof of Claim.

If you have not received a copy of the Notice, which more completely describes the Settlement and your rights thereunder (including your right to object to the Settlement), and a Proof of Claim, you may obtain these documents, as well as a copy of the Stipulation (which, among other things, contains definitions for the defined terms used in this Summary Notice) and other settlement documents, online at **www.TeleperformanceSecuritiesSettlement.com**, or by writing to:

*Teleperformance Securities Settlement*

c/o Rust Consulting, Inc. - 8868

P.O. Box 2599

Faribault, MN 55021-9599

Inquiries should NOT be directed to Defendants, the Court, or the Clerk of the Court.

Inquiries, other than requests for the Notice or for a Proof of Claim, may be made to Lead Counsel:

ROBBINS GELLER RUDMAN & DOWD LLP

Theodore J. Pintar

655 West Broadway, Suite 1900

San Diego, CA 92101

Telephone: 800/449-4900

**settlementinfo@rgrdlaw.com**

IF YOU DESIRE TO BE EXCLUDED FROM THE CLASS, YOU MUST SUBMIT A REQUEST FOR EXCLUSION SUCH THAT IT IS **POSTMARKED OR RECEIVED BY MAY 5, 2025**, IN THE MANNER AND FORM EXPLAINED IN THE NOTICE.  ALL CLASS MEMBERS WILL BE BOUND BY THE SETTLEMENT EVEN IF THEY DO NOT SUBMIT A TIMELY PROOF OF CLAIM.

IF YOU ARE A CLASS MEMBER, YOU HAVE THE RIGHT TO OBJECT TO THE SETTLEMENT, THE PLAN OF ALLOCATION, THE REQUEST BY PLAINTIFFS' COUNSEL FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND/OR ANY AWARDS TO PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4) IN CONNECTION WITH THEIR REPRESENTATION OF THE CLASS.  ANY OBJECTIONS MUST BE FILED WITH THE COURT AND SENT TO LEAD COUNSEL AND DEFENDANTS' COUNSEL **BY MAY 5, 2025**, IN THE MANNER AND FORM EXPLAINED IN THE NOTICE.

For more information:

- Visit: www.TeleperformanceSecuritiesSettlement.com
- Call: 1-888-516-0722

BY ORDER OF THE COURT

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

---

1      All capitalized terms used in this Summary Notice that are not otherwise defined herein shall have the meanings provided in the Stipulation.

2      The Stipulation can be viewed and/or obtained at **www.TeleperformanceSecuritiesSettlement.com**.

SOURCE Robbins Geller Rudman & Dowd LLP

WANT YOUR COMPANY'S NEWS

# FEATURED ON PRNEWSWIRE.COM?

# GET STARTED

**440k+**
**Newsrooms &**
**Influencers**

**9k+**
**Digital Media**
**Outlets**

**270k+**
**Journalists**
**Opted In**